UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB 10  P 4: 50

U.S. DISTRICT COURT
DISTRICT OF MASS.

```
_____   )
                                  )
ROBERT HARRINGTON, et al.,        )
                                  )
                                  )
       Plaintiffs,                )
                                  )
                                  )            Civil Action No.
v.                                )            04-12558-NMG
                                  )
DELTA AIR LINES, INC., et al.,    )
                                  )
       Defendants.                )
_____   )
```

## MEMORANDUM OF LAW IN SUPPORT OF
## DEUTSCHE LUFTHANSA A.G.'S MOTION TO DISMISS

Defendant Deutsche Lufthansa, A.G. ("Lufthansa") respectfully submits this

Memorandum of Law in support of its motion to dismiss plaintiffs' claims against Lufthansa

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

As described below, because plaintiffs do not allege that any named plaintiff purchased a

ticket from Lufthansa, plaintiffs lack standing under Article III of the U.S. Constitution to raise

their claims against Lufthansa. Dismissal of the claims against Lufthansa is therefore required

pursuant to Fed. R. Civ. P. 12(b)(1). In addition, dismissal of plaintiffs' claims against

Lufthansa is required pursuant to Fed. R. Civ. P. 12(b)(6) for three reasons. First, plaintiffs fail

to state a claim under Massachusetts law for each of the state law claims alleged in the

complaint, and this failure is especially apparent with respect to Lufthansa because plaintiffs do

not allege that any named plaintiff has purchased a ticket from Lufthansa. Second, plaintiffs'

claims are expressly preempted by the Airline Deregulation Act of 1978 (the "ADA"). Third,

1

plaintiffs' claims are barred by Section 7422 of the Internal Revenue Code, 26 U.S.C. § 7422 (1998). [1]

### STATEMENT OF ALLEGED FACTS AND PROCEDURAL HISTORY

Plaintiffs' complaint raises multiple claims for relief against a group of domestic airlines, several foreign flag carriers, and ATA (collectively, "defendants"). The complaint alleges that plaintiffs purchased nonrefundable airline tickets that plaintiffs never used. (Compl. ¶ 1.) Specifically, the complaint includes allegations that various named plaintiffs purchased nonrefundable tickets from the other airlines; the complaint includes no allegations that any named plaintiff purchased any ticket from Lufthansa.

Plaintiffs contend that payments for nonrefundable tickets have included various taxes and/or fees. Id. Specifically, plaintiffs are concerned with three types of taxes and fees, "passenger facility charge user fees," "zip tax user fees," and unspecified "foreign landing tax or user fees." Id. Plaintiffs allege that defendant airlines have collected these taxes and fees on unused nonrefundable tickets but have not submitted them to the relevant government agencies or refunded them to their customers. Id.

Plaintiffs seek a declaratory judgment pursuant to Mass. Gen. L. ch. 231A, § 2 (Count I), and raise claims of civil conspiracy and unjust enrichment (Count II), breach of fiduciary duty (Count III), breach of contract (Count IV), and breach of good faith and fair dealing (Count V). Plaintiffs raise these claims as a putative class action and purport to represent all similarly

---

[1] On January 31, 2005, defendants Delta Air Lines, Inc., American Airlines, Inc., Northwest Airlines, Inc., Alaska Airlines, Inc., Continental Airlines, Inc., Southwest Airlines, Co., and Air Transport Association of America, Inc. ("ATA") (collectively, "Domestic Defendants") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the three grounds listed above and a supporting Memorandum of Law ("Domestic Defendants' Memorandum") (Attached as Exhibit A).

US1DOCS 4965379v1

situated individuals. (Compl. ¶ 1.) In addition to a declaratory judgment, plaintiffs seek restitution of the monies, taxes, and fees allegedly retained by the defendant airlines, trebling of the restitution amount, a permanent injunction preventing defendants from retaining the taxes and fees, the appointment of an independent authority to review and assess the restitution claims of all putative class members, costs and expenses of litigation, and any further relief deemed appropriate by the court. (Compl. at 9.)

      Plaintiffs filed this putative class action on November 4, 2004 in Middlesex Superior Court. Defendant Alitalia-Linee Aeree Italiane S.p. A. ("Alitalia") filed a notice of removal pursuant to 28 U.S.C. §§ 1441(d) and 1603(a) on December 6, 2004. On December 8, 2004, the Domestic Defendants, China Eastern Airlines Corp. Ltd., China Southern Airlines Corp. Ltd., British Airways, PLC, Alitalia, and Lufthansa filed a notice of additional grounds for removal, which stated that defendants were not waiving any grounds for dismissal available under Fed. R. Civ. P. 12. On January 31, 2005, the Domestic Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Alaska Airlines and the ATA each filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiffs served Lufthansa by certified mail return receipt requested pursuant to Mass. Gen. L. ch. 223A on January 18, 2005. Accordingly, Lufthansa's response is due on February 10, 2005. See Fed. R. Civ. P. 12(a) and 6(a).

<div align="center">

**ARGUMENT**

</div>

## I.    Plaintiffs Lack Standing To Raise Their Claims Against Lufthansa.

      Standing must be demonstrated by all "those who seek to invoke the power of the federal courts." O'Shea v. Littleton, 414 U.S. 488, 493 (1974). This is because "standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." Warth v. Seldin, 422 U.S. 490, 498 (1975). See also

<div align="center">

3

</div>

id. ("This is the threshold question in every federal case, determining the power of the court to entertain the suit."). "[T]he irreducible constitutional minimum of standing" requires a plaintiff to show (1) injury in fact, (2) traceability, or a causal connection between the injury and the purported illegal conduct, and (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-01 (1992). See also Blum v. Yaretsky, 457 U.S. 991 999 (1982) ("It is axiomatic that the judicial power conferred by Art. III may not be exercised unless the plaintiff shows 'that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" (quoting Gladstone, Realtors v. Vill. of Bellwood, 441 U.S. 91, 99 (1979))).

That a plaintiff brings claims as part of a class action does not relieve it of this threshold obligation or otherwise alter the requirements for standing. In particular, the Supreme Court has repeatedly explained that the named plaintiffs in a putative class action "must allege and show that they personally have been injured." Warth, 422 U.S. at 502. It is insufficient to allege that "injury has been suffered by other, unidentified members of the class to which [the named plaintiffs] belong and which they purport to represent." Id.; see Blum, 457 U.S. at 999 ("It is not enough that the conduct of which the plaintiff complains will injure *someone*. The complaining party must also show that he is within the class of persons who will be concretely affected." (emphasis in original)). In short, "[t]hat a suit may be a class action . . . adds nothing to the question of standing." Lewis v. Casey, 518 U.S. 343, 357 (1996) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976)). See generally, 1 Conte & Newberg, Newberg on Class Actions § 1:2 (4th ed. 2002) ("Significantly, procedural Rule 23 cannot be construed to extend or limit the jurisdiction and venue of federal courts or to abridge, modify, or

4

enlarge any substantive right. Thus, for example, a class action cannot confer standing to sue on a named plaintiff who seeks to represent a class." (footnotes omitted)).

In the instant case, plaintiffs purport to bring this action "on behalf of themselves and on behalf of all others similarly situated, specifically, people who have forfeited airline tickets and/or had nonrefundable tickets for airline travel, and who paid one or more of the following fees or taxes to the defendant airlines." (Compl. ¶ 1. See also id. ¶ 34.) The named plaintiffs include individuals who, the complaint alleges, purchased nonrefundable tickets from a number of defendant airlines and did not use those tickets, (see Compl. ¶¶ 2-16); critically, the complaint includes no allegation that any named plaintiff purchased any ticket from Lufthansa or that Lufthansa withheld from any named plaintiff any funds due or owing to that individual. Accordingly, plaintiffs allege no injury that they personally suffered as a result of the conduct of Lufthansa. As the Supreme Court explained in Lujan, "[s]ince [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Lujan, 504 U.S. at 561. Because plaintiffs' standing to raise claims on behalf of purchasers of nonrefundable Lufthansa tickets "does not adequately appear from all materials of record," these claims must be dismissed. Warth, 422 U.S. at 502; see also Fed. R. Civ. P. 12(b)(1).

