UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ROBERT HARRINGTON, et al., | ) | |
| | ) | |
| Plaintiffs | ) | Civil Action No. |
| v. | ) | 04-12558-NMG |
| | ) | |
| DELTA AIR LINES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE
DOMESTIC DEFENDANTS' MOTION TO DISMISS**

Defendants Delta Air Lines, Inc., American Airlines, Inc., Northwest Airlines, Inc., Alaska Airlines, Inc., Continental Airlines, Inc., Southwest Airlines Co., Airlines Reporting Corp. ("ARC"), and Air Transport Association of America, Inc. ("ATA") (collectively the "Domestic Defendants") respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

This is the Plaintiffs' second unsuccessful attempt to state a viable cause of action against the Domestic Defendants. After the Domestic Defendants moved to dismiss the Plaintiffs' original Complaint, the Plaintiffs indicated in their opposition that they would file an Amended Complaint to correct the numerous legal insufficiencies identified by the Domestic Defendants. The Amended Complaint, however, does not resolve any of those legal insufficiencies. Nor could it, as the Plaintiffs' failure to state a claim against the Domestic Defendants is not merely a superficial problem curable through rearranging the factual allegations or by fashioning new counts with novel causes of action. Rather, the failure stems from the plain fact that the Plaintiffs' underlying claims have no basis in law.

As raised in the Domestic Defendants' original motion papers and set forth more fully below, the Amended Complaint must be dismissed with prejudice as to the Domestic Defendants because the Plaintiffs' claims are expressly preempted by the Airline Deregulation Act of 1978, and its amendments (the "ADA").   Moreover, even assuming *arguendo* that the Plaintiffs' claims were not preempted and barred by federal law, as a matter of *state* law the Plaintiffs have failed to state a claim as to each of the counts set forth in the Amended Complaint.   Accordingly, the Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### STATEMENT OF FACTS ALLEGED IN THE AMENDED COMPLAINT

The Plaintiffs assert seven separate counts in the Amended Complaint for: (1) declaratory judgment; (2) rescission of contract; (3) breach of contract; (4) unjust enrichment; (5) breach of good faith and fair dealing; (6) breach of fiduciary duty; and (7) civil conspiracy.[1]   The gravamen of the Plaintiffs' claims is that they allegedly purchased, but did not use, nonrefundable airline tickets from the Domestic Defendants.  See Amended Complaint, ¶ 1.  The Plaintiffs contend that because they did not use the nonrefundable tickets they purchased, "the advance payment (or prepayment) of certain taxes, fees, or charges became an overpayment of such taxes, fees, or charges," and defendant airlines "kept, for their own benefit, the plaintiffs' overpayments of prepaid anticipated taxes, fees, or charges." Id. ¶ 61-62.  In addition, the Plaintiffs allege that "the Airline Industry, as a matter of business practice, often fails to remit the collected funds to the levying authorities, instead wrongfully and unjustly enriching itself by keeping the money, in a manner that is contrary to law or against public policy, or both." Id. ¶ 3.  Finally, the Plaintiffs allege that "the Airline Industry violated 14 C.F.R. part 253 and 49 U.S.C. § 41707 by, among other things, seeking to impose on Air Passengers certain contract terms, incorporated by reference into the contract of carriage,

---

[1] Although the Amended Complaint does not explicitly designate different defendants across the counts, it appears that only the civil conspiracy count (Count VII) is alleged against Defendants ARC and ATA since there is no allegation in the Amended Complaint that ARC or ATA actually sell tickets to the public, an essential factual prerequisite for each of the Plaintiffs' other claims.

without providing Passengers conspicuous written notice of the salient features of those terms on or with the ticket." Id. ¶ 63.  The Plaintiffs seek as damages "all amounts paid and wrongfully retained by the Airline Industry."

The Amended Complaint identifies the following "taxes, fees, and charges" as the subject of the Plaintiffs' claims: (1) "Passenger Facility Charges" ("PFCs"), (2) "U.S. customs user fees," (3) "immigration user fees," (4) "agricultural quarantine and inspection user fees" ("AQIs" or "APHIS" fee), (5) September 11th Security Fees"[2] ("SSFs"), and (6) unspecified "foreign charges," which refer to taxes and fees by levying authorities outside the United States. Id. ¶ 5.

## ARGUMENT & AUTHORITIES

### I.    STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court must take well-pled factual allegations in a complaint as true and must make all reasonable inferences in favor of the plaintiff.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Inferences in favor of a plaintiff's factual allegations, however, do *not* extend to legal conclusions, see Resolution Trust Corp. v. Driscoll, 985 F.2d 44, 48 (1st Cir. 1993), and the court need not credit "bald assertions, unsupportable conclusions, and 'opprobrious epithets.'" Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987) (quoting Snowden v. Hughes, 321 U.S. 1, 10 (1944)).  Dismissal under Rule 12(b)(6) is mandated if, as in the present case, the complaint presents no set of facts justifying recovery.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).

---

[2] The Amended Complaint refers to the U.S. customs user fees, immigration user fees, AQIs, and SSFs collectively as "Federal user fees."

## II.    THE PLAINTIFFS' CLAIMS ARE EXPRESSLY PREEMPTED BY SECTION 105 OF THE AIRLINE DEREGULATION ACT.

In the first instance, all of the Plaintiffs' claims must be dismissed because they are expressly preempted by the Airline Deregulation Act ("ADA"), which Congress enacted in 1978 to deregulate the domestic airline industry.  Section 105 of the ADA ("Section 105"), now 49 U.S.C. § 41713, contains a preemption provision, which reads in relevant part:

> [N]o State . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier . . . .

Pub. L. No. 95-504, 92 Stat. 1705 (1978) (codified as amended at 49 U.S.C. § 41713).[3]

Because the Plaintiffs' claims in this case directly relate to the Domestic Defendants' rates and services, and because adjudication of the claims would clearly require the enforcement of state law, the Plaintiffs' claims are expressly preempted by the ADA and must be dismissed.  See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1432 (7th Cir. 1996); All World Professional Travel Servs., Inc. v. American Airlines, Inc., 282 F. Supp. 2d 1161, 1168 (C.D. Cal. 2003).