Recent case law from this Court confirms the conclusion that in a putative class action against multiple defendants, where none of the named plaintiffs alleges that he or she has been injured by a particular defendant, the named plaintiffs lack standing to raise their claims against that defendant. In In re Eaton Vance Corporation Securities Litigation, 219 F.R.D. 38 (D. Mass.

5

2003) ("Eaton Vance I"),[2] for example, a group of investors sued several defendants, including four mutual funds, which were separately incorporated. The named plaintiffs had not purchased shares in two of the mutual funds but nonetheless attempted to bring suit on behalf of a class of investors who purchased shares in any of the four funds. The Eaton Vance I court determined that the named plaintiffs could not have been injured by the two funds in which they had not invested and, accordingly, it dismissed all of the named plaintiffs' claims against these two funds. Because "plaintiffs 'cannot demonstrate the requisite case or controversy between themselves personally and [the two funds in which they had not invested,] none may seek relief on behalf of himself or any other member of the class.'" Id. at 41 (quoting Blum, 457 U.S. at 1001 n. 13 (internal quotation marks omitted)).

Likewise, in In re Pharmaceutical Industry Average Wholesale Price Litigation, 263 F. Supp. 2d 172 (D. Mass. 2003), this Court held that claims against certain defendants must be dismissed because no named plaintiff alleged any injury caused by those defendants. A group of plaintiffs had sued several pharmaceutical companies and this Court found that "several pharmaceutical companies correctly argue that the individually named plaintiffs do not have standing to bring suit against *them* because no plaintiff claims to have purchased *their* drug." Id. at 193 (emphasis in original) (citing Allen v. Wright, 468 U.S. 737, 751 (1984)). This Court rejected plaintiffs' argument that a named plaintiff that purchased drugs from one company can serve as representative for a class of persons who made purchases from other companies: "[U]nder long-standing case law, '[a] named plaintiff cannot acquire standing to sue by bringing

---

[2] This decision also addressed class certification questions that were appealed to the First Circuit. The First Circuit stayed the case and remanded to the district court for further consideration. On remand, the district court concluded that the prior decision had taken the "proper approach" to the standing inquiry. See In re Eaton Vance Corp. Sec. Litig., 220 F.R.D. 162, 169 (D. Mass. 2004) ("Eaton Vance II").

6

his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs .... Standing cannot be acquired through the backdoor of a class action.'" In re Pharm. Indus. Average Wholesale Price Litig., 263 F. Supp. 2d at 193 (quoting Allee v. Medrano, 416 U.S. 802, 828-29 (1974) and citing O'Shea v. Littleton, 414 U.S. 488, 494 (1974)).[3] Accordingly, plaintiffs lack standing to raise their claims against any defendant, such as Lufthansa, from which they do not allege ever to have purchased a ticket.[4]

For these reasons, plaintiffs' claims against Lufthansa must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).[5]

---

[3] Other courts have reached the same conclusion in comparable cases. See, e.g., Easter v. Am. W. Fin., 381 F.3d 948, 961-62 (9th Cir. 2004) ("Here, no named plaintiff can trace the alleged injury in fact—payment of usurious interest rates—to all of the Trust Defendants, but only to the Trust Defendant that holds or held that plaintiff's note. As to those trusts which have never held a named plaintiff's loan, Borrowers cannot allege a traceable injury and lack standing."); Henry v. Circus Circus Casinos, Inc., 223 F.R.D. 541, 544 (D. Nev. 2004) ("[W]hat is required is that for every named defendant there be at least one named plaintiff who can assert a claim directly against that defendant"); In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig., 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003) ("Plaintiff's claim against the Defendants under Section 12(a)(2) of the Securities Act also fails because plaintiff has not sufficiently alleged that she purchased the mutual fund shares directly from any of the Defendants [and] it is axiomatic that a putative class representative must be able to individually state a claim against defendants, even though he or she purports to act on behalf of a class."); see also Griffin v. Dugger, 823 F.2d 1476, 1483 (11th Cir. 1987) ("Thus, a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, 'even if the persons described in the class definition would have standing themselves to sue.'" (quoting Brown v. Sibley, 650 F.2d 760, 771 (5th Cir. 1981))); cf. Barry v. St. Paul Fire and Marine Ins. Co. 555 F.2d 3, 13 (1st Cir. 1977).

[4] Plaintiffs cannot avoid this result by citing their conclusory allegations of civil conspiracy in Count II of the complaint. As discussed below, plaintiffs fail to state a claim of civil conspiracy under state law, and such bare-boned, unsupported conclusions cannot manufacture standing where it otherwise does not exist.

[5] The obligation of the court to assure itself of its own jurisdiction requires consideration of standing at this juncture. The Supreme Court's decisions in Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999) and Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997), do not suggest otherwise. As this Court and several other courts have determined, Ortiz and Amchem stand for the limited proposition that courts may consider class certification questions prior to standing

7

## II.    Plaintiffs Fail to State a Claim Under Massachusetts Law. [6]

Plaintiffs' complaint raises claims of civil conspiracy, unjust enrichment, breach of

fiduciary duty, breach of contract, and breach of good faith and fair dealing.  For the reasons set

forth below, plaintiffs' complaint fails to state a claim under state law with respect to each of

these claims, and the complaint should therefore be dismissed pursuant to Fed. R. Civ. P.

12(b)(6).[7]

*Civil Conspiracy*:  As noted above, plaintiffs do not allege that any named plaintiff

purchased a ticket from Lufthansa.  Nor do they allege any conduct on the part of Lufthansa that

would indicate a common plan or any kind of cooperation or coordination between Lufthansa

---

only where such questions are logically antecedent to standing issues or render consideration of standing moot by otherwise requiring dismissal.  See, e.g., Eaton Vance II, 220 F.R.D. at 165; In re Relafen Antitrust Litig., 221 F.R.D. 260, 268-269 (D. Mass. 2004);  see also Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315, 319 n.6 (5th Cir. 2002).  Accordingly, where, as here, in Eaton Vance II, and in In re Relafen Antitrust Litig., class certification questions are not dispositive or logically antecedent, the court must adhere to the longstanding rule that standing—which goes to the court's jurisdiction—must be considered as a threshold matter.  A different approach would "carr[y] courts beyond the bounds of authorized judicial action and thus offend[ ] fundamental principles of separation of powers." Steel Co., 523 U.S. at 94.  Indeed, were the Ortiz exception to be read broadly, it would raise the specter that "any plaintiff could sue a defendant against whom the plaintiff had no claim in a putative class action, on the theory that some member of the hypothetical class, if a class were certified, might have a claim.  Plaintiffs may not use the procedural device of a class action to bootstrap [themselves] into standing [they] lack[]." Eaton Vance II, 220 F.R.D. at 169 (quoting Dash v. FirstPlus Home Loan Owner Trust 1996-2, 248 F. Supp. 2d 489, 503 (M.D.N.C. 2003) (internal quotation marks omitted) (alterations in the original)).

[6] For purposes of the present motion to dismiss, Lufthansa assumes that Massachusetts law applies to these common law claims.  It is unclear, however, what state's law would apply if the complaint were to include a named plaintiff who alleged to have purchased a ticket from Lufthansa, because that determination might depend in large degree on the particular facts of the alleged transaction.

[7] Plaintiffs also seek declaratory relief.  This claim is premised on the other claims alleged by plaintiffs.  See Mass. Gen. L. c. 231A, § 2.  If plaintiffs' other claims are dismissed, the declaratory judgment claim must also be dismissed.

and the other defendant airlines (from which the named plaintiffs do allege to have purchased a ticket). Moreover, to the extent that plaintiffs' conspiracy claim relies on allegations concerning the activities of defendant ATA and its members, see Compl. ¶¶ 33, 45, such allegations are irrelevant to a claim against Lufthansa, which is not a member of the ATA and is not otherwise alleged to have participated in ATA's activities. Plaintiffs' conspiracy claim against Lufthansa must therefore be dismissed for failure to state a claim. For the reasons set forth in the Domestic Defendants' Memorandum, moreover, plaintiffs have failed sufficiently to plead a civil conspiracy under Massachusetts law against any of the defendant airlines. See Ex. A at 16-17. The Domestic Defendants' arguments apply with equal force to Lufthansa, and Lufthansa incorporates these arguments herein.