### A.    The Plaintiffs' Claims Directly Relate to the Domestic Defendants' Rates and Services.

In Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992), the Supreme Court set forth an expansive reading of Section 105's "relating to" language.  The Court rejected the argument that Section 105 only preempts states from affirmatively prescribing rates, routes, or services.  Id. at

---

[3] When Title 49 was reenacted in 1994, Congress made several minor alterations to the wording of the preemption provision, which is presently codified as amended at 49 U.S.C. § 41713.  As currently codified, the ADA provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ."  Id.  The 1994 amendments made no substantive changes to the provision.  See American Airlines, Inc. v. Wolens, 513 U.S. 219, 223 n.1 (1995); United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 335 n.17 (1st Cir. 2003).  For consistency and ease of discussion, this Memorandum follows the practice of most of the case law in this area by referring to the original language of Section 105.  See, e.g., Wolens, 513 U.S. 219.  It does, however, track the language used in particular cases -- for example, referring to "prices" rather than "rates" in discussing several cases that applied the amended version of the preemption clause.

385-86. Rather, noting that Section 105 was intended "[t]o ensure that the States would not undo

federal deregulation with regulation of their own," the Court recognized that the words "relating to"

expressed a "broad pre-emptive purpose." Id. at 378, 384. Accordingly, the Court articulated a

broad preemption standard for the ADA: "State enforcement actions *having a connection with or*

*reference to* airline 'rates, routes, or services' are pre-empted under [Section 105]." Id. (emphasis

added). In so ruling, the Court also rejected the proposition that Section 105 preempts only (1) state

laws specifically addressed to the airline industry, and (2) state regulations that are overtly

inconsistent with the ADA. Id. at 386-87.

Under the Morales standard, the Plaintiffs' claims in this case clearly constitute claims

"relating to" the Domestic Defendants' rates within the meaning of Section 105. Each of the

Plaintiffs' claims is premised on the allegation that the Domestic Defendants withheld certain taxes

or fees that were charged to the Plaintiffs in connection with their purchase of nonrefundable tickets

for domestic airline travel. The passenger ticket taxes and fees that airlines are obligated to collect

in connection with these ticket purchases directly impact the price of air transportation to the

passenger, and therefore not only have a "connection with or reference to" airline ticket rates --

which is all that Morales requires -- but in fact also have a *direct impact* on the price of air

transportation. See All World, 282 F. Supp. 2d at 1169 ("A claim relates to airline prices if the

claim expressly refers to price or has a significant economic effect upon price.").

Thus, and more significantly, exactly on point with this case, a number of courts have

expressly held that claims for the recovery of taxes paid in connection with airline tickets are

preempted by the ADA because they directly relate to airline rates under Morales. See Statland v.

American Airlines, Inc., 998 F.2d 539, 542 (7th Cir. 1993) ("We think it obvious that canceled

ticket refunds [for federal excise taxes] relate to rates."); Kaucky v. Southwest Airlines Co., No. 96-

C-750, 1996 WL 267875, at *4 (N.D. Ill. May 17, 1996) (unpublished decision), aff'd, 109 F.3d

349 (7th Cir. 1997) (claim for excise tax refund relates to price because excise tax "directly impacts ticket price"); Lehman v. USAIR Group, Inc., 930 F. Supp. 912, 915 (1996) (same); Strategic Risk Management, Inc. v. Federal Express Corp., 253 A.D.2d 167, 172-73 (N.Y. App. Div. 1999) (same). Likewise, a number of state courts have held that similar claims stemming from an airline's ticket refund or ticket re-issuance policies also relate to airline rates or prices within the meaning of the ADA's preemption clause and are therefore preempted. See, e.g., Boon Ins. Agency, Inc. v. American Airlines, Inc., 17 S.W.3d 52, 58 (Tex. Ct. App. 2000) (reissue fee relates to price because it "has the effect of raising the price of the ticket"); Howell v. Alaska Airlines, Inc., 994 P.2d 901, 905 (Wash. App. 2000) (claim for refund for price of unused ticket preempted by ADA).

Additionally, the Plaintiffs themselves admit in the Amended Complaint that the taxes and fees at issue in this case are related to services provided in connection with the departure or arrival of passengers: "the nature of user fees is to become due . . . only if or when the passenger actually 'uses' the 'service.'" Amended Complaint, ¶ 9. Thus, based upon the Plaintiffs' own description, the Domestic Defendants' policies and practices in connection with the collection and remission of such fees and taxes to the applicable taxing authority relate to air carrier "services" within the meaning of Section 105. See Hodges v. Delta Air Lines, Inc., 44 F.3d 334, 336 (5th Cir. 1995) (en banc) ("Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, *in addition to the transportation itself*." (emphasis added)); see also Travel All Over The World, 73 F.3d at 1433 (adopting Hodges standard).[4]

---

[4] Neither the Supreme Court nor the First Circuit has defined the term "services" as used in Section 105. However, several district courts in the First Circuit have adopted the broad standard set forth by the Fifth Circuit in Hodges and subsequently adopted by the Seventh Circuit. See DeTerra v. America West Airlines, Inc., 226 F. Supp. 2d 274, 277 (D. Mass. 2002); Chukwu v. Board of Directors British Airways, 889 F. Supp. 12, 13 (D. Mass. 1995), aff'd, 101 F.3d 106 (1st Cir. 1996); see also Stone v. Frontier Airlines, Inc., 256 F. Supp. 2d 28, 39 (D. Mass. 2002) (citing Hodges).

**B.     Adjudication of the Plaintiffs' Claims Would Constitute Impermissible Enforcement of Preempted State Law.**

In American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995), the Supreme Court reaffirmed the broad standard for the "relating to" language set forth in Morales, concluding that the plaintiffs' claims concerning the defendant airline's frequent flyer program related to both the rates and services of the defendant. Id. at 226. Moving beyond Morales, the Wolens Court turned to the "enact or enforce any law" proscriptive language in Section 105, and held that while the ADA preempted state claims under a general state statute regulating deceptive marketing practices, the ADA did not preempt certain "routine" common law breach of contract claims that sought only to enforce "privately-ordered obligations" *voluntarily* undertaken by the air carrier pursuant to the express terms of its contract with consumers. Id. at 229, 232. Thus, Wolens holds that the ADA does not preempt breach of contract claims in which a party is specifically alleged to have breached its "own, self-imposed undertaking," and in which adjudication of a claim concerns only "the parties' bargain, *with no enlargement or enhancement based on state laws or policies external to the agreement.*" Id. at 228, 233 (emphasis added).