*Unjust Enrichment*: An unjust enrichment claim requires an allegation, *inter alia*, that the plaintiff conferred a benefit on the defendant. See, e.g., Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co., 534 F. Supp. 340, 347 (D. Mass. 1982). In this case, plaintiffs have failed to allege that a named plaintiff conferred any sort of benefit on Lufthansa and the claim fails for this reason alone. Moreover, for the reasons explained in the Domestic Defendants' Memorandum, even if a named plaintiff had purchased a ticket for travel on Lufthansa, the terms of that ticket—an express contract between the parties—would bar any claims of unjust enrichment, which is an equitable remedy. See Ex. A at 17-18. Lufthansa incorporates these arguments by reference.

*Breach of Fiduciary Duty*: The elements of a claim of breach of fiduciary duty are a fiduciary duty based on a relationship between the parties, a breach of that duty, damages, and a causal connection between breach of the duty and the damages." See Hanover Ins. Company v. Sutton, 46 Mass. App. Ct. 153, 164 (1999). Named plaintiffs have failed to allege any facts that

9

would lay the foundation for a finding of a relationship between them and Lufthansa, any basis to find a duty to them on the part of Lufthansa, and no damages caused to them by a breach of any duty. Additionally, as explained in the Domestic Defendants' Memorandum, even if a named plaintiff had alleged the purchase of a ticket from Lufthansa, this would not suffice as a basis for a finding of a fiduciary duty. See Ex. A. at 18. Lufthansa incorporates these arguments by reference.

*Breach of Contract*: The elements of a contract claim are (a) a valid contract, (b) the breach of the contract, and (c) damages to the plaintiff from the breach. See Mass Cash Register, Inc. v. Comtrex Sys. Corp., 901 F.Supp. 404, 415 (D.Mass. 1995). In this case, the complaint fails to allege *any* contract between a named plaintiff and Lufthansa, let alone any breach or damages stemming from the breach of that contract. Even if a named plaintiff did allege a contract with Lufthansa, however, the allegation still fails to state a claim for the reasons articulated in the Domestic Defendants' Memorandum, which are incorporated herein by reference. See Ex. A at 19.

*Breach of Good Faith and Fair Dealing*: "A contract is a necessary element of a claim for ... breach of the implied covenant of good faith and fair dealing." Moore v. Marty Gilman, Inc., 965 F. Supp. 203, 222 n.16 (D. Mass. 1997). As explained above, plaintiffs have failed to allege the existence of a contract between a named plaintiff and Lufthansa. Accordingly, this claim must be dismissed under Fed. R. Civ. P. 12(b)(6). Even if named plaintiffs were to have alleged a contract with Lufthansa, however, the claim would fail for the independent reasons set forth in Domestic Defendants' Memorandum. See Ex. A at 19-20. Lufthansa incorporates these arguments by reference.

10

### III.  Plaintiffs' Claims Are Preempted By Section 105 of the Airline Deregulation Act.

Regardless of questions of standing and the sufficiency of the allegations under state law,

plaintiffs' claims must be dismissed in any event because they are preempted by federal law.  For

the reasons explained in the Domestic Defendants' Memorandum, Plaintiffs' claims for breach

of fiduciary duty, unjust enrichment,[8] and declaratory relief, are expressly preempted by the

ADA.  See Ex. A. at 3-7 11-13.  Lufthansa incorporates these arguments by reference.

Plaintiffs' claims based on contracts, namely breach of contract and breach of good faith

and fair dealing, are also preempted by Section 105.  As noted above, plaintiffs have failed to

allege the existence of any contract between a named plaintiff and Lufthansa and therefore

necessarily have not alleged that Lufthansa has breached any contractual obligation established

by the express terms of such a contract.  As the Domestic Defendants' Memorandum explains,

where contract claims do not rest on allegations of a breach of an express contract term and

instead look beyond the contract, the contract claims fall within the scope of federal preemption

under Section 105.  See Ex. A. 7-10.[9]

---

[8] The unjust enrichment claim includes allegations of civil conspiracy.  As the Domestic
Defendants' Memorandum notes, however, the civil conspiracy allegation does not alter the
preemption analysis for the unjust enrichment claim.  See Ex. A at 12 n.13.

[9] That Lufthansa is a foreign carrier does not affect the arguments raised by the Domestic
Defendants concerning preemption under the ADA; plaintiffs' state law claims are preempted
regardless whether they concern domestic or foreign carriers.  It is the state law nature of
plaintiffs' claims, not the variety of defendant, that is relevant to the preemption analysis.  See,
e.g., Lawal v. British Airways, PLC, 812 F. Supp. 713, 718 (S.D. Tex. 1992) (finding that "the
preemption provisions of the ADA clearly apply to foreign air carriers" and observing that the
Supreme Court decision in Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992) "entered
judgment in favor of an entire array of respondents, without any mention of differences in their
status as foreign or 'citizen' air carriers.").

## IV.  Section 7422 of the Internal Revenue Code Bars Plaintiffs' Claims.

For the reasons set forth in the Domestic Defendants' Memorandum, Section 7422 of the

Internal Revenue Code bars Plaintiffs' claims as to taxes imposed by the Internal Revenue

Service.  See Ex. A at 13-15.[10]

## CONCLUSION

For the foregoing reasons, defendant respectfully submits that its motion to dismiss

should be granted.

Dated: February 10, 2005

<div style="margin-left:40%;">

Wilmer Cutler Pickering Hale and Dorr LLP
Attorneys for Deutsche Lufthansa, A.G.

By:  _____
       Daniel M. Esrick, BBO #647676
       Wilmer Cutler Pickering Hale and Dorr LLP
       60 State Street
       Boston, MA 02109
       (617) 526-6000
       (617) 526-5000 (fax)

</div>

*Of Counsel:*
David W. Ogden, Esq.
Ethan G. Shenkman, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
2445 M Street, NW
Washington, D.C.  20037
(202) 663-6000

---

[10] As with the preemption argument under the ADA, Lufthansa's status as a foreign carrier does not alter the analysis as to whether plaintiffs are alleging a claim for a tax refund that is barred under the Internal Revenue Code.  The application of the provision at issue does not turn on the nature of the tax collecting entity but on the claims raised by the plaintiff.

12

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2005, I caused a true copy of the foregoing document to be sent by Federal Express overnight delivery to the following:

Evans J. Carter, Esq.
HARGRAVES, KARB, WILCOX &
GALVANI, LLP
550 Cochituate Road – P.O. Box 966
Framingham, MA 01701-0966

Matthew A. Porter, Esq.
DECHERT LLP
200 Clarendon Street, 27th Fl.
Boston, MA 02116


Sheri F. Murry, Esq.
385 Broadway, Ste 201
Revere, MA 02151

Kevin C. Kain, Esq.
PEABODY & ARNOLD LLP
30 Rowes Wharf
Boston, MA 02110


Thomas J. Whalen, Esq.
CONDON & FORSYTH LLP 1016
Sixteenth Street, NW
Washington, DC 20036

Andrew Harakas, Esq.
CONDON & FORSYTH LLP
685 Third Avenue
New York, NY 10017


British Airways PLC
75-20 Astoria Boulevard
Jackson Heights, NY 11370

Kathleen M. Guilfoyle
Christopher Robert Howe
CAMPBELL, CAMPBELL, EDWARDS &
CONROY, PC
One Constitution Plaza
Boston, MA 02129


Daniel M. Esrick

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| ROBERT HARRINGTON, et al., | ) | |
| | ) | |
| Plaintiffs | ) | Civil Action No. |
| v. | ) | 04-12558-NMG |
| | ) | |
| DELTA AIR LINES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DOMESTIC DEFENDANTS' MOTION TO DISMISS

Defendants Delta Air Lines, Inc., American Airlines, Inc., Northwest Airlines, Inc., Alaska Airlines, Inc., Continental Airlines, Inc., Southwest Airlines Co., and Air Transport Association of America, Inc. ("ATA") (collectively the "Domestic Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]

As set forth more fully below, dismissal of the Complaint in its entirety with prejudice is required as to the Domestic Defendants for the following reasons: (1) the Plaintiffs' claims are expressly preempted by the Airline Deregulation Act of 1978 (the "ADA"); (2) the Plaintiffs' claims are barred by Section 7422 of the Internal Revenue Code, 26 U.S.C. § 7422; and (3) even assuming, *arguendo*, that the Plaintiffs' claims were not preempted and barred by federal law, as a matter of state law the Plaintiffs have failed to state a claim as to each of the separate counts alleged in the Complaint. Accordingly, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] Additionally, ATA and Alaska Airlines, Inc. have separately moved for dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Those motion papers are being filed contemporaneously herewith.