This exception to the broad preemptive scope of the ADA is extremely narrow. See Harris v. American Airlines, Inc., 55 F.3d 1472, 1477 (9th Cir. 1995), overruled on other grounds by Charas v. Trans World Airlines, Inc., 160 F.3d 1259 (9th Cir. 1998) (exception for contract claims is "narrow exclusion" from "wide scope of preemption"); Breitling U.S.A., Inc. v. Federal Express Corp., 45 F. Supp. 2d 179, 184 (D. Conn. 1999) ("This exception is a narrow one."); Western Parcel Express v. United Parcel Serv. of Am., Inc., No. 96-1526, 1996 WL 756858 (N.D. Cal., Dec. 3, 1996) (unpublished decision) ("Wolens carved out only a narrow exception to preemption for certain routine breach of contract claims."); Stone v. Continental Airlines, Inc., 905 F. Supp. 823, 826 (D. Haw. 1995) ("This exception [] is narrow and limited . . . .").

Here, the Plaintiffs do not seek to enforce the type of self-imposed contractual obligations at issue in Wolens. To the contrary, the Plaintiffs, through various state law causes of action, are looking to *undo* the express contractual terms of their tickets: the Plaintiffs openly admit that the tickets they purchased were nonrefundable, and yet they seek as damages a refund of a portion of the ticket price. Indeed, while the Plaintiffs have mechanically pled a breach of contract claim in an attempt to invoke Wolens, that claim is factually vacant, as it does not allege the breach of any contractual terms. The substance of the Plaintiffs' claims are pled as non-contract claims, to which Wolens does not apply. But no matter how worded, each seeks to impose a duty based on state law or policy to require the refund of some portion of a ticket that, according to the express terms of the ticket contract is nonrefundable. Each claim is therefore expressly preempted by the ADA.

1.    **The Plaintiffs' Contract-Based Claims Are Expressly Preempted Under Wolens.**

The Plaintiffs' contract-based claims[5] are preempted as a matter of law because they fall squarely *outside* of the scope of the Wolens exception. The Plaintiffs here, unlike in Wolens, have not alleged (and cannot truthfully allege) that the Domestic Defendants ever undertook to refund taxes and fees on nonrefundable tickets. In the breach of contract count, the Plaintiffs merely reference the general allegations in the Amended Complaint and make the bare assertion that "each of the defendant airlines has breached its agreement with the Air Passengers who purchased tickets for travel via the airline." Amended Complaint, ¶ 83. Similarly, in the breach of good faith and fair dealing claim, the Plaintiffs allege only that "[b]y the actions described above, each of the defendant airlines breached that covenant of good faith and fair dealing." Id. ¶ 89. These conclusory allegations are not sufficient to avoid the wide scope of preemption under the ADA.

Notice pleading notwithstanding, a plaintiff must do more than merely allege a contract breach to bring the claims within the narrow purview of the Wolens exception and overcome the

---

[5] This includes the Plaintiffs' breach of contract and good faith and fair dealing claims.

broad scope of the ADA's preemption provision. See Fondo v. Delta Air Lines, Inc., No. 00-2445, 2001 WL 604039, at *2-*3 (S.D.N.Y. May 31, 2001) (unpublished decision) (dismissing preempted contract claim for failure to state a claim). [6] Here, however, the Plaintiffs have not alleged, nor could they conceivably allege, a breach by any of the Domestic Defendants of a self-imposed contractual obligation. The only contractual relationship between the parties is that embodied in the tickets the Plaintiffs allegedly purchased and in the carriers' applicable "contracts of carriage" incorporated by reference into the ticket contracts pursuant to federal regulation. See Fondo, 2001 WL 604039, at *3 ("An airline ticket, as supplemented by the carrier's tariff, embodies the contract of carriage between the airline and its passenger." (citing 14 C.F.R. § 253.4)). [7]

In the Amended Complaint, the Plaintiffs specifically allege that the tickets they purchased were "nonrefundable." Amended Complaint, ¶ 1. Nowhere in the Amended Complaint do the Plaintiffs identify any specific provision in any defendant airline's contract of carriage in which the defendant airline expressly promised to make refunds of any sort on unused nonrefundable tickets. Moreover, the Plaintiffs never even allege that they requested refunds from the defendant airlines. Thus, the Amended Complaint does not allege -- and indeed flatly contradicts the allegation -- that any of the Domestic Defendants breached any express contractual undertaking to provide refunds to the Plaintiffs for taxes and fees associated with the unused, and admittedly nonrefundable, tickets. [8]

---

[6] Moreover, the Plaintiffs' inclusion of a claim in *quantum meruit* for unjust enrichment belies any suggestion by the Plaintiff that the Domestic Defendants breached a specific contractual term, because the assertion of an unjust enrichment claim presupposes that no valid contract covers the subject matter of the dispute. See Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993); Commonwealth Aluminum Corp. v. Baldwin Corp., 980 F. Supp. 598, 607 (D. Mass. 1997) ("Recovery may be had in quantum meruit, of course, in the absence of a legal or enforceable contract.").
[7] The regulations governing carrier contracts of carriage state that "[t]he purpose of this rule is to set uniform disclosure requirements, which preempt any State requirements on the same subject, for terms incorporated by reference into contracts of carriage for scheduled service in interstate and overseas passenger air transportation." 14 C.F.R. § 253.1.
[8] The Plaintiffs' allegation that the defendant airlines violated 14 C.F.R. § 253 is not a viable basis for their contract-based claims because those regulations merely govern the incorporation of terms in to airlines' contracts of carriage and are not *themselves* incorporated into the contracts. Even if they were, the regulations would not constitute *self-imposed* obligations, and thus any attempts by the Plaintiffs to enforce them through state contract law would be preempted by the ADA under Wolens. See infra § II.2.a.