## STATEMENT OF FACTS ALLEGED IN THE COMPLAINT

The Complaint alleges five separate counts: (1) declaratory judgment pursuant to Mass. Gen. L. c. 231A, § 2; (2) civil conspiracy and unjust enrichment; (3) breach of fiduciary duty; (4) breach of contract; and (5) breach of good faith and fair dealing.[2]  As the general basis for their claims, the Plaintiffs allege that they purchased, but did not use, nonrefundable tickets from the Domestic Defendants for domestic airline travel.  See Complaint, ¶ 1.  The Plaintiffs allege that while they paid fees or taxes in connection with their nonrefundable airline tickets, the Domestic Defendants did not submit such fees or taxes to the applicable government agencies.  Instead, the Plaintiffs allege that the Domestic Defendants kept the fees and taxes for their own benefit and also concealed their conduct from the Plaintiffs.[3]  Id.  The Complaint identifies the following fees and taxes as the subject of the Plaintiffs' claims: (1) "passenger facility charge user" fees, (2) "zip tax user" fees, and (3) unspecified "foreign landing tax or user" fees.  Id.

## ARGUMENT & AUTHORITIES

### I.    STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must take well-pled factual allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Inferences in favor of the plaintiff's factual allegations, however, do not extend to legal conclusions, see Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993), and the court need not credit "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'"  Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987) (quoting Snowden v. Hughes, 321 U.S. 1, 10 (1944)).  Dismissal under Rule

---

[2] Although the Complaint does not explicitly designate different defendants across the counts, it appears that only co-conspirator liability for unjust enrichment (Count II) is alleged against Defendant ATA since there is no allegation in the Complaint that ATA actually sells tickets to the public.

[3] Because this is a Rule 12(b)(6) motion, the Domestic Defendants are not offering evidence to dispute the Plaintiffs' allegations.  There is, however, absolutely no basis for the Plaintiffs' allegations.

12(b)(6) is mandated if, as in the present case, the complaint presents no set of facts justifying

recovery. See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).

## II.    THE PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED BY SECTION 105 OF THE AIRLINE DEREGULATION ACT.

In the first instance, all of the Plaintiffs' claims must be dismissed because they are

expressly preempted by the Airline Deregulation Act ("ADA"), which Congress enacted in 1978 to

deregulate the domestic airline industry. Section 105 of the ADA ("Section 105") contained a

preemption provision, which read in relevant part:

> [N]o State . . . shall enact or enforce any law, rule, regulation, standard, or
> other provision having the force and effect of law relating to rates, routes, or
> services of any air carrier . . . .

Pub. L. No. 95-504, 92 Stat. 1705 (1978) (codified as amended at 49 U.S.C. § 41713).[4]

A claim is expressly preempted by Section 105 if it (1) relates to rates, routes, or services of

an airline and (2) entails an enactment or enforcement of state law. See Travel All Over the World,

Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1432 (7th Cir. 1996); All World Professional

Travel Servs., Inc. v. American Airlines, Inc., 282 F. Supp. 2d 1161, 1168 (C.D. Cal. 2003).

Because the Plaintiffs' claims in this case directly relate to the Domestic Defendants' rates and

services, and because adjudication of the claims would clearly require the enforcement of state law,

the Plaintiffs' claims are expressly preempted by the ADA. Therefore, they must be dismissed.

---

[4] When Title 49 was reenacted in 1994, Congress made several minor alterations to the wording of the preemption provision, which is presently codified as amended at 49 U.S.C. § 41713. As currently codified, the ADA provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ." Id. The 1994 amendments made no substantive changes to the provision. See American Airlines, Inc. v. Wolens, 513 U.S. 219, 223 n.1 (1995); United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 335 n.17 (1st Cir. 2003). For consistency and ease of discussion, this Memorandum follows the practice of most of the case law in this area by referring to the original language of Section 105. See, e.g., Wolens, 513 U.S. 219. It does, however, track the language used in particular cases -- for example, referring to "prices" rather than "rates" in discussing several cases that applied the amended version of the preemption clause.

A.    **The Plaintiffs' Claims Directly Relate to the Domestic Defendants' Rates and Services.**

In Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992), the Supreme Court set forth an expansive reading of Section 105's "relating to" language. The Court rejected the argument that Section 105 only preempts states from affirmatively prescribing rates, routes, or services. Id. at 385-86. Rather, noting that Section 105 was intended "[t]o ensure that the States would not undo federal deregulation with regulation of their own," the Court recognized that the words "relating to" expressed a "broad pre-emptive purpose." Id. at 378, 384. The Court accordingly articulated a broad preemption standard for the ADA: "State enforcement actions *having a connection with or reference to* airline 'rates, routes, or services' are pre-empted under [Section 105]." Id. (emphasis added). Additionally, the Court rejected the proposition that Section 105 only preempts (1) state laws specifically addressed to the airline industry and (2) state regulations that are overtly inconsistent with the ADA. Id. at 386-87.

Under the Morales standard, the Plaintiffs' claims in this case clearly constitute claims "relating to" the Domestic Defendants' rates within the meaning of Section 105. Each of the Plaintiffs' claims is premised on the allegation that the Domestic Defendants withheld certain taxes or fees that were charged to the Plaintiffs in connection with their purchase of nonrefundable tickets for domestic airline travel. The passenger ticket taxes and fees that airlines are obligated to collect in connection with these ticket purchases directly impact the price of air transportation to the passenger, and therefore not only have a "connection with or reference to" airline ticket rates -- which is all that Morales requires -- but in fact also have a *direct impact* on the price of air transportation. See All World, 282 F. Supp. 2d at 1169 ("A claim relates to airline prices if the claim expressly refers to price or has a significant economic effect upon price."). Thus, and significantly on point with this case, a number of courts have expressly held that claims for the

recovery of taxes paid in connection with airline tickets relate to airline rates under Morales. See Statland v. American Airlines, Inc., 998 F.2d 539, 542 (7th Cir. 1993) ("We think it obvious that canceled ticket refunds [for federal excise taxes] relate to rates."); Kaucky v. Southwest Airlines Co., No. 96-C-750, 1996 WL 267875, at *4 (N.D. Ill. May 17, 1996) (unpublished decision), aff'd, 109 F.3d 349 (7th Cir. 1997) (claim for excise tax refund relates to price because excise tax "directly impacts ticket price"); Lehman v. USAIR Group, Inc., 930 F. Supp. 912, 915 (1996) (same); Strategic Risk Management, Inc. v. Fed. Express Corp., 253 A.D.2d 167, 172-73 (N.Y. App. Div. 1999) (same). A number of state courts have held that similar claims stemming from an airline's ticket refund or ticket re-issuance policies also relate to airline rates or prices within the meaning of the ADA's preemption clause and are therefore preempted. See, e.g., Boon Ins. Agency, Inc. v. American Airlines, Inc., 17 S.W.3d 52, 58 (Tex. Ct. App. 2000) (reissue fee relates to price because it "has the effect of raising the price of the ticket"); Howell v. Alaska Airlines, Inc., 994 P.2d 901, 905 (Wash. App. 2000) (claim for refund for price of unused ticket preempted by ADA).

Additionally, while the Complaint does not provide a detailed description of the taxes and fees that the Domestic Defendants allegedly withheld, the labels the Plaintiffs have given to the taxes and fees -- "passenger facility charge user fees," "zip tax user fees," and "foreign landing tax or user fees"[5]-- indicate that the taxes and fees at issue are related to either the use of airport facilities or other aspects of actual air transportation. Thus, the airline defendants' policies and practices in connection with the collection and remission of such fees and taxes to the applicable taxing authority also relate to the Domestic Defendants' services within the meaning of Section 105.

---

[5] The "foreign landing tax or user fee" presumably applies to foreign travel and thus is relevant only to the Plaintiffs' claims against the foreign airline defendants because the Complaint only alleges that the Plaintiffs bought tickets for domestic travel from the Domestic Defendants. In any event, whether the foreign tax/fee applies to the Domestic Defendants does not affect the general conclusion that the taxes and fees at issue in this case relate to the claims against the Domestic Defendants' rates and services and are therefore preempted by Section 105.