Because the Plaintiffs have not alleged and cannot allege the breach of any express contractual undertaking by the defendant airlines to provide refunds of taxes, the Plaintiffs' contract-based claims necessarily depend on considerations external to any agreement between the parties.[9] Any such claim does not fall within the narrow <u>Wolens</u> exception and is preempted by Section 105 because it requires an "enlargement or enhancement based on state laws or policies external to the agreement" prohibited by <u>Wolens</u>.  <u>See</u> <u>Smith v. Comair, Inc.</u>, 134 F.3d 254, 257 (4th Cir. 1998) ("[W]hen a contract claim cannot be adjudicated without resort to outside sources of law, the claim is still preempted by the ADA.").

Courts following <u>Wolens</u> have consistently held that contract-based claims to recover allegedly unwarranted fees and taxes are preempted by the ADA.  <u>See</u> <u>Boon</u>, 17 S.W.3d at 58 (contract claim for refund of fee for change in ticket was preempted because fee was authorized by ticket); <u>Howell</u>, 994 P.2d at 905 (breach of good faith and fair dealing claim preempted because ticket authorized airline to refuse to give refund for unused ticket); <u>Blackner v. Continental Airlines</u>, 709 A.2d 258, 260 (N.J. Super. 1998) (breach of contract and good faith and fair dealing claims preempted because "contract that exists between plaintiff and airline clearly authorizes the surcharge of which plaintiff complains"); <u>see also</u> <u>Statland</u>, 998 F.2d at 542-43 (breach of contract claims for refund of excise tax preempted); <u>Lehman</u>, 930 F. Supp. at 915-16 (breach of contract claim for refund of excise tax preempted); <u>Kaucky</u>, 1996 WL 267875, at *4 (same).[10]  These cases accord generally with cases in which courts have held that the ADA preempts contract-based claims that, like the Plaintiffs' claims here, fail to allege the breach of an express contractual obligation because adjudication of those claims required extra-contractual considerations.  <u>See</u> <u>Lyn-</u>

---

[9] The breach of contract and breach of the good faith and fair dealing claims are identical in this respect since the implied covenant of good faith and fair dealing does not extend beyond the terms of the contract.  <u>See</u> <u>infra</u> § III.C.

[10] While <u>Statland</u> was decided prior to <u>Wolens</u>, <u>Lehman</u> and <u>Kaucky</u> reaffirmed the <u>Statland</u> holding *after* <u>Wolens</u>, and <u>Kaucky</u> expressly rejected the argument that the claims fell within the <u>Wolens</u> exception.  <u>See</u> <u>Kaucky</u>, 1996 WL 267875, at *4.

Lea Travel Corp. v. American Airlines, Inc., 283 F.3d 282, 289 (5th Cir. 2002) ("Lyn-Lea's claims do not seek to enforce American's self-assumed contractual obligations"); All World, 282 F. Supp. 2d at 1168-69 (portion of contract claim alleging that fee violated common law rule against contract penalties preempted); Fondo, 2001 WL 604039, at *2-*3 (contract claim based on oral assurance external to express terms of airline ticket preempted); Breitling, 45 F. Supp. at 186-87 (contract claim preempted because it was premised on common law doctrine of waiver); Waul v. American Airlines, Inc., No. A101212, 2003 WL 22719273, at *3 (Cal. Ct. App. Nov. 17, 2003) (unpublished decision) (breach of contract and good faith and fair dealing claims preempted because complaint "does not allege the breach of an express term"); Leonard v. Northwest Airlines, Inc., 605 N.W.2d 425, 433 (Minn. App. 2000) (claim for refund of reissue fee preempted because it relied on common law rule against contract penalties).[11]

The Plaintiffs' thinly-veiled attempt to invoke the exception created in Wolens and avoid preemption by disguising their claims as contract claims is thus unavailing.  See Stone v. Continental Airlines, 905 F. Supp. at 826 ("The ADA still preempts any state law or public policy claims disguised as contract claims. . . .  The court must look at the substance, rather than the form of Plaintiffs' claim."); Boon, 17 S.W.3d at 59 ("Boon's assertion of its claim [for refund of reissue

---

[11] Cases in which courts have held that contract claims are not preempted under Wolens are inapposite because those cases each involved allegations of a simple breach of specific terms of a contractual agreement, see Travel All Over the World, 73 F.3d at 1432 (plaintiffs alleged that defendant breached "self-imposed undertaking" to honor confirmed reservations of plaintiff's clients); All World, 282 F. Supp. 2d at 1168 (part of contract claim alleging airline breached contract by charging fee not specified in contract was not preempted); DeTerra v. America West Airlines, Inc., 226 F. Supp. 2d 274, 278 (D. Mass. 2002) ("[T]his court concludes that plaintiff's breach of contract claim . . . to the extent that that count sets forth a *simple breach of contract claim*, is not preempted . . . ." (emphasis added)); Chukwu v. Board of Directors British Airways, 889 F. Supp. 12, 14 (D. Mass. 1995) ("Chukwu I") (declining to dismiss contract claim because plaintiff specifically alleged "that [defendant] privately undertook, and breached, a duty to transport"), or concerned circumstances not applicable here.  See, e.g., Kingsley v. Lania, 221 F. Supp. 2d 93 (D. Mass. 2002) (breach of contract for dishonoring ticket not preempted for removal purposes).  Indeed, while the court in Chukwu I, declined to dismiss the plaintiff's contract claims because the Amended Complaint contained specific allegations of contractual breach, in a subsequent summary judgment decision, the court stated that the defendant airline's argument that Wolens was inapplicable because there were no "privately ordered obligations" outside the terms of the airline ticket was "well-taken," but it did not decide the issue choosing instead to dismiss the claim because it found no breach.  Chukwu v. Board of Directors British Airways, 915 F. Supp. 454, 456 (D. Mass 1996) ("Chukwu II").  The circumstances here are analogous to those in Chukwu II because the Plaintiffs have not alleged the breach of any contractual terms.