See Hodges v. Delta Air Lines, Inc., 44 F.3d 334, 336 (5th Cir. 1995) (en banc) ("Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, *in addition to the transportation itself.*" (emphasis added)); see also Travel All Over The World, 73 F.3d at 1433 (adopting Hodges standard).[6]

### B.    Adjudication of the Plaintiffs' Claims Would Constitute Impermissible Enforcement of Preempted State Law.

In American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995)the Supreme Court reaffirmed the broad standard for the "relating to" language set forth in Morales, concluding with virtually no discussion that the plaintiffs' claims concerning the defendant airline's frequent flyer program related to both the rates and services of the defendant. Id. at 226. Moving beyond Morales, the Wolens Court turned to the "enact or enforce any law" language of Section 105, id. at 226, and it held that while the ADA preempted state claims under a general state statute regulating deceptive marketing practices, the ADA did not preempt certain "routine" common law breach of contract claims that sought only to enforce "privately-ordered obligations" voluntarily undertaken by the air carrier pursuant to the express terms of its contract with consumers. Id. at 229, 232. Thus, Wolens holds that the ADA does not preempt breach of contract claims in which a party is specifically alleged to have breached its "own, self-imposed undertaking," and in which adjudication of a claim concerns only "the parties' bargain, *with no enlargement or enhancement based on state laws or policies external to the agreement.*" Id. at 228, 233 (emphasis added).

This exception to the broad preemptive scope of the ADA is extremely narrow. See Harris v. American Airlines, Inc., 55 F.3d 1472, 1477 (9th Cir. 1995), overruled on other grounds by Charas v. Trans World Airlines, Inc., 160 F.3d 1259 (9th Cir. 1998) (exception for contract claims

---

[6] Neither the Supreme Court nor the First Circuit has defined the term "service" as used in Section 105. However, several district courts in the First Circuit have adopted the broad standard set forth by the Fifth Circuit in Hodges and subsequently adopted by the Seventh Circuit. See DeTerra v. America West Airlines, Inc., 226 F. Supp. 2d 274, 277 (D. Mass. 2002); Chukwu v. Board of Directors British Airways, 889 F. Supp. 12, 13 (D. Mass. 1995), aff'd, 101 F.3d 106 (1st Cir. 1996); see also Stone v. Frontier Airlines, Inc., 256 F. Supp. 2d 28, 39 (D. Mass. 2002) (citing Hodges).

is "narrow exclusion" from "wide scope of preemption"); Breitling U.S.A., Inc. v. Federal Express Corp., 45 F. Supp. 2d 179, 184 (D. Conn. 1999) ("This exception is a narrow one."); Western Parcel Express v. United Parcel Serv. of Am., Inc., No. 96-1526, 1996 WL 756858 (N.D. Dec.3, Cal. 1996) ("Wolens carved out only a narrow exception to preemption for certain routine breach of contract claims."); Stone v. Continental Airlines, Inc., 905 F. Supp. 823, 826 (D. Haw. 1995) ("This exception [] is narrow and limited . . . .").

### C.    The ADA Therefore Preempts the Plaintiffs' Claims.

### 1.    The Plaintiffs' Contract-Based Claims Are Preempted Under Wolens.

The Plaintiffs' contract-based claims[7] are preempted as a matter of law because they fall squarely *outside* of the scope of the Wolens exception. The Plaintiffs here, unlike in Wolens, have not alleged (and cannot truthfully allege) that the Domestic Defendants ever undertook to refund taxes and fees on nonrefundable tickets. To the contrary, the Plaintiffs' breach of contract claims consist of the bare assertion that "each of the defendant airlines have breached their agreement with the plaintiffs." Complaint, ¶ 52. This conclusory allegation is not sufficient to avoid the wide scope of preemption under the ADA.

Notice pleading notwithstanding, a plaintiff must do more than merely allege a contract breach to bring the claims within the narrow purview of the Wolens exception and overcome the wide scope of the ADA's preemption provision. See Fondo v. Delta Air Lines, Inc., No. 00-2445, 2001 WL 604039, at *2-*3 (S.D.N.Y. May 31, 2001) (dismissing preempted contract claim for failure to state a claim).[8] Here, however, the Plaintiffs have not alleged, nor could they conceivably allege, a breach by any of the Domestic Defendants of a self-imposed contractual obligation. The

---

[7] This includes the Plaintiffs' breach of contract and good faith and fair dealing claims.

[8] Moreover, the Plaintiffs' inclusion of a claim in *quantum meruit* for unjust enrichment belies any suggestion by the Plaintiff that the Domestic Defendants breached a specific contractual term because the assertion of an unjust enrichment claim presupposes that no valid contract covers the subject matter of the dispute. See Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993); Commonwealth Aluminum Corp. v. Baldwin Corp., 980 F. Supp. 598, 607 (D. Mass. 1997) ("Recovery may be had in quantum meruit, of course, in the absence of a legal or enforceable contract.").

only contractual relationship between the parties is that embodied in the tickets the Plaintiffs allegedly purchased and in the carriers' applicable "contracts of carriage" incorporated by reference into the ticket contracts pursuant to federal regulation. See Fondo, 2001 WL 604039, at *3 ("An airline ticket, as supplemented by the carrier's tariff, embodies the contract of carriage between the airline and its passenger." (citing 14 C.F.R. § 253.4)).[9] In the Complaint, the Plaintiffs specifically allege that the tickets they purchased were "nonrefundable." Complaint, ¶ 1. Nowhere in the Complaint do the Plaintiffs identify any specific provision in any air carriers contract of carriage pursuant to which any of the Domestic Defendants expressly promised to make refunds of any sort on unused nonrefundable tickets. Moreover, the Plaintiffs never even allege that they requested refunds from the Domestic Defendants. Thus, the Complaint does not allege -- and indeed flatly contradicts the allegation -- that any of the Domestic Defendants breached any express contractual undertaking to provide refunds to the Plaintiffs for taxes and fees associated with the unused, and undisputedly nonrefundable, tickets breached any express contractual term or condition.

Because the Plaintiffs have not alleged and cannot allege the breach of any express contractual undertaking by the Domestic Defendants to provide refunds of taxes, the Plaintiffs' contract-based claims necessarily depend on considerations external to any agreement between the parties. Any such claim does not fall within the narrow Wolens exception and is preempted by Section 105 because it requires an "enlargement or enhancement based on state laws or policies external to the agreement" prohibited by Wolens. See Smith v. Comair, Inc., 134 F.3d 254, 257 (4th Cir. 1998) ("[W]hen a contract claim cannot be adjudicated without resort to outside sources of law, the claim is still preempted by the ADA.").

---

[9] The regulations governing carrier contracts of carriage state that "[t]he purpose of this rule is to set uniform disclosure requirements, which preempt any State requirements on the same subject, for terms incorporated by reference into contracts of carriage for scheduled service in interstate and overseas passenger air transportation." 14 C.F.R. § 253.1.

Courts following <u>Wolens</u> have consistently held that the ADA preempts breach of contract claims similar to the Plaintiffs' claims here because adjudication of those claims required extra-contractual considerations. See <u>Lyn-Lea Travel Corp. v. American Airlines, Inc.</u>, 283 F.3d 282, 289 (5th Cir. 2002) ("Lyn-Lea's claims do not seek to enforce American's self-assumed contractual obligations"); <u>Comair</u>, 134 F.3d at 258 (preempting breach of contract claim because defendant invoked federal defenses); <u>All World</u>, 282 F. Supp. 2d at 1168-69 (portion of contract claim alleging that fee violated common law rule against contract penalties preempted); <u>Fondo</u>, 2001 WL 604039, at *2-*3 (contract claim based on oral assurance external to express terms of airline ticket preempted); <u>Breitling</u>, 45 F. Supp. at 186-87 (contract claim preempted because it was premised on common law doctrine of waiver); <u>Waul v. American Airlines, Inc.</u>, No. A101212, 2003 WL 22719273, at *3 (Cal. Ct. App. Nov. 17, 2003) (unpublished decision) (breach of contract and good faith and fair dealing claims preempted because "Plaintiff's complaint does not allege the breach of an express term"); <u>Leonard v. Northwest Airlines, Inc.</u>, 605 N.W.2d 425, 433 (Minn. App. 2000) (claim for refund of reissue fee preempted because it relied on common law rule against contract penalties).[10]  More specifically, a number of courts have held that contract-based claims to recover allegedly unwarranted fees and taxes are preempted by the ADA. See <u>Boon</u>, 17 S.W.3d at 58