fee] as one of breach of contract is an attempt to avoid the preemption clause and defeat the Act's intent."); see also Breitling, 45 F. Supp. at 187 ("A plaintiff may not avoid preemption under the ADA by presenting a negligence claim as a contract claim."). Underneath the breach of contract facade, the Plaintiffs' claims are exactly the types of claims that Section 105 was intended to preempt. The Plaintiffs' purported contract claims would effectively allow states to regulate airline pricing, an area Congress has specifically deemed to be an exclusively federal concern. See Comair, 134 F.3d at 258-95. Therefore, all of the Plaintiffs' purported contract-based claims must be dismissed as a matter of law.[12]

### 2. The Plaintiffs' Non-Contract Claims Are Preempted Under Wolens.

As noted above, Wolens carved out a narrow exception to the broad preemptive scope of the ADA for standard breach of contract claims. Thus, under Wolens non-contract claims by definition involve the adjudication of preempted state law and are expressly barred by the ADA if, as here, they relate to the "rates, routes, and services" of an air carrier. Examination of the specific allegations of the Plaintiffs' non-contract claims confirms that they do not fall under the Wolens exception and are preempted by the ADA.

#### a.    The Plaintiffs' Rescission of Contract Claims are Preempted Under Wolens.

In Count II of the Amended Complaint, the Plaintiffs allege that "the defendant airlines violated 14 C.F.R. part 253 (notice of terms of contract of carriage) and are therefore entitled to rescission of the portions of the contract that are in such violation." Amended Complaint, ¶ 78. As noted infra section III.A, the Plaintiffs have not properly alleged a violation of the contract of

---

[12] It should not be overlooked that Congress gave the U.S. Department of Transportation ("DOT") authority to protect consumer interests, and that DOT has a comprehensive enforcement scheme in place to prevent unfair and deceptive practices. See 49 U.S.C. § 41712; Wolens, 513 U.S. at 228 n.4; see also Aviation Consumer Protection Division, Organization & Functions, at http://airconsumer.ost.dot.gov/org.htm (the functions of the Aviation Consumer Protection Division are to: (1) receive informal complaints from members of the public regarding aviation consumer issues; (2) verify compliance with DOT's aviation consumer protection requirements; (3) provide guidance to the industry and members of the public on consumer protection matters; and (4) make available to the public information on pertinent consumer matters).

carriage notice regulations. Equally as important, the Plaintiffs cannot sue under state law to enforce the regulations governing notice because the ADA does not provide a private right of action. Casas v. American Airlines, Inc., 304 F.3d 517 (5th Cir. 2002); see infra section III.A. Even assuming, however, that the Plaintiffs have adequately alleged a violation of the notice regulations, which they have not, and can properly bring a rescission action under state law to enforce the regulations, which they cannot, their claims are still expressly barred by the ADA because they necessarily entail the enforcement of preempted state law.

The Plaintiffs contend they are entitled to rescission of their unused, nonrefundable tickets because the defendant airlines violated 14 C.F.R. § 253 ("Section 253") by failing to adequately disclose that the airlines would not refund certain taxes and fees and thereby effectively impose a "monetary penalty" on passengers who did not use the tickets.[13] See Amended Complaint, ¶ 80. The Plaintiffs' rescission claim thus is directly premised on an alleged violation of *federal law*, not on the breach of any contractual terms agreed upon by the parties. Indeed, the Plaintiffs themselves characterize the Section 253 regulations as "*federally imposed* contract requirements." Id. ¶ 79 (emphasis added). Thus, with their rescission claim the Plaintiffs do not look to enforce the type of "privately-ordered obligations" or "self-imposed undertaking" at issue in Wolens. Rather, the Plaintiffs' rescission claim is aimed at enforcing requirements that are wholly external to the parties' contract and totally a creation of federal law for which there is no private right of action available. Statland, 998 F.2d at 539-40; see infra section III.A. At its core, the Plaintiffs rescission claim is nothing more than an attempt by the Plaintiffs to avoid the express terms of their nonrefundable tickets. Rescission is an equitable remedy awarded at the discretion of the court, Augustine v. Rogers, 47 Mass. App. Ct. 901, 902 (1999), and courts have uniformly found that claims intended to override the express terms of airline tickets through common law equitable

---

[13] The specific requirements of Section 253 are discussed more fully infra section III.A.

principles would amount to an "enlargement or enhancement based on state laws or policies external to the agreement" that is preempted by the ADA under Wolens. See Breitling, 45 F. Supp. 2d at 186 (use of common law doctrine of waiver preempted because "[u]nder Wolens, common law equitable principles may not be used to adjudicate contract claims relating to rates, routes, or services of an air carrier"); see also All World, 282 F. Supp. 2d at 1168-69 (claim under Virginia rule against contract penalties preempted); Williams v. Federal Express Corp., No. 99-06252, 1999 WL 1276558, at *5 (C.D. Cal. Oct. 5, 1999) (unpublished decision) (attempt to invoke equitable doctrine of unclean hands preempted); SVT Corp. v Federal Express Corp., No. 94-3057, 1997 WL 285051, at *4 (N.D. Cal. May 19, 1997) (unpublished decision) (claim under California common law doctrine of deviation to rescind contract was preempted), aff'd, 156 F.3d 1238 (unpublished table decision); Leonard, 605 N.W.2d at 431-32 (claim under Minnesota common law rule against penalties preempted). Thus, the Plaintiffs' rescission of contract claims are barred by the ADA and must be dismissed.

        b.    *The Plaintiffs' Breach of Fiduciary Duty Claims are Preempted Under Wolens.*