---

[10] Cases in which courts have held that contract claims are not preempted under <u>Wolens</u> are inapposite because those cases each involved allegations of a simple breach of specific terms of a contractual agreement, see <u>Travel All Over the World</u>, 73 F.3d at 1432 (plaintiffs alleged that defendant breached "self-imposed undertaking" to honor confirmed reservations of plaintiff's clients); <u>All World</u>, 282 F. Supp. 2d at 1168 (part of contract claim alleging airline breached contract by charging fee not specified in contract was not preempted); <u>DeTerra v. America West Airlines, Inc.</u>, 226 F. Supp. 2d 274, 278 (D. Mass. 2002) ("[T]his court concludes that plaintiff's breach of contract claim . . . to the extent that that count sets forth a *simple breach of contract claim*, is not preempted . . . ." (emphasis added)); <u>Chukwu v. Board of Directors British Airways</u>, 889 F. Supp. 12, 14 (D. Mass. 1995) ("<u>Chukwu I</u>") (declining to dismiss contract claim because plaintiff specifically alleged "that [defendant] privately undertook, and breached, a duty to transport"), or concerned circumstances not applicable here. See, e.g., <u>Kingsley v. Lania</u>, 221 F. Supp. 2d 93 (D. Mass. 2002) (breach of contract for dishonoring ticket not preempted for removal purposes). Indeed, while the court in <u>Chukwu I</u>, declined to dismiss the plaintiff's contract claims because the complaint contained specific allegations of contractual breach, in a subsequent summary judgment decision, the court stated that the defendant airline's argument that <u>Wolens</u> was inapplicable because there were no "privately ordered obligations" outside the terms of the airline ticket was "well-taken," but it did not decide the issue choosing instead to dismiss the claim because it found no breach. <u>Chukwu v. Board of Directors British Airways</u>, 915 F. Supp. 454, 456 (D. Mass 1996) ("<u>Chukwu II</u>"). The circumstances here are analogous to those in <u>Chukwu II</u> because the Plaintiffs have not alleged the breach of any contractual terms.

(contract claim for refund of fee for change in ticket was preempted because fee was authorized by ticket); Howell, 994 P.2d at 905 (breach of good faith and fair dealing claim preempted because ticket authorized airline to refuse to give refund for unused ticket); Blackner v. Continental Airlines, 709 A.2d 258, 260 (N.J. Super. 1998) (breach of contract and good faith and fair dealing claims preempted because "contract that exists between plaintiff and airline clearly authorizes the surcharge of which plaintiff complains"); see also Statland, 998 F.2d at 542-43 (breach of contract claims for refund of excise tax preempted); Lehman, 930 F. Supp. at 915-16 (breach of contract claim for refund of excise tax preempted); Kaucky, 1996 WL 267875, at *4 (same).[11]

The Plaintiffs' thinly-veiled attempt to invoke the exception created in Wolens and avoid preemption by disguising their claims as contract claims is thus unavailing. See Stone v. Continental Airlines, 905 F. Supp. at 826 ("The ADA still preempts any state law or public policy claims disguised as contract claims. . . . The court must look at the substance, rather than the form of Plaintiffs' claim."); Boon, 17 S.W.3d at 59 ("Boon's assertion of its claim [for refund of reissue fee] as one of breach of contract is an attempt to avoid the preemption clause and defeat the Act's intent."); see also Breitling, 45 F. Supp. at 187 ("A plaintiff may not avoid preemption under the ADA by presenting a negligence claim as a contract claim."). Underneath the breach of contract facade, the Plaintiffs' claims are exactly the types of claims that Section 105 was intended to preempt. The Plaintiffs' purported contract claims would effectively allow states to regulate airline pricing, an area Congress has specifically deemed to be an exclusively federal concern. See Comair, 134 F.3d at 258-95. Therefore, all of the Plaintiffs' purported contract-based claims must be dismissed as a matter of law.[12]

---

[11] While Statland was decided prior to Wolens, Lehman and Kaucky reaffirmed the Statland holding *after* Wolens, and Kaucky expressly rejected the argument that the claims fell within the Wolens exception. See Kaucky, 1996 WL 267875, at *4.

[12] It should not be overlooked that Congress gave the U.S. Department of Transportation ("DOT") authority to protect consumer interests, and that DOT has a comprehensive enforcement scheme in place to prevent unfair and deceptive

## 2.    The Plaintiffs' Breach of Fiduciary Duty Claims are Preempted Under Wolens

As noted infra section IV.B, the ordinary arms-length retail transaction between the parties did not as a matter of law give rise to a fiduciary relationship. Even assuming, *arguendo*, that the Domestic Defendants owed a fiduciary duty to the Plaintiffs, the claims would be preempted by the ADA. As a general matter, breach of fiduciary duty claims sound in tort, and as such, they fall outside the Wolens exception and are preempted by the ADA. See United Airlines, Inc. v. Mesa Airlines, Inc., No. 97-C-4455, 1999 WL 1144962, at *1 (N.D. Ill. Oct. 5, 1999), aff'd, 219 F.3d 605 (7th Cir. 2000) ("[f]raud, breach of fiduciary duty, and intentional interference with contractual relationships are all causes of action which sound in tort" and are preempted by the ADA); see also Statland, 998 F.2d at 541-42 (breach of fiduciary duty claims preempted by ADA); Cheng v. United Air Lines, Inc., No. 93-C-149, 1995 WL 314575, at *4 (N.D. Ill. May 19, 1995) (same); Johnson v. American Airlines, Inc., 663 N.E.2d 54, 57 (Ill. App. Ct. 1996) (same). Moreover, to the extent the Plaintiffs' fiduciary duty claims are premised on the contractual relationship between the parties, the claims are preempted by the ADA because they look to expand the terms of the nonrefundable ticket and thus constitute impermissible enforcement of state law external to the parties' agreement. See United Airlines, Inc. v. Mesa Airlines, Inc., 219 F.3d 605, 610 (7th Cir. 2000) (rejecting argument that contract-based fiduciary duty claims fall within the Wolens exception because "[o]nly rules external to the parties' bargain could defeat [express contractual rights] but [Section 105] in turn defeats external rules"). Thus, the Plaintiffs' breach of fiduciary duty claims, whether analyzed under a tort or contract theory, are preempted by the ADA and must be dismissed.

---

practices. See 49 U.S.C. § 41712; Wolens, 513 U.S. at 228 n.4; see also Aviation Consumer Protection Division, Organization & Functions, at http://airconsumer.ost.dot.gov/org.htm (the functions of the Aviation Consumer Protection Division are to: (1) receive informal complaints from members of the public regarding aviation consumer issues; (2) verify compliance with DOT's aviation consumer protection requirements; (3) provide guidance to the industry and members of the public on consumer protection matters; and (4) make available to the public information on pertinent consumer matters).

3.    **The Plaintiffs' Claims for Unjust Enrichment and Declaratory Relief Are Preempted Under <u>Wolens</u>.**

Unlike the "routine" breach of contract claims to which <u>Wolens</u> applies, claims for unjust enrichment and declaratory relief necessarily require the enforcement of state common law.[13]  <u>See All World</u>, 282 F. Supp. 2d at 1169.  Accordingly, courts following <u>Wolens</u> have uniformly held that claims for unjust enrichment and declaratory relief are expressly preempted by Section 105.  <u>Id.</u> (awarding relief for unjust enrichment and declaratory judgment would "enhance the parties' bargain based on state policy"); <u>Breitling</u>, 45 F. Supp. 2d at 182 (unjust enrichment); <u>Dugan v. FedEx Corp.</u>, No. 02-1234, 2002 WL 31305208, at *3 (C.D. Cal. Sept. 26, 2002) (unjust enrichment); <u>Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.</u>, 972 F. Supp. 665, 672-73 (N.D. Ga. 1997) (unjust enrichment);  <u>Lehman</u>, 930 F. Supp. at 915-16 (unjust enrichment); <u>see also</u> <u>Howell</u>, 994 P.2d at 905 (unjust enrichment); <u>Leonard</u>, 605 N.W.2d at 432 (unjust enrichment and declaratory judgment); <u>Blackner</u>, 709 A.2d at 13-14 (unjust enrichment).