As noted infra section IV.B, the ordinary arms-length retail transaction between the parties did not as a matter of law give rise to a fiduciary relationship. Even assuming, *arguendo*, that the Domestic Defendants could somehow be construed as owing a fiduciary duty to the Plaintiffs, the claims would be preempted by the ADA. As a general matter, breach of fiduciary duty claims sound in tort. Therefore, they fall outside the Wolens exception and are preempted by the ADA. See United Airlines, Inc. v. Mesa Airlines, Inc., No. 97-C-4455, 1999 WL 1144962, at *1 (N.D. Ill. Oct. 5, 1999) (unpublished decision), aff'd, 219 F.3d 605 (7th Cir. 2000) ("[f]raud, breach of fiduciary duty, and intentional interference with contractual relationships are all causes of action which sound in tort" and are preempted by the ADA); see also Statland, 998 F.2d at 541-42 (breach

of fiduciary duty claims preempted by ADA); Cheng v. United Air Lines, Inc., No. 93-C-149, 1995 WL 314575, at *4 (N.D. Ill. May 19, 1995) (unpublished decision) (same); Johnson v. American Airlines, Inc., 663 N.E.2d 54, 57 (Ill. App. Ct. 1996) (same). Likewise, even if the Plaintiffs' fiduciary duty claims are premised on the contractual relationship between the parties, the claims are still preempted by the ADA because they improperly attempt to expand the terms of the nonrefundable tickets and thus constitute impermissible enforcement of state law external to the parties' agreement. See United Airlines, Inc. v. Mesa Airlines, Inc., 219 F.3d 605, 610 (7th Cir. 2000) (rejecting argument that contract-based fiduciary duty claims fall within the Wolens exception because "[o]nly rules external to the parties' bargain could defeat [express contractual rights] but [Section 105] in turn defeats external rules"). Thus, the Plaintiffs' breach of fiduciary duty claims, whether analyzed under a tort or contract theory, are preempted by the ADA and must be dismissed.

      c.    *The Plaintiffs' Claims for Unjust Enrichment and Declaratory Relief Are Preempted Under Wolens.*

    As with the rescission claims, claims for unjust enrichment and declaratory relief are equitable in nature and thus necessarily require the enforcement of state common law.[14] See supra § II.2.a. Accordingly, courts following Wolens have uniformly held that claims for unjust enrichment and declaratory relief are expressly preempted by Section 105. See All World, 282 F. Supp. 2d at 1169 (awarding relief for unjust enrichment and declaratory judgment would "enhance the parties' bargain based on state policy"); Breitling, 45 F. Supp. 2d at 182 (unjust enrichment); Dugan v. FedEx Corp., No. 02-1234, 2002 WL 31305208, at *3 (C.D. Cal. Sept. 26, 2002) (unpublished decision) (unjust enrichment); Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc., 972

---

[14] As discussed infra section III.C, a claim for unjust enrichment would only be available (were it not for the ADA preemption) in the absence of an express contract and thus necessarily involves the use of a court's equitable powers governed by state common law.

F. Supp. 665, 672-73 (N.D. Ga. 1997) (unjust enrichment); <u>Lehman</u>, 930 F. Supp. at 915-16 (unjust

enrichment); <u>see also</u> <u>Howell</u>, 994 P.2d at 905 (unjust enrichment); <u>Leonard</u>, 605 N.W.2d at 432

(unjust enrichment and declaratory judgment); <u>Blackner</u>, 709 A.2d at 13-14 (unjust enrichment).

Because the Plaintiffs' claims for unjust enrichment and declaratory judgment would require

the exercise of the Court's equitable powers, they are expressly preempted by the ADA.

Accordingly, these claims must also be dismissed.[15]

### III.    THE PLAINTIFFS' CLAIMS ALSO FAIL AS A MATTER OF STATE LAW.

In addition to being preempted by Section 105 of the ADA, the Plaintiffs' claims also fail as

a matter of state law.[16]

#### A.    The Plaintiffs Cannot Enforce Federal Regulations Through a Rescission of Contract Claim.

In their rescission of contract claim, the Plaintiffs allege that the defendant airlines violated

the federal regulations that govern the incorporation by reference of certain terms into airline

tickets. Specifically, the Plaintiffs allege that the defendant airlines violated 14 C.F.R. § 253.7

("Section 253.7"), which requires that airlines provide "conspicuous written notice of the salient

features" of terms restricting refunds, imposing monetary penalties, or permitting price raises by the

carrier. <u>Id.</u> § 253.7. The Plaintiffs contend that while they knew the tickets were nonrefundable,

the Plaintiffs "were not informed of the *additional* penalty that would be imposed on them if they

failed to use their nonrefundable tickets." Amended Complaint, ¶ 81.

As an initial matter, the Plaintiffs have failed sufficiently to allege a underlying violation of

the notice regulations. Section 253.7 prevents an air carrier from enforcing any terms restricting

---

[15] The civil conspiracy claims in the Amended Complaint appear to be based on the unjust enrichment allegations. <u>See</u> Amended Complaint, ¶ 97, and thus are likewise preempted. To the extent the civil conspiracy claims derive from either the contract or fiduciary duty allegations, they are preempted for reasons set forth above in sections II.C.1-2.

[16] The Plaintiffs' claims for declaratory relief need not be separately addressed because they are premised on the substance of the other claims, and thus, dismissal of the other claims would extinguish any cause of action for declaratory judgment.

refunds or imposing monetary penalties unless they provide adequate notice to ticket purchasers. The Plaintiffs nowhere allege, however, that the defendant airlines have attempted to enforce any terms other than the nonrefundability provisions, of which the Plaintiffs admit they had clear notice. Thus, the Amended Complaint does not allege any violation of Section 253.7. The Plaintiffs' contention that in enforcing the nonrefundability provisions, the defendant airlines *in effect* imposed an undisclosed "monetary penalty," <u>see</u> Amended Complaint, ¶ 80, is not only wrong, but entirely irrelevant. Whether the Plaintiffs perceive the nonrefundability as a monetary penalty does not alter the plain fact that the defendant airlines provided sufficient notice for the only terms they have sought to enforce.

Moreover, even assuming the Plaintiffs have alleged a violation of the notice regulations, they cannot enforce the regulations through a state law cause of action. Neither the ADA nor the regulations enacted thereunder create a private right of action.[17] <u>See</u> <u>Wayne v. DHL Worldwide Express</u>, 294 F.3d 1179, 1185 (9th Cir. 2002) ("[T]he ADA does not create a private cause of action."); <u>Sam L. Majors Jewelers v. ABX, Inc.</u>, 117 F.3d 922, 925 (5th Cir. 1997) ("We also find no indication that Congress implicitly intended a private right of action to arise under the statutory scheme [of the ADA]"); <u>Statland</u>, 998 F.2d at 539-40 (holding that the Federal Aviation Act does not create a private right of action to sue for alleged failure of airline to incorporate cancellation penalty into contract of carriage). In <u>Casas v. American Airlines, Inc.</u>, 304 F.3d 517 (5th Cir. 2002), the Fifth Circuit stated that allowing a state cause of action to enforce the regulations would "in substance, [] craft a private right of action for violations of [the regulations]—and thus to circumvent the conclusion that the ADA, and therefore the regulations enacted pursuant to it, creates no private right of action . . . ." <u>Casas</u>, 304 F.3d at 525. Thus, the <u>Casas</u> court held that the

---

[17] As noted above, the proper recourse is to the DOT. <u>See</u> <u>supra</u> note 12.

plaintiff could not bring a common law claim to enforce ADA regulations governing airlines'
ability to limit liability for damage to passengers' personal property.  Id.