Likewise here, adjudication of the Plaintiffs' claims for unjust enrichment and declaratory relief would entail an "enlargement or enhancement based on state laws or policies external to the agreement" prohibited under <u>Wolens</u>.  Indeed, the Plaintiffs have brought their claims for declaratory relief directly under a Massachusetts statute, Mass. Gen. Laws c. 231A, § 2.  <u>See</u> Complaint, ¶ 44.  In addition, the Plaintiffs' unjust enrichment claim is in essence an action in tort, <u>see</u> <u>In re Lupron Marketing and Sales Practices Litig.</u>, 295 F. Supp. 2d 148, 182 n.38 (D. Mass. 2003), and thus does not fall under the <u>Wolens</u> exception for contract claims.  Moreover, as discussed <u>infra</u> section IV.A.2, a claim for unjust enrichment would only be available (were it not for the ADA preemption) in the absence of an express contract and thus necessarily involves the use of a court's equitable powers governed by state common law.

---

[13] The inclusion of civil conspiracy allegations in the unjust enrichment count does not change the substantive nature of the claims for preemption purposes.

In sum, because the Plaintiffs' claims for unjust enrichment and declaratory judgment would require the interpretation and enforcement of state law and/or exercise of the Court's equitable powers, they are expressly preempted by Section 105. Accordingly, these claims must be dismissed.

### III.    THE PLAINTIFFS' CLAIMS ARE BARRED UNDER SECTION 7422 OF THE INTERNAL REVENUE CODE.

Because the Plaintiffs bring their claims against the Domestic Defendants to recover "fees and taxes" paid in connection with the purchase of domestic airline tickets, this action is barred by Section 7422 of the Internal Revenue Code ("Section 7422") as to taxes imposed by the IRS. As a preliminary matter, Section 7422 requires the filing of an administrative claim for a refund with the Internal Revenue Service as an absolute condition precedent of bringing suit. Section 7422 states, in relevant part:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary . . . .

26 U.S.C. § 7422(a). Because the Plaintiffs have failed to file a claim with the IRS, Section 7422 by its express terms bars the present suit.

Moreover, even if they had exhausted their administrative remedies, the Plaintiffs still could not have brought suit against the Domestic Defendants because, under Section 7422, a suit for the refund of taxes "may be maintained only against the United States." 26 U.S.C. § 7422(f)(1)(a). Thus, even assuming, *arguendo*, that the Plaintiffs are entitled to refunds of the fees and taxes they have identified, the present suit is not the proper mechanism to recover such refunds. Under Section 7422, the Plaintiffs' only recourse is to recover a refund of taxes from the government, not from private parties such as the Domestic Defendants.

The Fifth, Seventh, and Ninth Circuits, as well as several lower courts have applied Section 7422 to dismiss a line of cases directly analogous to the present one. See Brennan v. Southwest Airlines Co., 134 F.3d 1405 (9th Cir. 1998); Sigmon v. Southwest Airlines Co., 110 F.3d 1200 (5th Cir. 1997); Kaucky v. Southwest Airlines Co., 109 F. 3d 349 (7th Cir. 1997); Katz v. Delta Air Lines Corp., 216 F.3d 1083, 2000 WL 390680 (9th Cir. Apr. 12, 2000) (unpublished table decision); Eisenman v. Continental Airlines, Inc., 974 F. Supp. 425 (D.N.J. 1997); Lehman, 930 F. Supp. 912; Strategic Risk, 253 A.D.2d 167. In each of those cases, passengers sued airlines to recover excise taxes that the airlines had collected during a lapse in the statute authorizing the tax, and the courts uniformly held that Section 7422 barred suit against the airlines *even though it was undisputed that the passengers were entitled to refunds of the taxes.*

The Kaucky case is instructive on this point. In Kaucky, Chief Judge Posner explained that Section 7422 applied because at the time they collected the taxes, the airlines reasonably believed that statute would be reenacted and thus had "colorable authority" to collect the taxes as "collection agents" of the IRS. 109 F.3d at 352-53; accord Sigmon, 110 F.3d at 1203; Eisenman, 974 F. Supp. at 431; Lehman, 930 F. Supp. at 915. In this case, the Plaintiffs do not even dispute that the Domestic Defendants were authorized to collect the fees and taxes. Indeed, the Complaint states that "[t]he defendant airlines collect these taxes and fees as a fiduciary in order to pay them to the applicable government agencies." Complaint, ¶ 1. Moreover, the Plaintiffs' allegation that the Domestic Defendants wrongfully withheld the fees and taxes from the government (Complaint, ¶ 1), does not distinguish this case from Kaucky. As Judge Posner ruled in the Kaucky case:

> It makes no difference whether the firm is still holding the money it erroneously collected or has passed it on to the IRS. The principal is bound by the agent's act. The IRS has plenty of remedies against its collection agents who fail to remit taxes that they collect.

109 F.3d at 352. Thus, the rationale of <u>Kaucky</u> (and its progeny) applies equally here, and this case

is properly a suit for the refund of taxes governed by Section 7422.

The fact that the Complaint does not clearly identify the taxes the Plaintiffs seek to recover

is of no significance for purposes of applying Section 7422. In <u>Brennan</u>, the Ninth Circuit held that

the pertinent question *in determining whether Section 7422 applies is not the exact nature of the tax*

*but whether the collector collects money as a tax*, broadly construed:

> Section 7422 contrasts the narrow concept of an "internal revenue tax" with
> the broad concept of "any sum." The statute makes clear, however, that a suit
> to recover either a "tax" or a "sum" constitutes a suit for a tax refund. Thus,
> the statute means that if someone wrongfully collects money as a tax, then a
> suit to recover the sum constitutes a tax refund suit, even if the sum did not
> literally constitute an "internal revenue tax."

134 F.3d at 1410 (citations omitted); <u>accord</u> <u>Strategic Risk</u>, 253 A.D.2d at 171-72. Here, because,

by the plain language of the Complaint, the Plaintiffs seek to recover "taxes," Section 7422 applies

and bars the Plaintiffs' claims.

## IV.    THE PLAINTIFFS' CLAIMS ALSO FAIL AS A MATTER OF STATE LAW.

In addition to being preempted by Section 105 of the ADA and barred by Section 7422 of

the Internal Revenue Code, the Plaintiffs' claims also fail as a matter of state law. [14]

### A.    The Plaintiffs Have Failed to State a Claim for Civil Conspiracy or Unjust Enrichment.

In Count II of the Complaint, the Plaintiffs allege that the Domestic Defendants "have joined

together and committed a civil conspiracy to unjustly enrich themselves with a manifest common

plan of not informing the plaintiffs and the Class Members of their rights to refunds" and that the

Domestic Defendants executed the plan by "wrongfully retain[ing] said funds." Complaint, ¶ 45.

---

[14] The Plaintiffs' claims for declaratory relief need not be separately addressed because they are premised on the substance of the other claims, <u>see</u> Mass. Gen. L. c. 231A, § 2 (declaratory judgment procedure "may be used to secure determinations of right [or] duty . . . under . . . written contracts . . . or under the common law"), and thus, dismissal of the other claims would extinguish any cause of action for declaratory judgment.

These conclusory statements are insufficient to state claims for either civil conspiracy or unjust enrichment.

### 1.    The Plaintiffs Have Not Sufficiently Alleged a "Common Design or Agreement" Between the Parties to State a Claim for Civil Conspiracy.

Massachusetts recognizes two theories of co-conspirator civil liability. The first theory, which involves allegations that defendants exercised coercion by "mere force of numbers acting in unison," see Kurker v. Hill, 44 Mass. App. Ct. 184, 188-89 (1998), clearly has not been pled here. Rather, the Plaintiffs attempt to state a cause of action for civil conspiracy under the second theory, which is akin to joint liability for concerted actions. Id. To state a claim under this theory, a plaintiff must allege both "a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act" and "some tortious act in furtherance of the agreement." Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994). In addition, "[k]ey to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan." Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 363 (D. Mass. 2002) (quoting Kurker v. Hill, 44 Mass. App. Ct. 189).