Similarly here, the Plaintiffs should not be permitted to bootstrap a private cause of action to
a state law claim in order to purportedly enforce a federal law that does not itself provide a right to
suit.  Accordingly, the Plaintiffs' rescission of contract claim must be dismissed.

**B.    The Plaintiffs Have Failed to State a Claim for Breach of Contract.**

To state a claim for breach of contract under Massachusetts law, a plaintiff must allege, at a
minimum, that: (1) there was a valid contract, (2) the defendant breached its duties under the
contractual agreement, and (3) the breach caused the plaintiff damage.  See Moghaddam v. Dunkin'
Donuts, Inc., 295 F. Supp. 2d 136, 139 (D. Mass. 2003); Guckenberger v. Boston Univ., 957 F.
Supp. 306, 316-17 (D. Mass. 1997).  Here, the Plaintiffs have utterly failed to allege any contractual
provision or duty that the Domestic Defendants have breached.  The Amended Complaint merely
alleges that "the defendant airlines have breached their agreement with the plaintiffs."  Amended
Complaint, ¶ 52.  Such conclusory allegations are insufficient to state a claim.  See Doyle v.
Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (explaining that the complaint "fails to state the
nature of the alleged contract with any specificity. . . . Conclusory statements that 'Hasbro and its
executives failed to meet their contractual requirement' . . . are insufficient to satisfy the pleading
requirements."); Williams v. Astra USA, Inc., 68 F. Supp. 2d 29, 37 (D. Mass. 1999) ("[The
plaintiff must describe with 'substantial certainty' the bargain at issue and the specific obligation or
promise breached by [the defendant].").  Nor could the Plaintiffs state a breach of contract claim,
since the gravamen of the Plaintiffs' lawsuit is that the Domestic Defendants did not refund to the
Plaintiffs the fees imposed on admittedly nonrefundable tickets, and they cannot point to one term
of the contract or ticket that imposes that duty on the Domestic Defendants.  Thus, the breach of
contract claims fail as a matter of law and must be dismissed.

**C.    The Existence of an Express Contract Bars the Plaintiffs' Unjust Enrichment Claims.**

The Plaintiffs' unjust enrichment claims are also barred as a matter of law because this equitable remedy cannot be advanced where, as here, an express contract exists between parties. See Micromuse, Inc. v. Micromuse, PLC., 304 F. Supp. 2d 202, 209 n.8 (D. Mass. 2004) ("Where a contract does govern the parties' relationship, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies. This principle is simply an extension of . . . the doctrine, that where a plaintiff has an adequate remedy at law, a claim of unjust enrichment is unavailable."); In re: Lupron Marketing and Sales Practices Litig., 295 F. Supp. 2d 148, 182 (D. Mass. 2003) (same).

In this case, an express contract existed between the parties: the contract of carriage incorporated into the ticket. See Fondo v. Delta Air Lines, Inc., No. 00-2445, 2001 WL 604039, at *2-*3 (S.D.N.Y. May 31, 2001) (unpublished decision) ("An airline ticket, as supplemented by the carrier's tariff, embodies the contract of carriage between the airline and its passenger." (citing 14 C.F.R. § 253.4)). The Plaintiffs' relationship with the Domestic Defendants is governed by the rights and remedies expressly created by the contract of carriage. Consequently, the Plaintiffs' unjust enrichment claims must be dismissed. See Micromuse, 304 F. Supp. 2d at 209 n.8 (element of unjust enrichment claim is absence of remedy at law).

**D.    The Plaintiffs Have Failed to State a Claim for Breach of Good Faith and Fair Dealing.**

Under the implied covenant of good faith and fair dealing which underlies contracts in Massachusetts, "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-72 (1991). The covenant of good faith and fair dealing, however, does not extend beyond the actual terms of a contract. See UNO Restaurants, Inc. v. Boston Kenmore

Realty Corp., 441 Mass. 376, 385 (2004) ("The covenant is preserved so long as neither party injures the rights of another to reap the *benefits prescribed by the terms of the contract*." (emphasis added)); Smith v. Boston Edison Co., 62 Mass. App. Ct. 1105, 2004 WL 2310982, at*3 (2004) (unpublished table decision) ("There being no binding contract on the subject, no implied covenant of good faith and fair dealing existed."). Here, the Plaintiffs have failed to identify any contractual provision that the Domestic Defendants have breached, and the Plaintiffs acknowledge the tickets they purchased were nonrefundable. The Plaintiffs cannot, through a claim for breach of the covenant of good faith and fair dealing, either create contractual terms that do not exist or override the express terms of the ticket. See McAdams v. Massachusetts Mut. Life Ins. Co., 391 F.3d 287 (1st Cir. 2004) ("The purpose of the covenant is not to add terms to a contract; indeed, it may not do so."); UNO Restaurants, 441 Mass. at 385 ("The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance."); Dunkin' Donuts, Inc. v. Panagakos, 5 F. Supp. 2d 57, 64 (D. Mass. 1998) ("The implied covenant of good faith cannot override the express terms of a contract."). Accordingly, as with the Plaintiffs' breach of contract claims, the Plaintiffs' good faith and fair dealing claims fail to state a claim and must be dismissed.