Although they may have managed to capture *the language* of the case law, they have done so only in a conclusory manner. The Plaintiffs have failed substantively to allege *the required elements* of a civil conspiracy claim. As an initial matter, there is no basis for any underlying liability: as discussed below, the unjust enrichment allegations fail to state a claim.[15] Moreover, even if there were underlying liability, the Plaintiffs have not alleged any factual basis for their allegations concerning a "common plan" among the Domestic Defendants. See Kurker v. Kassler, 60 Mass. App. Ct. 1122, 2004 WL 556959, at *2 (2004) (unpublished table decision) ("[A]

---

[15] To the extent Plaintiffs allege a "common plan" not to *inform* them of their right to refund, their conspiracy claims fail as well. As discussed with regard to the fiduciary duty claim, infra, the Domestic Defendants had no duty to disclose such a right -- assuming, for purposes of the present motion only, that the Plaintiffs had one.

conspiracy allegation based solely on a hope and a guess fails to state a claim on which relief may

be granted. . . . [The complaint's] bald speculative, conclusory, illogical allegations of conspiracy

simply do not state a claim.").

The civil conspiracy claim is a transparent attempt to wrap ATA into the Complaint through

co-conspirator liability. Liability for a civil conspiracy, however, simply cannot be founded on the

conclusory allegation that the Domestic Defendants were somehow involved in a common plan --

and specifically with regard to ATA, on the conclusory allegation that ATA was informed of the

allegedly wrongful conduct *after the fact*. See Complaint, ¶ 45. Thus, the Plaintiffs' civil

conspiracy claims must be dismissed.[16]

## 2.    The Existence of an Express Contract Bars the Plaintiffs' Unjust Enrichment Claims.

The Plaintiffs' underlying substantive claims of unjust enrichment claims are barred as a

matter of law because this equitable remedy cannot be advanced where an express contract exists

between parties. See Micromuse, Inc. v. Micromuse, PLC., 304 F. Supp. 2d 202, 209 n.8 (D. Mass.

2004) ("Where a contract does govern the parties' relationship, the contract provides the measure of

the plaintiff's right and no action for unjust enrichment lies. This principle is simply an extension of

. . . the doctrine, that where a plaintiff has an adequate remedy at law, a claim of unjust enrichment

is unavailable."); In re Lupron, 295 F. Supp. 2d at 182 (same).

In this case, an express contract existed between the parties: the contract of carriage

incorporated into the ticket. The Plaintiffs' relationship with the Domestic Defendants is governed

by the rights and remedies expressly created by the contract of carriage. Consequently, the

---

[16] As noted earlier, while the Plaintiffs do not explicitly differentiate among defendants across the various claims, only the civil conspiracy/unjust enrichment count refers to ATA. Indeed, each of the other counts refers to "defendant airlines" and not ATA. Thus, dismissal of the civil conspiracy claims constitutes dismissal of the Complaint as to ATA.

Plaintiffs' unjust enrichment claims must be dismissed. See Micromuse, 304 F. Supp. 2d at 209 n.8 (element of unjust enrichment claim is absence of remedy at law).

> **B.    The Plaintiffs Have Failed to State a Claim for Breach of Fiduciary Duty.**

In the Complaint, the Plaintiffs allege the novel theory that "[e]ach of the defendant airlines' actions, voluntarily undertaken, induced a fiduciary relationship," and as a result, the defendant airlines owed a fiduciary duty to the Plaintiffs to, *inter alia*, disclose information and refrain from self-dealing. Complaint, ¶¶ 47, 50. The Plaintiffs' reliance on fiduciary duty principles in an ordinary retail transaction context is, at best, misplaced. Under the Plaintiffs' theory, every standard retail transaction would create a fiduciary relationship.

In Massachusetts, business relationships or arms-length transactions generally do not rise to the level of a fiduciary relationship. See Savoy v. White, 139 F.R.D. 265, 267 (D. Mass. 1991); McIntyre v. Okurowski, 717 F. Supp. 10, 11 (D. Mass. 1989). Here, the Plaintiffs have merely alleged an ordinary arms-length retail transaction. While certain circumstances -- for example, a longstanding relationship and "an exertion of influence over one party by the other for its own advantage," see Savoy, 139 F.R.D. at 267 -- may give rise to a fiduciary relationship, no such circumstances are alleged here. The Complaint's conclusory allegation that the Domestic Defendants "dominated" the Plaintiffs, "causing special circumstances which created or contributed to a fiduciary relationship," Complaint, ¶ 1, is not supported by factual allegations. The only interaction between the parties alleged are the Plaintiffs' purchases of airline tickets from the Domestic Defendants. The Plaintiffs' fiduciary duty claims are not entitled to any legal inferences on a motion to dismiss, Resolution Trust, 985 F.2d at 48, and thus they must be dismissed for failure to state a claim because they have failed sufficiently to allege a basis for any fiduciary relationship between the parties.

C.    **The Plaintiffs Have Failed to State a Claim for Breach of Contract**

To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a minimum, that: (1) there was a valid contract, (2) the defendant breached its duties under the contractual agreement, and (3) the breach caused the plaintiff damage. See Moghaddam v. Dunkin' Donuts, Inc., 295 F. Supp. 2d 136, 139 (D. Mass. 2003); Guckenberger v. Boston Univ., 957 F. Supp. 306, 316-17 (D. Mass. 1997). Here, the Plaintiffs have utterly failed to allege any contractual provision or duty that the Domestic Defendants have breached. The Complaint merely alleges that "the defendant airlines have breached their agreement with the plaintiffs." Complaint ¶ 52. Such conclusory allegations are insufficient to state a claim. See Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) ("The amended complaint fails to state the nature of the alleged contract with any specificity. . . . Conclusory statements that 'Hasbro and its executives failed to meet their contractual requirement' . . . are insufficient to satisfy the pleading requirements."); Williams v. Astra USA, Inc., 68 F. Supp. 2d 29, 37 (D. Mass. 1999) ("[The plaintiff must describe with 'substantial certainty' the bargain at issue and the specific obligation or promise breached by [the defendant]."). Thus, the breach of contract claims fail as a matter of law and must be dismissed.

D.    **The Plaintiffs Have Failed to State a Claim for Breach of Good Faith and Fair Dealing.**

Under an implied covenant of good faith and fair dealing underlying contracts in Massachusetts, "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assoc., 411 Mass. 451, 471-72 (1991). The covenant of good faith and fair dealing, however, does not extend beyond the actual terms of a contract. See UNO Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004) ("The covenant is preserved so long as neither party injures the rights of another to reap the *benefits prescribed by the terms of the contract.*" (emphasis

added)); Smith v. Boston Edison Co., 62 Mass. App. Ct. 1105, 2004 WL 2310982, at*3 (2004)

(unpublished table decision) ("There being no binding contract on the subject, no implied covenant

of good faith and fair dealing existed."). Here, the Plaintiffs have failed to identify any contractual

provision that the Domestic Defendants have breached, and the Plaintiffs acknowledge the tickets

they purchased were nonrefundable. The Plaintiffs cannot, through a claim for breach of the

covenant of good faith and fair dealing, either create contractual terms that do not exist or override

the express terms of the ticket. See McAdams v. Massachusetts Mut. Life Ins. Co., 391 F.3d 287

(1st Cir. 2004) ("The purpose of the covenant is not to add terms to a contract; indeed, it may not do

so."); UNO Restaurants, 441 Mass. at 385 ("The covenant may not, however, be invoked to create

rights and duties not otherwise provided for in the existing contractual relationship . . . ."); Dunkin'

Donuts, Inc. v. Panagakos, 5 F. Supp. 2d 57, 64 (D. Mass. 1998) ("The implied covenant of good

faith cannot override the express terms of a contract."). Accordingly, the Plaintiffs' good faith and

fair dealing claims fail to state a claim and must be dismissed.

## CONCLUSION

For the reasons stated above, the Domestic Defendants respectfully request that the Court

dismiss the Complaint in its entirety with prejudice.

DECHERT LLP

By: *Matthew Porter*

Matthew A. Porter, BBO #630625
Michael S. Shin, BBO # 658134
200 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 728-7100

Attorneys for Delta Air Lines, Inc.,
American Airlines, Inc., Northwest Airlines,
Inc., Alaska Airlines, Inc., Continental
Airlines, Inc., Southwest Airlines Co., and
Air Transport Association of America, Inc.