### E. The Plaintiffs Have Failed to State a Claim for Breach of Fiduciary Duty.

In the Amended Complaint, the Plaintiffs allege the novel theory that when the Plaintiffs' allegedly failed to use their nonrefundable airline tickets, "the obligation to hold the collected funds in trust shifted, or should have shifted, from an obligation to hold the funds in trust for the levying authority to an obligation to hold the funds for Air Passengers who paid the unearned taxes, fees, or charges," Amended Complaint, ¶ 93, and as a result, "[e]ach of the defendant airlines owed a

fiduciary duty to the plaintiffs" to, *inter alia*, disclose information and refrain from self-dealing. Id.

¶ 94. The Plaintiffs' reliance on fiduciary duty principles in an ordinary retail transaction context is,

at best, misplaced. Under the Plaintiffs' theory, every standard retail transaction would create a

fiduciary relationship.

In Massachusetts, business relationships or arms-length transactions generally do not rise to

the level of a fiduciary relationship. See Savoy v. White, 139 F.R.D. 265, 267 (D. Mass. 1991);

McIntyre v. Okurowski, 717 F. Supp. 10, 11 (D. Mass. 1989). Here, the Plaintiffs have merely

alleged an ordinary arms-length retail transaction between them and the defendant airlines. While

certain circumstances -- for example, a longstanding relationship and "an exertion of influence over

one party by the other for its own advantage," see Savoy, 139 F.R.D. at 267 -- may give rise to a

fiduciary relationship, no such circumstances are alleged here. The only alleged interactions

between the parties are the Plaintiffs' purchases of airline tickets from the defendant airlines. The

Plaintiffs' bare allegation that the defendant airlines owed them a fiduciary duty is a legal

conclusion which is not entitled to any favorable inferences on a motion to dismiss, Resolution

Trust, 985 F.2d at 48, and thus the fiduciary duty allegations fail to state a claim because they do

not sufficiently allege a basis for any fiduciary relationship between the parties.

**F.      The Plaintiffs Have Not Sufficiently Alleged a "Common Design or
         Agreement" Between the Parties to State a Claim for Civil Conspiracy.**

Massachusetts recognizes two theories of co-conspirator civil liability. The first theory,

which involves allegations that defendants exercised coercion by "mere force of numbers acting in

unison," see Kurker v. Hill, 44 Mass. App. Ct. 184, 188-89 (1998), clearly has not been pled here.

Rather, the Plaintiffs attempt to state a cause of action for civil conspiracy under the second theory,

which is akin to joint liability for concerted actions. Id. To state a claim under this theory, a

plaintiff must allege both "a common design or an agreement, although not necessarily express,

between two or more persons to do a wrongful act" and "some tortious act in furtherance of the agreement." Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994). In addition, the "[k]ey to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan." Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 363 (D. Mass. 2002) (quoting Kurker v. Hill, 44 Mass. App. Ct. 189).

Although they may have managed to capture some of *the language* of the case law (albeit in a conclusory manner), the Plaintiffs have failed substantively to allege *the required elements* of a civil conspiracy claim. As a preliminary matter, there is no basis for any underlying liability: as discussed above, the unjust enrichment allegations on which the conspiracy claims appear to be founded fail to state a claim.[18] Moreover, even if there were underlying liability, the Plaintiffs have not alleged any factual basis for their allegations concerning a "common plan" among the Domestic Defendants. See Kurker v. Kassler, 60 Mass. App. Ct. 1122, 2004 WL 556959, at *2 (2004) (unpublished table decision) ("[A] conspiracy allegation based solely on a hope and a guess fails to state a claim on which relief may be granted. . . . [The Amended Complaint's] bald speculative, conclusory, illogical allegations of conspiracy simply do not state a claim.").

The civil conspiracy claim is a transparent attempt to wrap ARC and ATA into the Amended Complaint through co-conspirator liability. Liability for a civil conspiracy, however, simply cannot be founded on the conclusory allegations speculating that the Domestic Defendants were somehow involved in a common plan. For example, the allegation that because the ATA, which is a trade organization, describes its role as serving its member airlines and coordinating industry actions "*may* describe a sinister purpose," Amended Complaint, ¶ 99 (emphasis added), is the type of pure

---

[18] To the extent Plaintiffs allege a "common plan" not to *inform* them of their right to refund, their conspiracy claims fail as well. As discussed with regard to the fiduciary duty claim, supra, the Domestic Defendants had no duty to disclose such a right -- assuming, for purposes of the present motion only, that the Plaintiffs had one.

conjecture that cannot withstand a motion to dismiss.  See Hoffman v. Reali, 973 F.2d 980, 987 (1st Cir. 1992) ("[A plaintiff] may not rest merely on a bare hope that discovery will provide evidence to create an issue of fact.").  Indeed, in expanding the civil conspiracy claims in the Amended Complaint, the Plaintiffs have ventured beyond mere hope into outright fiction, alleging, incredibly, that the Federal Aviation Administration has conspired with the airline industry to unjustly enrich the defendant airlines.

Even accepting for purposes of the present motion the Plaintiffs' characterization of ARC and ATA roles as coordinating and standardizing aspects of the airline industry, the allegation that "Airline Industry policy *appears to be* uniform in the failure or refusal" to refund fees, id. ¶ 102 (emphasis added), does not provide a sufficient factual predicate for a civil conspiracy claim.  Thus, the Plaintiffs' civil conspiracy claims fail as a matter of law and must be dismissed.[19]

---

[19] As noted earlier, while the Plaintiffs do not explicitly differentiate among defendants across the various claims, only the civil conspiracy count implicates either ARC or ATA.  Indeed, while some of the other counts refers generally to the "Airline Industry", all of the relevant conduct alleged in the counts is by the "defendant airlines" and not by ARC or ATA.  Thus, dismissal of the civil conspiracy claims constitutes dismissal of the Amended Complaint as to ARC and ATA.

## CONCLUSION

For the reasons stated above, the Domestic Defendants respectfully request that the Court

dismiss the Amended Complaint in its entirety with prejudice.

DECHERT LLP

By: _____

Matthew A. Porter, BBO #630625
Michael S. Shin, BBO # 658134

200 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 728-7100

Attorneys for Delta Air Lines, Inc.,
American Airlines, Inc., Northwest Airlines,
Inc., Alaska Airlines, Inc., Continental
Airlines, Inc., Southwest Airlines Co.,
Airlines Reporting Corp., and
Air Transport Association of America, Inc.