# United States District Court
# District of Massachusetts

---

ROBERT J. HARRINGTON, et al.,

     *Plaintiffs,*

*v.*

DELTA AIR LINES, INC., et al.,

     *Defendants.*

Civil Action No. 04–12558–NMG

---

## PLAINTIFFS' COMBINED OPPOSITION TO MOTIONS TO DISMISS OF THE DOMESTIC DEFENDANTS, ATA, AER LINGUS, ALITALIA, BRITISH AIRWAYS, & LUFTHANSA

---

## I.     INTRODUCTION

The plaintiffs submit this combined opposition to the motions to dismiss filed by the following defendants:

(1) The eight Domestic Defendants (Alaska Airlines, American Airlines, Continental Airlines, Delta Air Lines, Northwest Airlines, Southwest Airlines, as the Airlines Reporting Corporation ("ARC"), and the Air Transport Association of America ("ATA")) (docket #59).

(2) ATA (separately) (docket #62).

(3) Aer Lingus Ltd. ("Aer Lingus") (docket #66).

(4) Alitalia-Linee Aeree Italiane S.p.A. ("Alitalia Airlines") (docket #67).

(5) British Airways, PLC ("British Airways") (docket #68).

(6) Deutsche Lufthansa A.G. ("Lufthansa Airlines") (docket #69).

Since many of the arguments made are identical, similar, or overlapping, a combined opposition is the most efficient way to address these various motions.

## II.      TABLE OF CONTENTS

I.    Introduction ........................................................................................................................ 1

II.   Table of Contents ............................................................................................................... 2

III.  Table of Authorities .......................................................................................................... 3

IV.   Argument ........................................................................................................................... 8

    A.    Standard of review of motion to dismiss under Rule 12(b)(6). ................................ 8

    B.    No Federal preemption under 49 U.S.C. § 41713(b)(1). ........................................ 10

        1.    The test for Federal preemption has two parts (State involvement and relationship to air carrier's prices, routes, or services), neither of which is present here. ................................................................................................... 11

        2.    Plaintiffs' claims are remedial only and do not seek to impose State obligations on the prices, routes, or services of air carriers. ............................................. 13

            (a)    Airlines set the prices or rates for their tickets, the Government sets the rates for its fees. ............................................................................... 15

            (b)    Federal law and regulation imposes certain requirements on air carriers and their contracts with passengers ..................................................... 15

        3.    *American Airlines, Inc. v. Wolens* specifically permits breach of contract claims that are not based on State-imposed obligations. ........................................... 20

            (a)    Consumers cannot seek to enforce private contract rights through the Department of Transportation (DOT). ................................................... 22

            (b)    Using rule argued by the defendants would render meaningless almost all airline contracts and certain provisions of Federal law ........................ 22

        4.    Logic of *Wolens* case extends to State court actions for violation of federally mandated contract terms. ................................................................................. 23

        5.    Right of action. .................................................................................................. 24

        6.    Discovery required to determine nature, terms, and compliance with respect to the contracts between the plaintiffs and the airlines. .................................... 25

    C.    The plaintiffs have stated claims for relief. .......................................................... 27

    D.    Jurisdiction in the Federal courts. ......................................................................... 34

        1.    Jurisdiction under 28 U.S.C. § 1331 (Federal question)................................... 34

            (a)    Federal law authorizes Passenger Facility Charges (PFCs). .................. 34

            (b)    Federal law imposes other passenger user fees. .................................... 35

        2.    Jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship and amount in controversy). ................................................................................................... 35

            (a)    Citizenship of the parties. ...................................................................... 36

            (b)    Amount in controversy. ......................................................................... 36

         3.    Jurisdiction under 28 U.S.C. § 1340 (cases involving customs duties). .......... 37

        4.    Jurisdiction of State law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). ...................................................................................................... 38

        5.    Jurisdiction of claims against Federal Aviation Administration (United States as a defendant). ................................................................................................ 38

     E.     Challenge to personal jurisdiction under Rule 12(b)(2), by ATA. .......................................... 38

          1.     Standard of review for personal jurisdiction. ................................................. 39

               (a)    *Prima facie* standard. ....................................................................... 39

               (b)    Opportunity for jurisdictional discovery required. ............................... 39

               (c)    Standards for general and specific jurisdiction. .................................... 41

          2.     Jurisdiction over Air Transport Association of America (ATA). ................................ 41

               (a)    Factors for analysis of personal jurisdiction. ....................................... 43

               (b)    Application of factors to ATA. ............................................................. 45

     F.     Challenge to subject matter jurisdiction (standing) under Rule 12(b)(1) (Lufthansa). .......... 48

V.     Conclusion ........................................................................................................................ 50

## III.     TABLE OF AUTHORITIES

### FEDERAL CASES

*Aloha Airlines, Inc. v. C.A.B.*,
    598 F.2d 250, 194 U.S.App.D.C. 331 (D.C.Cir. 1979) ..................................................... 22

*American Airlines v. Wolens*,
    513 U.S. 219, 115 S.Ct. 817 (1995) ................................................................................. passim

*Bartholet v. Reishauer A.G. (Zurich)*,
    953 F.2d 1073, 1078 (7th Cir. 1992) .................................................................................. 9

*Boit v. Gar-Tec Products, Inc.*,
    967 F.2d 671 (1st Cir. 1992) .............................................................................................. 39

*Bowers v. Hardwick*,
    478 U.S. 186, 201, 106 S.Ct. 2841, 2849 (1986) ............................................................... 9

*Carter v. Stanton*,
    405 U.S. 669, 92 S. Ct. 1232 (1972) .................................................................................. 10

*Chukwu Azubuko v. Board of Directors, British Airways*,
    915 F.Supp. 454 (D.Mass. 1996), *aff'd*, 101 F.3d 106 (1st Cir.) ...................................... 26

*Chukwu v. Board of Directors British Airways*, 889 F.Supp. 12 (D.Mass. 1995),
    *aff'd mem.*, *Azubuko v. Board of Directors, British Airways*,
    101 F.3d 106 (1st Cir. 1996), *cert. denied*, 520 U.S. 1188 , 117 S.Ct. 1473 (1997) ...................... 26

*Conley v. Gibson*,
    355 U.S. 41, 78 S.Ct. 99 (1957) ........................................................................................ 9

*Cort v. Ash*,
    422 U.S. 66, 95 S.Ct. 2080 (1975) ................................................................................ 24, 25

*Coyne v. City of Somerville*,
    972 F.2d 440, 442–443 (1st Cir. 1990) ........................................................................... 9, 27

*Daily Income Fund, Inc. v. Fox*,
    464 U.S. 523, 104 S.Ct. 831 (1984) ...................................................................... 24

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
    290 F.3d 42 (1st Cir. 2002), *cert. denied*, 123 S.Ct. 558 (2002) ...................... 45

*Hanson v. Denckla*,
    357 U.S. 235, 78 S.Ct. 1228 (1958) ...................................................................... 41

*Harper v. Cserr*,
    544 F.2d 1121, 1122 (1st Cir. 1976) ...................................................................... 9

*In re Lernout & Hauspie Securities Litigation*,
    2004 WL 1490435 (D.Mass. 2004) ........................................................ 39, 40, 41

*Lizotte v. Canadian John Manville Co.*,
    387 F.2d 607 (1st Cir. 1967) .................................................................................. 39

*LTX Corp. v. Daewoo Corp.*,
    979 F.Supp. 51 (D. Mass 1997) .............................................................................. 41

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374, 112 S.Ct. 2031 (1992) ...................................................... 10, 20, 23

*Nader v. Allegheny Airlines, Inc.*,
    426 U.S. 290, 96 S.Ct. 1978 (1976) ...................................................................... 22

*Polansky v. Trans World Airlines, Inc.*,
    523 F.2d 332 (3d Cir. 1975) .................................................................................. 22

*Pulson v. American Rolling Mill Co.*,
    170 F.2d 193 (1st Cir. 1948) .................................................................................. 40

*Roeder v. Alpha Indus., Inc.*,
    814 F.2d 22 (1st Cir. 1987) .................................................................................... 10

*Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985),
    *rev'd on other grounds, Holmes v. Securities Investors Protection Corp.*,
    112 S.Ct. 1311 (1992) ............................................................................................ 40

*Skwira v. United States*,
    344 F.3d 64 (1st Cir. 2003) .................................................................................... 40

*Sloan Const. Co. v. American Renovation and Const. Co.*,
    313 F.Supp.2d 24 (D.P.R. 2004) ............................................................................ 10

*Strauss v. City of Chicago*,
    760 F.2d 765 (7th Cir. 1985) .................................................................................. 9

*United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.*,
    960 F.2d 1080 (1st Cir., 1992) .............................................................................. 40

*United Liberty Life Ins. Co. v. Ryan*,
    985 F.2d 1320 (6th Cir. 1993) .............................................................................. 40

*United States v. Swiss American Bank, Ltd.*,
    274 F.3d 610 (1st Cir. 2001) .................................................................................. 39

*Valentin v. Hosp. Bella Vista,*
    254 F.3d 358 (1st Cir.2001) ....................................................................... 40

*Walsh v. National Seating Co., Inc.,*
    411 F.Supp. 564, 568 (D.Mass. 1976) ........................................................ 40

## STATE CASES

*Carlson Corp. v. University of Vermont,*
    380 Mass. 102, 402 N.E.2d 483 (1988) ...................................................... 41

*City of Boston v. Smith & Wesson Corp.,*
    No. 99–02590, 2000 WL 34018326 (Mass. Super. Nov. 21, 2000) ........... 43, 44

*Heins v. Wilhelm Loh Wetzlar Optical Machinery GMBH & Co. KG,*
    26 Mass. App. Ct. 14, 522 N.E.2d 989 (1988) ........................................... 41

## FEDERAL STATUTES

19 U.S.C. § 1202 (General Note 23, Harmonized Tariff Schedule of the United States) ............ 38

19 U.S.C. § 1505 ........................................................................................... 38

19 U.S.C. § 1520 ........................................................................................... 38

19 U.S.C. § 1624 ........................................................................................... 38

19 U.S.C. § 66 .............................................................................................. 38

19 U.S.C. §§ 58a–58c ................................................................................... 38

26 U.S.C. (Internal Revenue Code of 1986) § 4261 ............................. 12, 15, 35

26 U.S.C. (Internal Revenue Code of 1986) § 4261(b) .................................. 29

26 U.S.C. § 4461 .......................................................................................... 38

26 U.S.C. § 4462 .......................................................................................... 38

28 U.S.C. § 1331 .......................................................................................... 34

28 U.S.C. § 1332 ..................................................................................... 34, 35

28 U.S.C. § 1332(a) ...................................................................................... 35

28 U.S.C. § 1332(a)(3) .................................................................................. 36

28 U.S.C. § 1340 ................................................................................ 34, 37, 38

28 U.S.C. § 1346 .......................................................................................... 38

28 U.S.C. § 1367 ............................................................................... 14, 34, 38

28 U.S.C. § 1404(a) ...................................................................................... 50

28 U.S.C. § 1406(a) ...................................................................................... 50

28 U.S.C. § 1653 .......................................................................................... 48

28 U.S.C. chap. 7 (§§ 701 et seq.) ............................................................... 38

31 U.S.C. 9701 ................................................................................................................. 38

49 U.S.C. § 40101(a)(4) ................................................................................................. 23

49 U.S.C. § 40117 ...................................................................................................... 34, 35

49 U.S.C. § 40120(c) .............................................................................................. 21, 22, 23

49 U.S.C. § 41707 .................................................................................................. 16, 25, 28

49 U.S.C. § 41712 ........................................................................................................... 22

49 U.S.C. § 41713(b)(1) ............................................................................................. passim

49 U.S.C. § 44940 .......................................................................................................... 17

49 U.S.C. App. § 1305(a)(1) (former provision) .......................................................... 10

5 U.S.C. § 301 ................................................................................................................ 38

Pub. L. 101–508, 104 Stat. 1388–353 (1990), title IX, subtitle B (§ 9101 *et seq.*) ..................................... 34

Pub. L. 103–272, 108 Stat. 745 (1994), § 1(a) ............................................................. 10

Pub. L. 107–296, 116 Stat. 2135 (6 U.S.C. § 1 *et seq.*) ............................................. 38

Pub. L. 85–726, 72 Stat. 731 (1958),
    the Federal Aviation Act of 1958 .......................................................................... 22

Pub. L. 95–504, 92 Stat. 1705, 1707 (1978),
    the Airline Deregulation Act of 1978, § 105 (49 U.S.C. § 41713(b)(1)) ............. 10, 20, 22

## FEDERAL REGULATIONS

14 C.F.R. § 158.49(c) ..................................................................................................... 17

14 C.F.R. § 158.5 ........................................................................................................... 19

14 C.F.R. § 158.51 .......................................................................................................... 17

14 C.F.R. § 158.53 ...................................................................................................... 19, 37

14 C.F.R. § 158.53(a) ............................................................................................. 18, 20, 37

14 C.F.R. § 158.53(b) ..................................................................................................... 20

14 C.F.R. § 158.65 .......................................................................................................... 18

14 C.F.R. § 158.65(a) ..................................................................................................... 19

14 C.F.R. § 158.69(a) ..................................................................................................... 18

14 C.F.R. § 158.69(b)(1) ................................................................................................ 19

14 C.F.R. § 158.71 .......................................................................................................... 18

14 C.F.R. § 253.1(a) ....................................................................................................... 25

14 C.F.R. § 253.5 ................................................................................................... 28, 29, 32

14 C.F.R. §§ 158.45 ....................................................................................................... 17

14 C.F.R. §§ 158.69 ................................................................................................................ 18

14 C.F.R. part 158 .................................................................................................................. 35

14 C.F.R. part 253 .................................................................................................. 11, 16, 28, 33

19 C.F.R. § 24.22(g) ............................................................................................................... 38

19 C.F.R. § 24.22(g)(1)(i)–(ii) ................................................................................................ 19

19 C.F.R. § 24.22(g)(4) .......................................................................................................... 17

19 C.F.R. § 24.22(g)(5) .......................................................................................................... 18

19 C.F.R. § 24.22(g)(7) .......................................................................................................... 18

19 C.F.R. § 24.22(j)(2) ........................................................................................................... 38

19 C.F.R. part 24 .............................................................................................................. 35, 38

49 C.F.R. § 1510.11 ............................................................................................................... 17

49 C.F.R. § 1510.11(b) ..................................................................................................... 17, 20

49 C.F.R. § 1510.11(c) ........................................................................................................... 18

49 C.F.R. § 1510.13(b) ........................................................................................................... 20

49 C.F.R. § 1510.15 ............................................................................................................... 18

49 C.F.R. § 1510.15(a) ........................................................................................................... 18

49 C.F.R. § 1510.15(c) ........................................................................................................... 19

49 C.F.R. § 1510.17 ............................................................................................................... 18

49 C.F.R. § 1510.17(b)(4) ...................................................................................................... 19

49 C.F.R. § 1510.19 ............................................................................................................... 18

49 C.F.R. § 1510.9 ................................................................................................................. 17

49 C.F.R. § 1510.9(a) ............................................................................................................. 19

49 C.F.R. § 1510.9(b) ............................................................................................................. 18

49 C.F.R. part 1510 .......................................................................................................... 15, 35

7 C.F.R. § 354(f) ............................................................................................................... 15, 35

7 C.F.R. § 354.3(f)(1) ............................................................................................................. 19

7 C.F.R. § 354.3(f)(1) table note 1 ......................................................................................... 17

7 C.F.R. § 354.3(f)(4)(C) .................................................................................................. 17, 20

7 C.F.R. § 354.3(f)(4)(i) ......................................................................................................... 17

7 C.F.R. § 354.3(f)(5) ............................................................................................................. 17

7 C.F.R. § 354.3(f)(5)(ii) ........................................................................................................ 18

7 C.F.R. § 354.3(f)(7) ...................................................................................................... 18

8 C.F.R. § 286.2(a) .......................................................................................................... 19

8 C.F.R. § 286.2(c) ........................................................................................................... 18

8 C.F.R. § 286.4 .......................................................................................................... 17, 31

8 C.F.R. § 286.5 ............................................................................................................... 17

8 C.F.R. § 286.5(b)(2) ...................................................................................................... 18

8 C.F.R. § 286.5(c) & (e) .................................................................................................. 18

8 C.F.R. §§ 286.5 ............................................................................................................. 18

8 C.F.R. part 286 ......................................................................................................... 15, 35

## FEDERAL COURT RULES

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 48

Fed. R. Civ. P. 12(b)(2) ................................................................................................... 38

Fed. R. Civ. P. 56 ...................................................................................................... 10, 50

Fed. R. Civ. P. 56(c) ....................................................................................................... 50

Fed. R. Civ. P. 56(f) ........................................................................................................ 50

Fed. R. Civ. P. 8(a) ......................................................................................................... 28

Fed. R. Civ. P. 8(a)(2) ..................................................................................................... 49

## STATE LAWS

Mass.Gen.L. ch. 223A, § 3 .............................................................................................. 41

## TREATISES

59 Am. Jur. Proof of Facts 3d 1 .................................................................................. 44, 45

J. Moore and J. Lucas, 2A Moore's Federal Practice § 12.08 ........................................... 9

J. Moore and J. Lucas, 2A Moore's Federal Practice ¶ 12.08 (1984) ............................... 9

# IV.     ARGUMENT

## A.     Standard of review of motion to dismiss under Rule 12(b)(6).

The burden on a motion to dismiss is not on the plaintiffs to demonstrate conclusively that

their claims are true, but merely that they are colorable. Rather, the burden of such a motion is on

the defendants to prove that the plaintiffs cannot, under any set of facts consistent with the

Amended Complaint, prevail on any cognizable claim. The defendants have not met that burden.

In considering "a motion to dismiss, [the Court] consider[s] only those facts and allegations set forth in the complaint and must view them in a light most favorable to the plaintiff. A complaint should be dismissed only if plaintiff is not entitled to relief under any set of facts he could prove." *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir. 1976) (citing J. Moore and J. Lucas, 2A Moore's Fed. Practice § 12.08 at 2271, 2274). Thus, the Court must accept the factual averments of the complaint as true, and draw all reasonable inferences in favor of the plaintiffs. *Coyne v. City of Somerville*, 972 F.2d 440, 442–443 (1st Cir. 1990).

"It is a well-settled principle of law that a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Bowers v. Hardwick*, 478 U.S. 186, 201, 106 S.Ct. 2841, 2849 (1986) (Blackmun, J., dissenting) (citations and internal quotation marks omitted). "Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (Easterbrook, J.) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102 (1957)). Under the liberal reading required by Rule 12, "the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal." *Id.*, 953 F.2d at 1078. Moreover, "mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985) (citing 2A Moore's Federal Practice ¶ 12.08 at 2274, 2285 (1984)).

In sum, dismissal is improper "unless it appears beyond doubt that the plaintiff can prove **no set of facts** in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355

U.S. at 45–46, 78 S.Ct. at 102 (footnote omitted); *see also Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir. 1987). The defendants simply have not met their burden of showing that the plaintiffs cannot make a claim under any set of facts consistent with the allegations of the Amended Complaint.[1]

**B.    No Federal preemption under 49 U.S.C. § 41713(b)(1).**

The defendants argue that 49 U.S.C. § 41713(b)(1)[2] preempts the plaintiffs' claims. However, those claims are not preempted because (1) the plaintiffs seek to enforce the federally mandated terms of their air travel contracts with the defendants in the only available forum, namely a State court contract action (or alternatively, in a Federal court action under an implied right of action), (2) such an action in State court is entirely consistent with the statutory air transportation scheme (including the preemption and savings clauses) of title 49, United States Code, and (3) under the Supreme Court's decision in *American Airlines v. Wolens*, 513 U.S. 219, 115 S.Ct. 817 (1995), the plaintiffs' claims for breach of contract (and good faith and fair dealing) are specifically permitted, as they do not arise from any "State-imposed obligations" (which would almost certainly have been a fatal flaw under that decision or that of *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031 (1992)), but rather from obligations *already* imposed by the Federal Government under Federal law.

---

[1] To the extent that the defendants' Motions to Dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) (and this opposition to those motions) require the Court to consider matters beyond the scope of the Amended Complaint, the motions should be treated as Rule 56 motions for summary judgment. Rule 12(b); *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234 (1972); *Sloan Const. Co. v. American Renovation and Const. Co.*, 313 F.Supp.2d 24, 30 (D.P.R. 2004). The Court should permit a reasonable period and opportunity for discovery appropriate to a summary judgment motion. Alternatively, the Court should deny the motions and permit discovery as otherwise provided under the Federal Rules of Civil Procedure.

[2] In 1994, the Congress enacted the laws then classified to title 49, United States Code, as positive law, without change to the substance of the laws incorporated into that title. *See* § 1(a) of Pub. L. 103–272, 108 Stat. 745 (1994). Section 105 of the Airline Deregulation Act of 1978, Pub. L. 95–504, 92 Stat. 1705, 1707 (1978), which had previously been codified at 49 U.S.C. App. § 1305(a)(1), was reenacted as 49 U.S.C. § 41713(b)(1).

1. **The test for Federal preemption has two parts (State involvement and relationship to air carrier's prices, routes, or services), neither of which is present here.**

For Federal preemption to apply, the claim must be based on (1) some enactment or enforcement of a State law (or other embodiment having the force of a law) that (2) relates to air carrier rates (or prices), routes, or services. 49 U.S.C. § 41713(b)(1). Without meeting **both** of these requirements, there simply is no basis for Federal preemption. (Indeed, there cannot logically be any Federal preemption where there is no State involvement, since the very nature of preemption is for the Federal Government to override or supersede that State involvement.) Here, neither required factor is present.

First, the plaintiffs' claims do not invoke any enactment of law, regulation, or other such provision of State law. *Id.* Rather, consistent with the Supreme Court's decision in *Wolens*, they rely on the contract itself, with no invocation of external State law or policy. *Wolens*, 513 U.S. 219, 115 S.Ct. 817. The contract itself is based on Federal legal requirements, which are, as a matter of law, a part of any minimum contractual requirements between air carriers and passengers. *See* 14 C.F.R. part 253 (providing for unenforceability of contract terms that do not meet the requirements of that part).

Second, the plaintiffs' claims are not "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The plaintiffs' claims related to the unlawful retention of a passenger's prepaid 'unused' user fees, held in trust (under law) by the Air Industry for the benefit of the levying authority, can hardly be said to relate to a "route" of an air carrier. To be sure, the retained prepaid 'unused' user fees are for "service[s]," but none of them is for a "service of an *air carrier*." *Id.* (emphasis added). Rather, they are fees related to "service[s]" of the

Government agencies (or airports or quasi-governmental airport authorities, in the case of PFCs) that provide the service.[3] The only relation such a "service" has to an air carrier is that the air carrier, as required by law, collects the fee, holds it in trust, remits it to the levying authority (if it becomes due), or refunds it to passengers (if it does not become due). Even if such a relationship could be said to fall under the "related to" language of the statute, the forbidden State involvement is still missing.

Finally, the plaintiffs' claims for unlawfully retained 'unused' user fees are not "related to a price ... of an air carrier," *id.*—at least not as the Congress intended for purposes of preemption—since (1) these fees are completely separate from the 'base' fare of the air carrier, which provides the legal basis for the ***addition*** of such fees, and (2) the fees are set by the Federal Government itself (not by an air carrier) through regulations prescribed by the Secretary of Transportation. And again, even if the Court were to find that governmentally imposed user fees—especially those imposed as a flat rate collected in advance for services actually (to be) provided (unlike the U.S. excise tax on air transportation, which is a percentage of the price of the airfare, *see* 26 U.S.C. § 4261)—there is simply no forbidden external State law or policy involved in such fees.

---

[3] Although the defendants argue that these fees are somehow related to "air carrier 'services' within the meaning" of the preemption statute, such as 'ticketing, boarding procedures, provision of food and drink, and baggage handling' (*see* Mem. of Dom. Defs. at 6), the plaintiffs' claims simply do not involve airline-provided services—whether that service is the air transportation itself or peripheral services, since these are services provided by the airport (in the case of PFCs), by the Transportation Safety Administration of the Department of Homeland Security (in the case of the U.S. security service fee), by the former Immigration and Naturalization Service (now part of the Department of Homeland Security) (in the case of immigration user fees), by the U.S. Customs Service (in the case of the U.S. Customs fee), by the Department of Agriculture (in the case of the agricultural inspection fee), or by foreign governments or agencies (in the case of at least some of the foreign taxes, fees, and charges). These Government-required 'services' are undertaken by the appropriate governmental or quasi-governmental agency and take place (temporally and spatially) separate from the 'services' undertaken by the Air Industry. (For example, baggage screening typically takes place before an air carrier takes possession of the baggage from the passenger, and Customs and agricultural inspections typically take place after the air carrier has returned baggage to a passenger.)

The defendants' emphasis on the "relates to" language of the preemption statute (*see* Mem. of Dom. Defs. at 4–6) is fruitless without some State involvement, which simply is not present here. (And the plaintiffs' arguments have special strength with respect to foreign taxes, fees, and charges, which cannot even arguably be related to some external State law or policy.) The defendants' emphasis on the "service" aspect (*see* Mem. of Dom. Defs. at 6), without paying heed to the requirement that it be a "service ***of an air carrier***" is likewise misplaced. 49 U.S.C. § 41713(b)(1) (emphasis added). Therefore, since there is neither the forbidden State involvement nor the required relation to the prices, routes, or services "of an air carrier" necessary to trigger Federal preemption of the plaintiffs' claims, there can be no preemption. *Id.*

2.    **Plaintiffs' claims are remedial only and do not seek to impose State obligations on the prices, routes, or services of air carriers.**

Section 41713(b)(1) of title 49, United States Code, preempts "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation." Interpreting this provision, the Supreme Court, in *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, held that claims against airlines alleging no breach of 'State-imposed obligations' (including those alleging breach of 'self-imposed undertakings') are not preempted by 49 U.S.C. § 41713(b)(1).

The plaintiffs allege that the airline industry collected certain Government-imposed fees from passengers then (1) failed to refund those fees when passengers did not use (or forfeited) their air tickets, and (2) failed to pay that money to the fee-levying authorities.

The Federal Government mandates certain terms of air carrier contracts, but those contracts are only enforceable under State contract law. What the plaintiffs are requesting is simply that their contracts with the defendants be enforced. The terms of those contracts are set, in part, by

Federal regulation. The only remedy available, however, is a State law contract action. The fact that the Federal Government sets one or more terms is irrelevant to the question of whether the claim is permitted in State court (or under the Federal Court's supplemental jurisdiction under 28 U.S.C. § 1367), since the State has not imposed any additional or incompatible terms, obligations, or requirements (or indeed any terms at all).

The Federal preemption under 49 U.S.C. § 41713(b)(1) is intended to permit the airlines to set their own rates, routes, and services, in accordance with Federal law, and free of prescriptive obligations or burdens the States might variously seek to impose. *See Wolens*, 513 U.S. 219, 115 S.Ct. 817. Here, resort to State law merely provides a mechanism to seek redress for wrongs committed in violation of Federal requirements, but that redress does not—and in fact cannot—affect the prices (or rates), routes, or services, since the redress occurs only ***after*** the prices (or rates), routes, and services have been determined by the Air Industry (free of State-imposed obligations). And if, as the plaintiffs allege, the defendants are unlawfully keeping money that should either be paid to a governmental agency or to the plaintiffs, in violation of Federal requirements, the airlines can scarcely argue that enforcement of Federal law has an unwarranted affect on their ability to set their own prices (or rates), routes, or services, free from State-imposed obligations.

Resort to State law is for the purposes of remedy only, and it has no prescriptive effects with respect to prices (or rates), routes, or services, as those are set by the Airline Industry—free from interference from the States, just as the Congress intended—(1) ***before*** a passenger purchases a ticket, (2) ***before*** the passenger forfeits or fails to use a nonrefundable ticket, and (3) ***before*** the airline fails to refund any unowed governmental charges or fees. In these circumstances, there can be ***no causal relationship*** between the *post hoc* remedy sought by the

plaintiffs and the earlier exercise of the Airline Industry's right to set its own prices (or rates), routes, and services without the meddling of the States. There simply is no interference.

(a)    **Airlines set the prices or rates for their tickets, the Government sets the rates for its fees.**

Airline ticket prices (or rates) are composed two separate components: (1) the *fare prices* (or rates) set by the airlines, which comprise the base cost of a ticket, and (2) the *taxes, fees, and charges* imposed by the Government or other fee-levying authorities. While airlines are free to set their *fare prices*, they cannot modify the taxes, fees, and charges imposed (and which the airlines typically collect on behalf of) the levying authorities. Rather than seeking the return of excise taxes imposed by the Federal Government under 26 U.S.C. § 4261, the plaintiffs seek return of charges and user fees which are only due if a passenger actually *uses* the services the fees are designed to pay for. User fees the plaintiffs seek return of include the following:

(1) Passenger Facility Charges (PFCs) imposed under 14 C.F.R. part 158.

(2) U.S. Customs user fees imposed under 19 C.F.R. § 24.22(g).

(3) Immigration user fees imposed under 8 C.F.R. part 286.

(4) Agricultural inspection user fees imposed under 7 C.F.R. § 354(f).

(5) U.S. security service fees imposed under 49 C.F.R. part 1510 (also called the "September 11th Security Fee").

The plaintiffs' claims involve allegations that the airline industry collected these charges and fees from air passengers and failed (1) to refund those charges to passengers who did not use nonrefundable tickets, and (2) to remit the collected funds on those unused tickets to the levying authority. *See* Amended Complaint ¶¶ 1, 3, 62, 80, 87, 102.

(b)    **Federal law and regulation imposes certain requirements on air carriers and their contracts with passengers.**

Plaintiffs' claims are not State-imposed prescriptions or obligations burdening the airlines'

15

ability to determine prices or services. Rather, they are related to the violation of Federal statutes and regulations. The effect of the defendants' undeterred unlawful conduct is the unjust enrichment of the airline industry at the expense of certain passengers and, possibly, the governmental agencies levying the user fees the defendants failed to return to the plaintiffs or submit to the agencies. Some of the Federal requirements relevant to the plaintiffs' claims are as follows:

**Federal requirements for contracts of carriage.** "To the extent the Secretary of Transportation prescribes by regulation, an air carrier may incorporate by reference in a ticket or written instrument any term of the contract for providing interstate air transportation." 49 U.S.C. § 41707; *see also* 14 C.F.R. part 253 (notice of terms of contract of carriage). Under this authority, the Federal Government imposes some requirements and some limitations on air carriers' ability to contract with passengers. *See* 14 C.F.R. part 253. In doing so, the Government seeks to set "uniform disclosure requirements, which preempt any State requirements on the same subject, for terms incorporated by reference into contracts of carriage" for air travel. *Id.* at § 253.1. A ticket or contract for air transportation may incorporate contract terms by reference, without setting out the entire terms on the face of the contract itself, if notice complying with 14 C.F.R. part 253 is given to the passenger along with the ticket or contract. *Id.* at § 253.4(a).

The consequences of improper notice are that, "*[i]n addition to other remedies at law*, an air carrier may not claim the benefit as against the passenger of, and *the passenger shall not be bound by, any contract term* incorporated by reference if notice of the term has not been provided to that passenger in accordance with this part." *Id.* (emphasis added). Moreover, certain terms are not permitted to be incorporated only by reference. "A passenger shall not be bound by any *terms restricting refunds of the ticket price, imposing monetary penalties on passengers,*

16

*or permitting the carrier to raise the price*, unless the passenger receives conspicuous written notice of the salient features of those terms on or with the ticket." *Id.* at § 253.7 (emphasis added).

Of course, it is impossible to evaluate the contracts at issue in this case without permitting at least some discovery. Only then can the Court determine (1) what, if any, terms were incorporated by reference, (2) whether other terms were given the required conspicuous notice, and (3) based on the contracts themselves, whether there was a breach of the contracts or these requirements.

**Federal requirements related to collection, handling, and remittance of passenger charges and user fees.** Air carriers have a number of duties with respect to the collection, handling, and remittance of passenger charges and user fees. Air carriers are required to collect the charges and user fees,[4] which often must be held in "trust," by the collecting air carrier.[5] Of course, the collector must also periodically remit the fees to the appropriate fee-levying authorities,[6] maintain accounting systems and methods and submit to external audits,[7] and submit

---

[4] 14 C.F.R. §§ 158.45, 158.47 (PFCs); 7 C.F.R. § 354.3(f)(4)(i) & (f)(1) table note 1 (agricultural inspection user fees); 8 C.F.R. § 286.4 (immigration user fees); 19 C.F.R. § 24.22(g)(4) (U.S. Customs user fees); 49 C.F.R. § 1510.9 (U.S. security service fees).

[5] 14 C.F.R. § 158.49(c) (PFC revenues held after collection "**constitute a trust fund … for the beneficial interest of the public agency imposing the PFC**," in which the air carrier "holds neither legal nor equitable interest in the PFC revenues except for any handling fee or retention of interest collected on unremitted proceeds as authorized in §158.53.").

7 C.F.R. § 354.3(f)(4)(C) ("AQI [agricultural quarantine and inspection] user fees collected from international passengers … shall be **held in trust for the United States [and]** … shall be accounted for separately and … **regarded as trust funds** … for the beneficial interest of the United States. All such user fees held by any person shall be property in which the person holds only a possessory interest and not an equitable interest.").

49 C.F.R. § 1510.11(b) (After collection, security service fees are "**held in trust by … [the] carrier for the beneficial interest of the United States** in paying for the costs of providing civil aviation security services described in 49 U.S.C. 44940. The … carrier holds neither legal nor equitable interest in the security service fees except for the right to retain any accrued interest on the principal amounts collected pursuant to § 1510.13(b).").

[6] 14 C.F.R. § 158.51 (PFCs); 7 C.F.R. § 354.3(f)(5) (agricultural inspection user fees); 8 C.F.R. § 286.5 (immigration user fees); 49 C.F.R. § 1510.11 (U.S. security service fees).

regular reports or statements about their fee-collecting and remitting activities.[8]

**Passenger refunds of fees.** Some of the user fees specifically contemplate that 'unearned' fees will be refunded to passengers. For example, "Refunds by a remitter of [agricultural inspection] user fees *collected in conjunction with unused tickets* or travel documents shall be netted against the next subsequent remittance."[9]

The regulations governing the U.S. security service fee appear to affirmatively *require* air carriers to refund the fee if a passenger's number of enplanements decreases. (In the case of an unused ticket, the number of enplanements decreases to zero.) "The security service fee must be based on the air travel itinerary at the time the air transportation is sold. *Any changes by the passenger to the itinerary that alter the number of enplanements are subject to* additional collection or *refund of the security service fee* by the direct air carrier or foreign air carrier as appropriate." 49 C.F.R. § 1510.9(b) (emphasis added).

In addition, the regulations make references to refunds in the context of the accounting and reporting requirements, apparently contemplating that carriers will refund unearned fees. For example, with respect to U.S. security services fees, air carriers must "establish and maintain an accounting system to account for the security service fees imposed, collected, *refunded* and remitted."[10]

---

[7] 14 C.F.R. §§ 158.69, 158.71 (PFCs); 7 C.F.R. § 354.3(f)(7) (agricultural inspection user fees); 8 C.F.R. §§ 286.5, 286.6 (immigration fees); 19 C.F.R. § 24.22(g)(7) (U.S. Customs user fees); 49 C.F.R. §§ 1510.11(c); 1510.15, 1510.19 (U.S. security service fees).

[8] 14 C.F.R. § 158.65 (PFCs); 8 C.F.R. §§ 286.2(c), 286.5(c) & (e) (immigration user fees); 19 C.F.R. § 24.22(g)(5) (U.S. Customs user fees); 49 C.F.R. § 1510.17 (U.S. security service fees).

[9] 7 C.F.R. § 354.3(f)(5)(ii); *cf.* 8 C.F.R. § 286.5(b)(2) ("Refunds by a remitter of [immigration user] fees *collected in conjunction with unused tickets* or documents for transportation shall be netted against the next subsequent remittance.").

[10] 49 C.F.R. § 1510.15(a) (emphasis added); *cf.* 14 C.F.R. § 158.69(a) ("Collecting carriers shall establish and maintain … an accounting record of PFC revenue collected, remitted, *refunded* and compensation retained under § 158.53(a)." (emphasis added)).

In another example, "[u]nless otherwise agreed by the collecting carrier and public agency, reports shall state … the total PFC revenue collected, ***the total amount of PFC revenue refunded to passengers***, and the amount of collected revenue withheld by the collecting carrier for reimbursement of expenses in accordance with § 158.53 of this part."[11]

**Fairness and reasonableness of carrier's fee-handling procedures.** An interesting feature of the PFC and U.S. security service fee regulations is the requirement that, in accounting and auditing the charges or fees collected, held, refunded, and remitted, the air carrier must obtain the opinion of an outside accountant with respect to how fair and reasonable the carrier's fee-handling procedures are. "The accountant shall express an opinion on the ***fairness and reasonableness of the carrier's procedures for collecting, holding, and dispersing PFC revenue***."[12]

**User fees due when 'service' is 'used'.** The nature of user fees is to become due (that is, the fee is required to be paid to the fee-levying authority) only if or when the passenger actually 'uses' the 'service.' PFCs and U.S. security services fees (September 11th Security Fees) are due upon passenger "enplanement," agricultural inspection user fees are due "upon arrival" of the passenger from abroad, immigration user fees are due for passengers "arriving" from abroad, and U.S. Customs user fees are paid for "services provided in connection with arrival of each passenger" from outside the Customs territory of the United States.[13] What constitutes 'use' varies slightly from fee to fee, but all amount to the same thing: ***If a passenger doesn't use the***

---

[11] 14 C.F.R. § 158.65(a) (emphasis added); *cf.* 49 C.F.R. § 1510.17(b)(4) (quarterly reports must show "[t]he total amount of September 11th Security Fees ***refunded*** … by the … air carrier" (emphasis added)).

[12] 14 C.F.R. § 158.69(b)(1) (emphasis added); *cf.* 49 C.F.R. § 1510.15(c) ("The accountant must express an opinion on the ***fairness and reasonableness*** of the direct air carrier's and foreign air carrier's procedures for collecting, holding, and remitting the fees." (emphasis added)).

[13] 14 C.F.R. § 158.5 (PFCs); 49 C.F.R. § 1510.9(a) (U.S. security service fees); 7 C.F.R. § 354.3(f)(1) (agricultural inspection user fees); 8 C.F.R. § 286.2(a) (immigration user fees); 19 C.F.R. § 24.22(g)(1)(i)–(ii) (U.S. Customs user fees).

***fee, the fee does not have to be paid to the fee-levying authority.*** Consequently, in the context of the refund and trust regulatory language discussed above, if the fee never becomes due to the levying authority, it should be returned to the person who paid the fee. This is especially true where the collecting carrier 'holds neither legal nor equitable interest' in the fees. *See* footnote 5.

**Incentives for fee collection** . Some of the charges or user fees allow for 'collection compensation,' in the form of retention of (1) a portion of the fee, and (2) the interest accrued on unremitted funds. Carriers may retain the interest on fees collected until the time of remittance to the fee-levying authorities with respect to PFCs, agricultural user fees, and U.S. security service fees.[14] In addition, carriers are "entitled to … "[r]etain $0.11 of each PFC collected."[15]

**3. *American Airlines, Inc. v. Wolens* specifically permits breach of contract claims that are not based on State-imposed obligations.**

"We do not read the ADA's [Airline Deregulation Act of 1978[16]] preemption clause, however, to shelter airlines from ***suits alleging no violation of state-imposed obligations***." *Wolens*, 513 U.S. at 228, 115 S.Ct. at 824 (emphasis added).[17] *See also Morales*, 504 U.S. 374, 112 S.Ct. 2031 (preempting State guidelines that set "binding requirements as to how airline tickets may be marketed," *id.*, 504 U.S. at 388, 112 S.Ct. at 2039, and "imposed [obligations

---

[14] 14 C.F.R. § 158.53(b) (PFCs); 7 C.F.R. § 354.3(f)(4)(C) (agricultural user fees); 49 C.F.R. §§ 1510.11(b), 1510.13(b) (U.S. security service fees).

[15] 14 C.F.R. § 158.53(a) (as amended, effective May 1, 2004); this amount was previously "$0.12 of each PFC ***remitted*** on or before June 28, 1994. Thereafter,… $0.08 of each PFC ***remitted***." (Emphasis added.) One might reasonably think that the $0.11 per PFC is not (or should not be) retained when the PFC is refunded, as it has not been 'collected' for purposes of ultimate 'remittance' to the levying authority. *But see discussion* "Compensation Based on Remitted PFCs vs. Collected PFCs," *in* Revisions to PFC Rule for Compensation to Air Carriers (Final Rule), 69 Fed. Reg. 12,940, 12,941 (Mar. 18, 2004). It is unclear what practical effect the change from the "remitted" to the "collected" language will have for consumers seeking refunds.

[16] Pub. L. 95–504, 92 Stat. 1705 (1978).

[17] The defendants urge the Court to give great import to the last half of this sentence (quoted here), which they argue ***only*** permits contract actions "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 513 U.S. at 228, 115 S.Ct. at 824. They fail to recognize that it is the first half of the sentence (quoted in the text) that states the ***general rule***, of which contract claims involving only violations of 'self-imposed undertakings' constitute just one particular example.

that] would have a significant impact upon ... the fares [airlines] charge." *Id.*, 513 U.S. at 390, 112 S.Ct. at 2040.)

The plaintiffs' breach of contract and related claims are not preempted by 49 U.S.C. § 41713(b)(1), since the terms of the contract were not imposed by State law (statutory, regulatory, or common law). "A remedy confined to a contract's terms simply holds parties to their agreements." *Wolens*, 513 U.S. at 229, 115 S.Ct. at 824. Here, the violations alleged are violations only of Federal law, with the State merely providing a passive means by which to seek relief.

The plaintiffs therefore seek the remedy in the only forum available to them—a State court contract action. The State provides the forum for the remedy against the airline industry, but does not in any way regulate the airline industry. This is completely in keeping with the Federal preemption clause, 49 U.S.C. § 41713(b)(1), and the savings clause, 49 U.S.C. § 40120(c), as well as the Supreme Court's decisions in *Wolens*, 513 U.S. 219, 115 S.Ct. 817, and *Morales*, 504 U.S. 374, 112 S.Ct. 2031.

In other words, Federal law permits the plaintiffs to bring claims in State court under State contract law for breach of contract (and good faith and fair dealing) against the Domestic Defendants, so long as ***no part of the contract is imposed on the parties by State law***. If the Court were to hold otherwise, consumers would have no recourse either in State courts or under Federal law to seek redress for an air carrier's breach of contract, even if the terms alleged to have been breached are ***specifically mandated*** under Federal law. It is the State prescription, seeking to control the conduct of the airline industry, that is preempted. Here, there is simply "no enlargement or enhancement based on state laws or policies external to the agreement," *id.*, 513 U.S. at 232–233, 115 S.Ct. at 826, other than policies mandated by Federal law—and those

should provide no sound basis for preemption of remedial State enforcement of contracts governed by that law.

> **(a)**    **Consumers cannot seek to enforce private contract rights through the Department of Transportation (DOT).**

A contract claim under State law is the only remedy available to the plaintiffs. Although 49 U.S.C. § 41712 gives the Secretary of Transportation the power to investigate and enjoin unfair or deceptive practices, it does not authorize the Secretary to vindicate private rights, nor does it entitle individual consumers to initiate proceedings.[18]

"When Congress dismantled [the airline regulation] regime,… the lawmakers indicated no intention to establish, simultaneously, a new administrative process for DOT adjudication of private contract disputes." *Wolens*, 513 U.S. at 232, 115 S.Ct. at 825. Thus, administrative redress is not available.

> **(b)**    **Using rule argued by the defendants would render meaningless almost all airline contracts and certain provisions of Federal law.**

"The ADA's preemption clause, [49 U.S.C. § 41713(b)(1)[19]], read together with the FAA's saving clause, [49 U.S.C. § 40120(c),[20]] stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from ***affording relief*** to a party who claims and proves that an airline dishonored a term the airline itself stipulated," *Wolens*, 513 U.S. at 232–233, 115 S.Ct. at 826 (emphasis added), ***or one mandated by Federal law***.

"Market efficiency requires effective means to enforce private agreements." *Id.*, 513 U.S.

---

[18] *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 96 S.Ct. 1978 (1976) (Secretary may not vindicate private rights; individual consumers not entitled to initiate proceedings); *Aloha Airlines, Inc. v. C.A.B.*, 598 F.2d 250, 194 U.S.App.D.C. 331 (D.C.Cir. 1979) (Secretary may not act to vindicate private rights); *Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332 (3d Cir. 1975) (private remedy may not be implied).

[19] The preemption clause was formerly part of the Airline Deregulation Act of 1978 (ADA), *supra* footnote 16, and was previously classified to 49 U.S.C.App. § 1305(a)(1). *See* footnote 2.

[20] The savings clause was formerly part of the Federal Aviation Act of 1958 (FAA), Pub. L. 85–726, 72 Stat. 731 (1958). That Act is now incorporated into positive law, as set out in title 49, United States Code. *See* footnote 2.

at 230, 115 S.Ct. at 825. Surely the Congress cannot have intended to keep the savings clause in 49 U.S.C. § 40120(c), permitting State law claims for breach of contract where the air carrier "voluntarily assents" to undertake one or more unspecified duties under the contract, while at the same time denying State courts the ability to hear claims based on violations of terms considered by the Congress to be sufficiently important to be specified or limited by Federal law, but (inexplicably) not sufficiently important to permit enforcement in any court. Such a result would be incongruous. The Congress surely would not have foreclosed the State courts from hearing such cases, as that would effectively make contracts meaningless and roll back, rather than advance, the market efficiency that the Airline Deregulation Act of 1978 (ADA) was designed to promote. *Wolens*, 513 U.S. at 230, 115 S.Ct. at 825 ("The ADA, as [the Supreme Court] recognized in *Morales*, 504 U.S. at 378, 112 S.Ct. at 2034, was designed to promote 'maximum reliance on competitive market forces.' [49 U.S.C. § 40101(a)(4)].").

If a contract has terms dictated by the Federal Government, but the Federal Government does not provide any way to enforce that contract, then (1) the Federal contract requirements are pointless, (2) the savings clause in 49 U.S.C. § 40120(c) becomes meaningless, and (3) far from achieving its purpose, the preemption clause in 49 U.S.C. § 41713(b)(1) ends up defeating the very "presuppos[ition of] the vitality of contracts governing air carrier transportation" that the *Wolens* court found compelling. *Wolens*, 513 U.S. at 230, 115 S.Ct. at 825.

### 4. Logic of *Wolens* case extends to State court actions for violation of federally mandated contract terms.

A rule permitting enforcement of airline-passenger contracts in State court, where the terms being enforced are imposed under Federal law, is entirely consistent with the Supreme Court's decisions in the *Wolens* and *Morales* cases. *Wolens*, 513 U.S. 219, 115 S.Ct. 817; *Morales*, 504 U.S. 374, 112 S.Ct. 2031. On the other hand, the rule the Domestic Defendants urge would be

23

incongruous—permitting breach of contract suits in cases where the airline 'voluntarily' entered into some contract term or other, while denying a suit where the alleged breach is of Federal statutorily **_mandated_** terms.

Indeed, the reasoning used in _Wolens_ dictates that State contract actions are logically as valid for claims based on violation of federally mandated contract terms as they are for claims based on violation of terms 'voluntarily undertaken' by the airlines themselves. In **_both_** cases, the States have not imposed any additional burdens or requirements on the airline industry, and as such, neither of these contract claims is preempted. And the defendants have not cited any authority in this Circuit to the contrary.

## 5.    Right of action.

Even if the Court agreed with the defendants' argument that no private right of action exists for nonpreempted contract claims based on Federal contract requirements (_see_ Mem. of Dom. Defs. at 17–18), an implied right of action exists.

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on Federal law?

_Cort v. Ash_, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088 (1975) (citations and internal quotation marks omitted); _see also Daily Income Fund, Inc. v. Fox_, 464 U.S. 523, 535–536, 104 S.Ct. 831, 838 (1984).

With respect to the first factor, the plaintiffs are "of the class for whose especial benefit the statute was enacted," _id._, since they are air passengers seeking to claim the benefit of the regulations enacted by the Secretary of Transportation. Specifically, they seek to bar air carriers

from claiming or enforcing the benefit of invalid contract provisions against passengers, through rescission of the invalid provisions.

With respect to the second factor, there is at least implicit (if not explicit) "legislative intent … to create such a remedy," *id.*, since the statute provides that contract terms may be incorporated by reference "[t]o the extent the Secretary of Transportation prescribes by regulation," 49 U.S.C. § 41707, and the regulation prescribed by the Secretary provides that, "[i]n addition to other remedies at law, an air carrier may not claim the benefit as against the passenger of, and the passenger shall not be bound by, any contract term incorporated by reference if notice of the term has not been provided to that passenger in accordance with this part." 14 C.F.R. § 253.1(a). Without a private right of action, these provisions would be meaningless.

With respect to the third factor, it is not "[in]consistent with the underlying purposes of the legislative scheme to imply such a remedy," *Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088, since the lack of a private right of action would render the 'legislative scheme' of regulation of incorporated contract terms for airline travel ineffectual.

With respect to the fourth factor, because the Federal Government has preempted airline regulation from the control of the States, such a cause of action is not "one traditionally relegated to State law" and it would not "be inappropriate to infer a cause of action based solely on Federal law." *Id.*

Based on the criteria set out in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, an implied cause of action would be appropriate here.

**6.  Discovery required to determine nature, terms, and compliance with respect to the contracts between the plaintiffs and the airlines.**

The defendants beg the question of whether the contracts between the plaintiffs and the

airlines required repayment by the airline of fees paid by the passenger to the airline but not paid by the airline to the levying authority. Indeed, how can the Court possibly rule on a contract when the contract is not yet part of the record? At this early stage of litigation, the Court cannot hold that the contract terms provide no basis for the plaintiffs' claims, where the contract has yet to be produced in discovery or examined by the parties or the Court. *Cf. Chukwu v. Board of Directors British Airways*, 889 F.Supp. 12, 14 (D.Mass. 1995), *aff'd mem.*, *Azubuko v. Board of Directors, British Airways*, 101 F.3d 106 (1st Cir. 1996), *cert. denied*, 520 U.S. 1188 , 117 S.Ct. 1473, 137 L.Ed.2d 685 (1997) (in light of *Wolens,* whether breach of contract claim was permitted under ADA cannot be decided without evidence as to the terms of passenger's contract with airline); *see also Chukwu Azubuko v. Board of Directors, British Airways*, 915 F.Supp. 454, 455 (D.Mass. 1996), *aff'd*, 101 F.3d 106 (1st Cir.).

The Federal requirements discussed above again demonstrate the need for discovery and the prematurity of the defendants' motions to dismiss, since the plaintiffs and the Court lack essential information and discovery to aid in determining the extent of the plaintiffs' claims, such as the following:

(1) What are each defendant's accounting procedures with respect to PFCs and user fees and are those procedures sufficient to meet the Federal requirements?

(2) What are each defendant's reporting statistics with respect to the collection, refund, and remittance of PFCs and other user fees?

(3) What are the opinions of each defendant's outside accountants about the fairness and reasonableness of the defendant's policies and procedures?

(4) What is each defendant's policy with respect to refund of passenger user fees not due to the fee-levying authority when the passenger fails to use (or otherwise forfeits) a

nonrefundable air ticket?

These questions, among many others, demonstrate that material questions of fact exist—not just questions of law—and justice requires at least ***some*** reasonable opportunity to conduct discovery to determine facts relevant to the plaintiffs' claims that are within the control of the defendants. Plaintiffs have set forth a reasonable basis and an outline of what they hope to prove. Under the lenient standard required for motions to dismiss, that is enough to avoid premature dismissal and permit discovery to commence.

**C.    The plaintiffs have stated claims for relief.**

This Court or the State courts of Massachusetts may grant plaintiffs relief for their declaratory judgment, breach of contract, good faith and fair dealing, unjust enrichment, civil conspiracy, and fiduciary duty claims. These claims, just as much as the plaintiffs' contract claim, seek only remedies. They do not impose any additional burdens or requirements on the airline industry, and as such are not expressly preempted.

Defendants cannot meet their burden to demonstrate that plaintiff's claims are clearly barred as a matter of law. Rather, they urge this Court to ignore the purposes of notice pleading and to require that the plaintiffs set out their entire case in detail before some of the defendants have even filed an answer and before any discovery of any kind (jurisdictional or otherwise) has been conducted. Plaintiffs, by contrast, ask that this Court act in accordance with the letter and the spirit of the Federal Rules by applying "the more deferential Rule 12(b)(6) standard of review," *Coyne v. City of Somerville*, 972 F.2d at 445, and giving the Amended Complaint "the indulgent reading it deserves." *Id.* at 443.

**Contract Claims.** The Domestic Defendants' arguments (*see* Mem. of Dom. Defs. at 16–20), serve as an illustrative, though by no means exclusive, example of defendants' wrong-headedness. There, the Domestic Defendants contend that plaintiffs' claims for rescission, breach

of contract, and breach of the duty of good faith and fair dealing fail to state a claim, in addition to being preempted under *Wolens*, because the Amended Complaint does not specifically allege the detailed provisions of the contracts the plaintiffs allege the defendants breached with respect to refunds of unearned fees on nonrefundable tickets.

This argument puts the cart before the horse. Notice pleading does not require detailed allegations. *See* Fed. R. Civ. P. 8(a). Especially at this early stage in the case, it is simply unreasonable to expect plaintiffs to know every term of their contracts with the airlines. This is particularly true in the case of air travel contracts, which very often incorporate contract terms by reference.[21] Further, whether or not defendants gave plaintiffs adequate notice of the terms of the contracts is one of the issues the plaintiffs ask the Court to address. *See* Am. Compl. ¶ 72(h). If, as the plaintiffs contend, the defendants failed to give sufficient notice of the incorporation of contract terms as required by 14 C.F.R. § 253.5 (general notice of incorporated terms) or § 253.7 (direct notice for certain terms, including terms "restricting refunds" and "imposing monetary penalties"), they would be in violation of those federally imposed contract requirements.[22] Here, the effect of retaining fees to which the airline industry was not entitled was to impose a 'monetary penalty,' in the amount of the unrefunded charges and fees that were not due the Government when the plaintiffs' nonrefundable tickets went unused or were forfeited. *See* Am. Compl. ¶¶ 4(c), 72(h), 80, 81.

—*Nonrefundability.* With respect to the purchase of nonrefundable airfare, the plaintiffs distinguish—and attempted to do so in the Amended Complaint—between the airfare (the price

---

[21] *See* 49 U.S.C. § 41707; 14 C.F.R. part 253 (notice of terms of contract of carriage); discussion above at pg. 15 *et seq.*

[22] Strangely, the Domestic Defendants claim that "the Amended Complaint does not allege any violation of section 253.7" (*see* Mem. of Dom. Defs. at 17), after having already quoted that allegation. *See id.* at 12 (quoting Am. Compl. ¶ 78 ("the defendant airlines violated 14 C.F.R. part 253")); see also Am. Compl. ¶¶ 63, 79 (specifically citing § 253.7), and Prayer for Relief No. 1.

and conditions of which are set by the airlines themselves) and the various domestic and foreign taxes, charges, and fees[23] associated with the airfare (which are all set by governmental levying authorities and which do not depend on the price of the airfare, but are a set cost based on use of services provided by the Government or other nonairline entities, such as airports or airport authorities).[24]

Even though a ticket might have stated that it was "nonrefundable" or had a $75 or $100 (or higher) "change fee," which amounts to a 'penalty,' the plaintiffs were not informed of the **additional** penalty that would be imposed on them if they failed to use their nonrefundable tickets. *Id.* The detailed discussion above, at pg. 10 *et seq.*, demonstrates that the breach of contract claim is fact-intensive and requires discovery before it is appropriate for the Court to consider dismissal.

Moreover, a reasonable consumer would not (or might not) think that such 'nonrefundability' provisions included unused or unearned user fees held in trust for the fee-levying authority (at least not without "conspicuous written notice," 14 C.F.R. § 253.7 (*cf.* § 253.5), that the governmentally imposed user fees were **also** not refundable), especially when those fees are separately listed on tickets and travel documents and are **not** part of the (base) airfare (which constitutes the price, or rate, for all the 'services' provided by the airline itself).

Moreover, the Air Industry's position would result in a **double** windfall for the industry, because the industry would not only receive payment for 'services' not provided by air carriers,

---

[23] Not including any tax not at issue in this case, including the U.S. flight segment tax imposed by 26 U.S.C. § 4261(b) , which is due to the Government even if nonrefundable airfare is not used.

[24] It is possible that some of the many different types of foreign taxes, charges, or fees are also based on the price of the airfare rather than a set price per service. It is difficult to be more specific about the foreign taxes, charges, or fees without discovery as to the precise taxes, charges, or fees associated with a particular airfare (or ticket for airfare).

but would also receive (or retain) payment (that **had** been held in trust under Federal law) for 'services' that were **never** the responsible of any air carrier to carry out in the first place—payment an air carrier would not be entitled to keep for **any** ticket that was **used** (whether refundable **or** nonrefundable).

The defendants should not be allowed to escape their duty under Federal law (which provides for certain minimum requirements on all air carriage contracts minimum requirements) just because in committing their violation—indeed, the very nature of the violation—was to leave out the required terms that the plaintiffs claim were breached. Such a result would be perversion of the intent of the Congress in seeking to regulate the airline industry, and would effectively put such violations beyond the scope of either Federal or State regulation.

**Civil Conspiracy.** Plaintiffs' civil conspiracy claims likewise rest to a great extent on the facts that will be uncovered during the discovery process. This is particularly true with respect to defendants ATA and ARC.

**—ATA.** ATA describes itself, at least in part, as "serv[ng] its member airlines … by developing and coordinating industry actions…." and "serv[ing] as a focal point for industry efforts to standardize practices … of the air transport system."[25] These statements may describe the innocent role of ATA as an industry association, or they may describe a more sinister purpose with respect to ATA's role in guiding or setting industry policy, especially if the "industry actions" it coordinates or the "standardize[d] practices" it seeks to establish turn out to be unlawful, as alleged in the Amended Complaint. In addition, the nature and relationships between ATA and its member airlines are unknown, as is the amount of control ATA asserts

---

[25] *See* Am. Compl. ¶ 99; *see also* ATA, *About Us: What is the ATA?* (available online at <http://www.airlines.org/about/d.aspx?nid=978>).

over industry policy and the role of individual member airlines in determining that policy.

—*ARC.* ARC similarly coordinates and standardizes policy, procedures, systems, and other aspects of the Airline Industry.[26]

ARC
Overview

The Airlines Reporting Corporation (ARC) has *as its stockholders the principal scheduled air carriers of the United States. Many additional carriers, both domestic and foreign, participate in the ARC program* as explained below.

ARC provides four primary core services to the travel industry: (1) an accreditation program for … travel agents in the United States for the sale of worldwide air transportation; (2) uniform, standard tickets and other traffic documents necessary for the issuance of tickets…; (3) a computerized system through which ARC-accredited entities report sales *and remit the proceeds* thereof; and (4) *a repository of transactional information* and data.

The *Industry Agents' Handbook* provides, among other things, the *basic ticketing and reporting requirements for ARC-accredited locations to report and settle ticketing transactions with the carrier participants* by means of the ARC Agents' Standard Ticket and Area Settlement Plan ("Plan" or "ASP").

The essential elements of the Plan are as follows:

- ….

- Interactive Agent Reporting ("IAR") Plus allows ARC-accredited agents *to report sales electronically to ARC* with a Computer Reservations System ("CRS"), Global Distribution System ("GDS") or via Internet access …

- A consolidated sales report and *single-sum remittance for all carriers* to a designated area bank

- *An area bank*, acting as a clearing house, *to determine the amount due each carrier* and transmit such amounts to the carrier

- Computer generated sales summaries to each agent and carrier for their respective sales activity

ARC also provides services to its carrier customers whereby (1) *settlement of amounts due the carrier* by an agent can be made as agreed between the parties by means of variable remittance options and (2) carrier documents provided to an agent will be processed or processed and settled *as agreed between ARC and the carrier*….

*ARC Industry Agents' Handbook* (2000 ed.) § 1.0 (emphasis added). Indeed, ARC's influence on airline and travel agent procedures is so pervasive that the *ARC Industry Agents' Handbook* is specifically referred to in one relevant Federal regulation.[27] (Such reference should not be

---

[26] *See* Am. Compl. ¶ 100; *see also, e.g., ARC Industry Agents' Handbook* (2004 ed.), available online at ARC's Web site, http://www.arccorp.com.

[27] *See* 8 C.F.R. § 286.4 relating to immigration fee collection responsibility ("Tickets and documents for transportation shall be marked … to indicate that the required fee has been collected. Such markings shall be in
<small>(FOOTNOTE CONT'D)</small>

construed as approval of unrelated parts of the *Handbook*, especially if they are inconsistent with the legal requirements of any of the many applicable Federal regulations.[28])

As the excerpts above indicate, the relationship of ARC to its airline "stockholders" and its other airline 'participants' is not obvious without appropriate discovery. Moreover, whether the agreements "between ARC and the carrier" comply with collection, holding, remittance, and refund requirements of the laws authorizing the various taxes, fees, and charges collected by ARC-accredited or ARC-related entities (especially airlines) simply cannot be known without discovery into the terms of those agreements themselves.

**Fiduciary Duty.** Finally, passengers ***must*** pay user fees, and ostensibly they make payment of those fees to the airline industry to hold in trust pending payment to the agencies levying the fees. *See supra* pg. 15 *et seq.* and footnote 5 (setting out several requirements that fee collectors hold the collected funds in trust). These user fees are paid ***in addition to the airfare*** charged by the airlines (for services not provided by the airlines) and are separately enumerated on receipts passengers receive. Yet airline industry policy appears to be uniform in the failure or refusal to refund those fees to passengers who have purchased and not used (or have forfeited) nonrefundable tickets.

The plaintiffs' basic theory is as follows: (1) Plaintiffs prepaid taxes, charges, and fees due to levying authorities if they used their tickets, in addition to ('base') airfare. (2) The laws requiring that the defendant airlines collect the taxes, charges, and fees associated with airfare sold by the airlines also required that they hold the funds in trust for the benefit of the levying

---

accordance with the procedures set forth in the ARC Industry Agents Handbook … or compatible procedures set forth in the operations manual of individual collectors.").

[28] *See, e.g., ARC Industry Agents' Handbook* (2004 ed.) § 7.8 at pg. 2 ("Are PFCs Refundable? [¶] The general rule is that anytime a ticket is refunded, so are the PFCs. When the ticket is not refunded, neither are the PFCs.") The plaintiffs argue that this interpretation is, without proper and conspicuous notice of the nonrefundability of the PFC (separate from the nonrefundability of the airfare on which the fee is based), improper and unlawful.

authority. (3) When a passenger fails to use a ticket, whether refundable or nonrefundable, the funds never become due to the levying authority. When this happens, a passenger's prepayment (to the airlines) of taxes, charges, and fees becomes an overpayment. (4) The following questions arise: What happens to the air carrier's duty to hold the funds in trust? If the funds are no longer due to the levying authority, does that obligation simply disappear, with the air carrier (that collected the funds) able to do what it wants with the funds? Or does that duty to hold the funds in trust continue, with only the beneficiary of the duty changed? (5) The plaintiffs assert that the duty to hold the funds in trust continues until the air carrier that collected the funds has disposed of the funds in a manner consistent with the law, with the applicable contract of carriage, and with public policy. Since the funds are no longer due to the levying authority when a passenger fails to use a ticket for air transportation, unless a contract of carriage specifically permits the retention of the collected funds—in addition to the retention of the airfare paid, for a nonrefundable ticket [29]—the air carrier owes the passenger a refund for the overpayment of the 'unearned' or 'unused' user fees.

The plaintiffs assert that this practice is unlawful, and facts tending to show that the airline industry has acted in concert to prevent such passengers from receiving refunds support the plaintiffs' civil conspiracy and breach of fiduciary duty claims.

**Summary.** In short, the plaintiffs have met their initial pleading burden by setting out their claims, and the supporting facts, to the best of their knowledge, information, and belief. Before the plaintiffs must respond to the more searching inquiry the defendants seek, they are entitled to the opportunity to uncover additional facts to support their claims through the discovery process.

---

[29] As discussed above (*see* page 15 *et seq.*), the user fee-retention and nonrefundability provisions in such a contract of carriage would have to comply with the 'conspicuous notice' requirements of 14 C.F.R. part 253.

**D.    Jurisdiction in the Federal courts.**

Jurisdiction in the Federal courts is proper under 28 U.S.C. § 1331 (Federal question), § 1332 (diversity of citizenship and amount in controversy), § 1340 (cases involving customs duties), and § 1367 (supplemental jurisdiction).

**1.    Jurisdiction under 28 U.S.C. § 1331 (Federal question).**

Federal question jurisdiction is appropriate in this case under 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The plaintiffs' claims arise under the laws of the United States, since the Passenger Facility Charges ("PFCs") and other charges or fees they seek to recover are authorized or imposed under Federal law. *See, e.g.,* Am. Compl. ¶¶ 5, 12, 56–57, 77–79. These charges and fees are discussed below.

**(a)    Federal law authorizes Passenger Facility Charges (PFCs).**

Plaintiffs seek recovery of PFCs paid to the airline industry but neither due nor paid to the levying authority. *See, e.g., id.* at ¶¶ 1, 5(b), 6–12, 58–62. The Passenger Facility Charge Program authorizes the collection of PFC fees up to $4.50 for every enplaned passenger at commercial airports controlled by public agencies. The fees are then used by the airports to fund projects approved by the Federal Aviation Administration ("F.A.A.") that enhance safety, security, or capacity, reduce noise, or increase air carrier competition. The Aviation Safety and Capacity Expansion Act of 1990,[30] reenacted as positive law at 49 U.S.C. § 40117, created the PFC program. Under the PFC statute, the F.A.A. may authorize a public agency to impose a PFC of $1, $2, $3, $4, or $4.50 for each enplaned passenger at those commercial service airports that the public agency controls. *Id.* The public agency can then use this PFC revenue to finance

---

[30] Pub. L. 101–508, title IX, subtitle B (§ 9101 *et seq.*), 104 Stat. 1388–353 (1990).

F.A.A.-approved eligible airport-related projects. *Id.* The F.A.A.'s regulations that govern the PFC program are located in 14 C.F.R. part 158 and became effective in 1991. To impose a PFC, use PFC revenue, or amend an approved PFC, a public agency operating an airport must apply for F.A.A. approval by following the application process set forth in 14 C.F.R. part 158.

> **(b)    Federal law imposes other passenger user fees.**

Plaintiffs seek recovery of passenger user fees paid to the airline industry but neither due nor paid to the levying authority. *See* Am. Compl. ¶¶ 1, 5, 6–12, 58–62.[31] Certain fees are imposed on most passengers arriving in the United States on international flights. These include a U.S. Customs fee, an immigration fee, and an agricultural inspection fee.[32] These are not taxes, such as the excise tax imposed on air transportation of persons under § 4261 of the Internal Revenue Code of 1986 (26 U.S.C. § 4261). Rather, these are separately imposed fees or charges for services related to the safe and lawful arrival and entry of air passengers (U.S. citizens and noncitizens alike) into the United States. In addition, beginning in February 2002, a U.S. security service fee (also called the "September 11th Security Fee") is imposed on most passengers boarding a domestic or international flight originating at an airport in the United States.[33]

## 2. Jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship and amount in controversy).

The plaintiffs also have established Federal court diversity jurisdiction based on the citizenship of the parties and the amount in controversy. Section 1332(a) of title 28, United States Code, provides that "the district courts shall have original jurisdiction of all civil actions

---

[31] These are described in the Complaint as "foreign landing tax[es] or ***user fees***."

[32] *See gen'lly*, 19 C.F.R. part 24 (especially § 24.22(g)(1)) (U.S. Customs user fee), 8 C.F.R. part 286 (immigration user fee), and 7 C.F.R. § 354(f) (agricultural inspection user fee).

[33] *See gen'lly*, 49 C.F.R. part 1510 (U.S. security service fee). To the extent that U.S. security "service fees" are not clearly encompassed within the Complaint's references to "user fees" (*see* ¶¶ 1(c), 36(c), 40(b), and 44(c)), the claim will be stated more clearly in the plaintiffs' Amended Complaint.

where the matter in controversy exceeds the sum or value of $75,000 … and is between … citizens of different States and in which citizens or subjects of a foreign state are additional parties."

**(a)    Citizenship of the parties.**

The plaintiffs are citizens of Massachusetts, California, and South Carolina.[34] The Domestic Defendants are citizens of Alaska, Delaware, Georgia, Illinois, Texas, Washington State, and the District of Columbia.[35] The foreign defendants are citizens of Germany, Great Britain, Greece, Ireland, Italy, and the People's Republic of China.[36] Since none of the plaintiffs is a citizen of the same State as any of the Domestic Defendants, there is complete diversity here. Jurisdiction is therefore proper under 28 U.S.C. § 1332(a)(3).

**(b)    Amount in controversy.**

Although it is impossible to say with complete certainty, the value of the claims asserted on behalf of the plaintiff class are substantial and will almost certainly exceed $75,000. For example, according to the F.A.A.'s Office of Airport Planning and Programming, there were 11,087,799 enplanements (passenger boardings) at Boston's Logan International Airport in collection year (CY) 2003.[37] That means that the airline industry collected $33,263,397 in PFCs

---

[34] Plaintiffs Micchiche, Pawson, Marshall-Smith, Kalaitzidis, Karagiorgos, and Tsouvrakas are residents of Massachusetts. Am. Compl. ¶¶ 14–16, 19–21. Plaintiffs Buck and Golumbuk are residents of California. *Id.* at ¶¶ 13, 18. Plaintiff Mills is a resident of South Carolina. *Id.* at ¶ 17.

[35] Defendant Alaska Airlines is a citizen of Alaska and Washington State. Am. Compl. ¶ 22. American Airlines is a citizen of Delaware and Texas. *Id.* at ¶ 23. Continental Airlines is a citizen of Texas. *Id.* at ¶ 24. Delta Air Lines is a citizen of Delaware and Georgia. *Id.* at ¶ 25. Northwest Airlines is a citizen of Minnesota. *Id.* at ¶ 26. Southwest Airlines is a citizen of Texas. *Id.* at ¶ 27. Airlines Reporting Corp. is a citizen of Delaware and Virginia. *Id.* at ¶ 44. Air Transport Association of America is a citizen of the District of Columbia. *Id.* at ¶ 37.

[36] Defendant Aer Lingus is a citizen of Ireland. Am. Compl. ¶ 29. Alitalia is a citizen of Italy. *Id.* at ¶ 30. British Airways is a citizen of Great Britain. *Id.* at ¶ 31. China Eastern Airlines and China Southern Airlines are citizens of the People's Republic of China. *Id.* at ¶¶ 32–33. Lufthansa is a citizen of Germany. *Id.* at ¶ 34. Olympic Airways is a citizen of Greece. *Id.* at ¶ 35.

[37] *See* F.A.A., "CY 2003 Commercial Service Airports" pg. 1 (available online at <http://www.faa.gov/arp/planning/stats/2003/CY03CommSvAprts.pdf>).

in that collection year at Logan alone.[38] Of that amount, the industry legitimately kept $2,661,071.76 for itself (at a rate of $0.08 per PFC remitted[39]), as well as any interest accrued between collection from passengers and payment to the Government, as 'collection compensation.' 14 C.F.R. § 158.53. Nationally, over $2 billion in PFCs were collected by the airline industry in collection year 2003, resulting in approximately $160 million of such 'compensation' to the airline industry.[40]

According to an industry consultant, $50 million is too low an estimate for the amount of fees kept by airlines after forfeit of passenger air tickets.[41] While these statistics do not themselves establish the value of the claims asserted on behalf of the plaintiff class,[42] the figures provide an idea of the magnitude of the fees collected by the airline industry and thus the potential value of the claims here, which will almost certainly exceed the required $75,000.

### 3.   Jurisdiction under 28 U.S.C. § 1340 (cases involving customs duties).

Jurisdiction is also proper under 28 U.S.C. § 1340, which provides that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for … revenue from imports or tonnage except matters within the jurisdiction of the Court of

---

[38] *See* F.A.A., "PFC Approved Locations" (as of Jan. 31, 2005) pg. 7 (available online at <http://www.faa.gov/arp/financial/pfc/reports/Airports105.pdf>), indicating approval of a $3.00 PFC for Boston's Logan International Airport.

[39] As of May 1, 2004, the current rate is $0.11 per PFC "collected." 14 C.F.R. § 158.53(a). *See* footnote 15 for discussion of "collected" vs. "remitted."

[40] *See* F.A.A., "PFC Reports: Key Passenger Facility Charge Statistics" (as of Aug. 31, 2003) (available online at <http://www.faa.gov/arp/financial/pfc/reports/stats.cfm>).

[41] *See* J.M. Lawrence, "$50M Plane Ticket to Ride: Lawsuit Exposes Airline Windfall," *Boston Herald* (Nov. 28, 2004) (available online (site registration, fee) at <http://news.bostonherald.com/localRegional/view.bg?articleid=56150>).

[42] With respect to the F.A.A. statistics, this is especially true, since the claims are for amounts collected from passengers that (1) were not due from them (since they never 'enplaned,' or boarded), (2) were not repaid to them by the airlines, and (3) were not remitted by the airlines to the public agency levying the PFC, and were so probably not included in the figures compiled by the F.A.A.

International Trade." The U.S. Customs fee imposed under 19 C.F.R. § 24.22(g),[43] and sought by the plaintiffs to be refunded, is treated for jurisdictional purposes as a Customs duty.[44] Thus, the U.S. Customs fees fall within the meaning of 28 U.S.C. § 1340 and this Court properly has original jurisdiction of the plaintiffs' claims with respect to those duties or fees.

**4.  Jurisdiction of State law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).**

Having established Federal court jurisdiction under one or more of the theories discussed above, any related State law claims are permitted under 28 U.S.C. § 1367, which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action … that they form part of the same case or controversy."

**5.  Jurisdiction of claims against Federal Aviation Administration (United States as a defendant).**

Finally, though not directly applicable to these defendants, claims against the Federal Aviation Administration as a defendant are only appropriately brought in a United States District Court. *See* 28 U.S.C. § 1346 (United States as defendant) and chapter 7 of title 5, United States Code (28 U.S.C. §§ 701 *et seq.*) (judicial review).

**E.  Challenge to personal jurisdiction under Rule 12(b)(2), by ATA.**

Defendant ATA has moved to dismiss the claims against them on the basis of a lack of personal jurisdiction under Rule 12(b)(2).

---

[43] The authority (or "Act of Congress" in the terms of 28 U.S.C. § 1340) for issuance of the regulations contained in 19 C.F.R. part 24 comes from 5 U.S.C. § 301; 19 U.S.C. §§ 58a–58c, 66, 1202 (General Note 23, Harmonized Tariff Schedule of the United States), 1505, 1520, 1624; 26 U.S.C. §§ 4461, 4462; 31 U.S.C. 9701; Pub. L. 107–296, 116 Stat. 2135 (6 U.S.C. § 1 *et seq.*).

[44] "For purposes of determining the jurisdiction of any court or agency of the United States, any fee provided for under this section shall be treated as if such fee is a Customs duty." 19 C.F.R. § 24.22(j)(2).

1.   **Standard of review for personal jurisdiction.**

   (a)   ***Prima facie* standard.**

Plaintiffs have the burden of demonstrating that this Court has personal jurisdiction over the defendants. *Lizotte v. Canadian John Manville Co.*, 387 F.2d 607, 608 (1st Cir. 1967). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing,… the '*prima facie*' standard governs." *United States v. Swiss American Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001). "The *prima facie* showing must be based upon evidence of specific facts set forth in the record." *Id.* at 619 (internal quotation marks omitted).

"[A]s a general matter it would be unfair to make [the plaintiffs] proffer evidence of knowing participation in a … scheme without giving them merits discovery against [the defendants]." *In re Lernout & Hauspie Securities Litigation*, 2004 WL 1490435 (D.Mass. 2004) at *1. Unlike in the *Lernout* case, there has been absolutely no jurisdictional discovery or merits discovery in this case. *See id.* at *1 ("there has been extensive merits and jurisdictional discovery").

"[I]n evaluating whether the *prima facie* standard has been satisfied, the district court is not acting as a factfinder; rather it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law." *Swiss American Bank*, 274 F.3d at 619 (internal citations and quotations omitted); *see also Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992).

   (b)   **Opportunity for jurisdictional discovery required.**

"In a situation where the parties dispute the predicate facts allegedly giving rise to the court's jurisdiction, the district court will often need to engage in some preliminary fact-finding. In that situation, the district court 'enjoys broad authority to order discovery, consider extrinsic

evidence, and hold evidentiary hearings in order to determine its own jurisdiction.'" *Skwira v. U.S.*, 344 F.3d 64, 71–72 (1st Cir. 2003) (quoting *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 (1st Cir.2001)).

Generally, the amenability of a foreign corporation to suit in a Federal court in a diversity action is determined in accordance with the law of the State where the court sits.[45] *Walsh v. National Seating Co., Inc.*, 411 F.Supp. 564, 568 (D.Mass. 1976) (citing *Pulson v. American Rolling Mill Co.*, 170 F.2d 193 (1st Cir. 1948)).

In this case, the plaintiffs have brought claims against the defendants predominantly based on Federal transportation, security, immigration, customs, and agriculture laws. *Cf. In re Lernout & Hauspie Securities Litigation*, 2004 WL 1490435 at *2 (claims based on Federal securities laws). "Thus, the jurisdictional inquiry focuses on whether [the defendants] had sufficient contacts with the United States as a whole, rather than with just Massachusetts, such that this Court can exercise jurisdiction over [the defendants]." *Id.* at *3.

"Under this so-called nationwide contacts test, the question is 'whether the party has sufficient contacts with the United States, not any particular State.'" *Id.* (quoting *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993)).[46] *See also United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1085 (1st Cir., 1992) (under the nationwide contacts test, "the Constitution requires only that the defendant have the requisite 'minimum contacts' with the United States, rather than with the particular forum State").

---

[45] Although the plaintiffs have established diversity in this case (as discussed *supra* at pg. 35 *et seq.*), they do not rely on diversity as their sole basis for Federal court jurisdiction.

[46] *See also Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985), *rev'd on other grounds*, *Holmes v. Securities Investors Protection Corp.*, 112 S.Ct. 1311 (1992)).

That is not to say that jurisdiction would not be proper if the defendants had sufficient contacts with Massachusetts such that the Massachusetts Long-Arm statute would be satisfied. However, in this case, because the claims are brought pursuant to the Federal air transportation laws, jurisdiction is still proper if the defendants had sufficient contacts with the United States as a whole.

"Thus, all of [a defendant's] contacts with the United States as a whole must be taken into consideration in determining whether this Court may exercise *in personam* jurisdiction over [the defendants]." *In re Lernout & Hauspie Securities Litigation*, 2004 WL 1490435 at * 3.

### (c)    Standards for general and specific jurisdiction.

Jurisdiction over the person may be either specific or general. General jurisdiction is acquired where there are "continuous and systematic" contacts with the forum State. *LTX Corp. v. Daewoo Corp.,* 979 F.Supp. 51, 58 (D. Mass 1997). To obtain specific jurisdiction under the Massachusetts long-arm statute, Mass.Gen.L. ch. 223A, § 3, the cause of action must "arise from" the conduct upon which long-arm jurisdiction is sought. *See Carlson Corp. v. University of Vermont,* 380 Mass. 102, 106, 402 N.E.2d 483, 486 (1988); *Heins v. Wilhelm Loh Wetzlar Optical Machinery GMBH & Co. KG,* 26 Mass. App. Ct. 14, 22, 522 N.E.2d 989, 994 (1988). The Court may exercise specific jurisdiction over a defendant in a suit arising out of or related to the defendant's contact with the forum. *Id.* But a foreign corporation will not be subject to personal jurisdiction until it has purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 (1958).

**Jurisdiction over Air Transport Association of America (ATA).**

Any demonstration of personal jurisdiction requires a fact-based analysis. In this case, the facts upon which such an analysis could be made with respect to defendant ATA are in large part

within the control of the defendant. The plaintiffs' burden of demonstrating the Court's personal jurisdiction over the defendant ATA cannot be met without appropriate jurisdictional discovery. Thus, in order to be able to demonstrate whether specific or general jurisdiction is appropriate over ATA, the plaintiffs will require some reasonable opportunity for discovery.

Although ATA admittedly does not itself sell or issue tickets for air travel or collect taxes, charges, or fees associated with tickets for air travel (*see* Affid. of Berg, submitted with ATA's Motion to Dismiss, at ¶ 7), it nevertheless appears to play an important role in setting the policies of its member airlines with respect to the such activities. Moreover, the airline "members" of ATA bear an unknown relation to the association. Indeed, some amount of jurisdictional discovery is necessary to determine the relationship between ATA and its members, including (1) the extent of control over (or by) ATA by (or over) the member airlines, and (2) the extent to which a member airline is required (by membership contract, association by-laws, or otherwise) to policies set by ATA.[47]

For example, ATA may have a policy with respect to the refundability of domestic and foreign taxes, charges, and fees not due to levying authorities paid in advance by passengers in addition to the ticket price (*i.e.*, the price set by the airline for the transportation itself). If each of ATA's member airlines adheres to that policy, or changed a previous policy to match that set by ATA, that would be evidence of the collusion of ATA with its member airlines.

The plaintiffs allege that the Airline Industry's policies are unlawful with respect to refunds of unearned domestic and foreign taxes, charges, and fees collected from Air Passengers. If that

---

[47] A similar analysis would be appropriate with respect to ARC, which sets uniform requirements and procedures for ARC-accredited travel entities, and which is made up, in part, of 'stockholder' airlines. ARC is an airline-owned company offering travel products and services, ticket distribution, and settlement. *See* Am. Compl. ¶ 45. These processes, procedures, and methods (including specialized computer software) are a fundamental basis for completing transactions for the Air Industry. Indeed, ARC describes itself as "the information hub of the $85 billion Travel industry." *Id.* at ¶ 47.

is the case, and ATA has set the policy and its member airlines have adhered to it, that is evidence of such a conspiracy to violate Federal transportation, security, immigration, customs, and agriculture laws. That evidence is especially compelling if the membership agreements between ATA and its member airlines actually **require** some level of adherence to policies set by or through ATA.

While no member airline of ATA is incorporated in Massachusetts (*see* Affid. of Berg, submitted with ATA's Motion to Dismiss, at ¶ 6), several of the member airlines are registered to do business in Massachusetts.[48] These airlines are members of ATA (and ATA is an association that would not exist apart from the existence of its members). *See* Affid. of Berg ¶ 5. As airlines engaged in interstate and foreign air transportation, these airlines carry on substantial business activities in Massachusetts. In carrying out their air transportation businesses in Massachusetts, these airlines (presumably) do so consistent with the air industry policies set by (or through) ATA. For these reasons, these airlines' contacts with Massachusetts should be imputed to ATA.

### (a)    Factors for analysis of personal jurisdiction.

An illustrative case, specifically with respect to trade associations, is *City of Boston v. Smith & Wesson Corp.*, No. 99–02590, 2000 WL 34018326, *1 (Mass. Super. Nov. 21, 2000), which sets out a number of factual factors that may affect the analysis on which personal jurisdiction depends. In that case, the City of Boston essentially claimed that the trade association defendants were "part of the propaganda machine of the firearms industry" to effectuate the industry's goals. *Id.* at *11.

---

[48] Defendants Alaska Airlines, American Airlines, Continental Airlines, Delta Air Lines, and Northwest Airlines are all registered as foreign corporations doing business in Massachusetts. (Information available via Massachusetts Foreign Corporation Registration Record search, online at <http://corp.sec.state.ma.us/corp/corpsearchinput.asp>.)

In its *Memorandum and Order on the Defendant Trade Associations' Motion to Dismiss for Lack of Personal Jurisdiction*, the Massachusetts Superior Court, Suffolk County, held that a group of gun industry trade associations were subject to specific jurisdiction in Massachusetts courts because: "Each trade association, among many other contacts, maintained an Internet Web site, travelled to this forum to conduct business, participated in this forum's government, and sent numerous publications to this forum." *Id.* at *9. Moreover, "the Defendant Trade Associations undertook purposeful activity in the forum—through mailings, paper and electronic publications, advertising, membership sales, solicitations, lobbying, and holding events in the forum—such that the Trade Associations are not unsuspecting defendants who would be surprised by being hailed into court here." *Id.* at *16.

Factors relating to a defendant doing business within the forum State include (1) dollar volume of defendant's sales within forum, (2) number of employees or agents within forum, (3) number of customers within forum, (4) parent / subsidiary / joint venture / other relationship with enterprises in forum. *See gen'lly* 59 Am. Jur. Proof of Facts 3d 1.

Factors relating to a defendant's property ownership within the forum State include (1) real estate, (2) bank accounts, (3) investments in businesses, (4) leases of equipment or production facilities. *Id.*

Factors relating to a defendant's advertising or solicitation of forum residents include (1) direct mail / catalogs, (2) television, (3) radio, (4) newspapers and magazines, (5) the Internet (see below). *Id.*

Factors related to a defendant's Internet presence might include (1) the location of the Internet Service Provider of a defendant's Internet Web site(s), (2) accessibility of a Web site within the forum, (3) lack of location-sensitive gateway to a Web site that would bar forum

residents from access, (4) the number of Web site hits from forum residents, (5) leaving "cookies" on computers within the forum, (6) maintenance of a "listserv" accessible within the forum and the number of listserv participants within the forum, (7) administration, operation, or moderation of a newsgroup accessible within the forum, (8) posting messages to a "newsgroup" discussion accessible within the forum, (9) the number of forum residents accessing or contributing to a defendant's "newsgroup" discussion, (10) hyperlinking a Web site to other Web sites active within the forum, (11) participating in Internet chat with forum residents, (12) remotely operating computers within the forum, (13) effecting sales via the Internet to forum residents, (14) transmitting products or services (such as data or programming) over the Internet to forum residents, (14) accepting or processing payments via the Internet, (15) including forum-related content on the Website. *Id.*

In addition, transmission of facts or information into Massachusetts via telephone or mail would constitute evidence of a jurisdictional contact directed into the forum state for purposes of Massachusetts long-arm statute and due process clause. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42 (1st Cir. 2002), *cert. denied*, 123 S.Ct. 558 (2002).

### (b)    Application of factors to ATA.

Plaintiffs allege that ATA played a significant role in its—and its member airlines'—policies with respect to the (non)refund of fees and charges complained of. *See* Am. Compl. ¶¶ 37–43, 97–99. However, without some discovery of information available only from ATA, the information currently available to the plaintiffs is insufficient to positively demonstrate personal jurisdiction.

According to its *2002 Annual Report*, "The Air Transport Association of America (ATA) is

the nation's oldest and largest airline trade association. U.S. members account for 95 percent of the passenger and cargo traffic carried by U.S. scheduled airlines."[49] ATA operates at least one Internet Web site (<http://www.airlines.org/>). That Web site provides the following general information about ATA:

> ATA serves its member airlines and their customers by assisting the airline industry in … advocating fair airline taxation and regulation worldwide to foster an economically healthy and competitive industry; and by developing and coordinating industry actions that are … economically reasonable….

> The fundamental purpose of the association is to foster a business environment that will permit U.S. airlines to flourish. By working with members in the technical, legal and political arenas, ATA supports measures that enhance … industry well-being….

> ATA is recognized by Congress, state legislatures, the Department of Transportation, the Federal Aviation Administration, the Department of Homeland Security, the Transportation Security Administration, the press and the public for its … representation of the industry….

> [T]he Air Transport Association continues to represent the industry on major aviation issues before Congress, federal agencies, state legislatures and other governmental bodies. ATA … serves as a focal point for industry efforts to standardize practices and enhance the efficiency of the air transport system.[50]

In addition, through the Web site, residents of Massachusetts may purchase publications (or obtain certain titles for free),[51] including one entitled, *Massachusetts Report: The Economic Benefits of Aviation to the U.S. Economy and the Potential Impact of Service Disruptions*.

Although ATA asserts that these substantial contacts, which it outlines in the Affidavit of David Berg, are nevertheless insufficient. However, permitting jurisdictional discovery might yield other relevant information (such as the existence of a Massachusetts-based Internet Web site provider). Moreover, as discussed above, the Massachusetts contacts of the airline members of ATA should be imputed to ATA.

---

[49] *See* ATA, *2002 Annual Report* pg. 4 (available online at <http://www.airlines.org/>).
[50] *See* ATA, *About Us: What is the ATA?* (available online at <http://www.airlines.org/about/d.aspx?nid=978>).
[51] *See* <http://airlinesorg.siteprotect.net/store/>.

ATA is an association that represents and promotes the interests of its member airlines.[52] Whether ATA is liable under any theory asserted in the Amended Complaint is a matter, in large part, of its relationship with those member airlines. ATA is comprised of its members, and it represents the interests of those members. By its nature, an "association" is made up of the entities associated—in this case, the airlines. It is simply not possible, without some amount of jurisdictional discovery, to determine ATA's relationship with its members. It would be unreasonable to dismiss the plaintiffs claims, out of hand, without some meaningful opportunity for discovery of the nature and extent of that relationship (among other things).

Since information sufficient to confirm ATA's relationship with its "members" (airlines) (*e.g.*, ATA's own charter or corporate papers) is beyond the immediate knowledge of the plaintiffs without *some* discovery, and is indeed within the control of ATA, the association should not be permitted to withhold the information necessary to determine jurisdiction while claiming that there is no such jurisdiction.

Other information about ATA's contacts with Massachusetts would include the extent of each of the following (some of which is described in the Affidavit of David Berg):

(1) Use of ATA's Internet Web site by Massachusetts residents, including paper and electronic publications available to Massachusetts residents through the site.

(2) Travel to Massachusetts to conduct business.

(3) Participation in Massachusetts government, as through lobbying or lawsuits with respect to State laws or regulations.

(4) Publications sent or mailings made to Massachusetts.

---

[52] *See* ATA, *2002 Annual Report* pg. 4 (available online at <http://www.airlines.org/>) (member airlines listed, including several of the airline defendants).

(5) Advertising reaching Massachusetts.

(6) Revenue derived directly or indirectly from association members with strong business connections with Massachusetts.

(7) Solicitations of Massachusetts residents or businesses.

(8) Holding or attending association-related events in Massachusetts.

(9) Contracts for goods or services produced or provided in Massachusetts or by Massachusetts residents or businesses.

After appropriate jurisdictional discovery (beyond the information volunteered by ATA in the Berg Affidavit), the plaintiffs could then cure any "[d]effective allegations of jurisdiction" (if there are any) by additional amendment under 28 U.S.C. § 1653.

**F.    Challenge to subject matter jurisdiction (standing) under Rule 12(b)(1) (Lufthansa).**

Defendant Lufthansa seeks dismissal of the claims against it under Rule 12(b)(1) for (an alleged) lack of subject matter jurisdiction. The original Complaint made no specific allegation naming a plaintiff who had specifically purchased a ticket from Lufthansa. The Amended Complaint made no specific allegation naming a plaintiff who had specifically purchased a ticket from ***any*** named defendant airline. Lufthansa seems to infer from this that no named plaintiff actually purchased a ticket from Lufthansa. *See* Mem. of Lufthansa in Support of Mot. to Dismiss at 2–10.

In redrafting the original Complaint into its current form as the Amended Complaint, it became apparent that naming each of the airlines from which each of the defendants purchased one or more airline tickets would be overly and unnecessarily tedious, especially since several plaintiffs purchased numerous tickets from various airlines. Therefore, for clarity, simplicity, ease of understanding, and so that the allegations could be generalized as class action allegations, the allegations were changed to their current form.

Notice pleading does not require that the plaintiffs recite each transaction that gives rise to their claims against Lufthansa (or any of the defendants). Rather, it requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

If Lufthansa's argument is accepted, it would apply no less to the other airlines than to Lufthansa. Lufthansa is looking at the allegations (almost) exclusively in light of the original Complaint, not based on the structure of the Amended Complaint, which 'corrected' the 'lack of any specific allegations related to Lufthansa' **not** by adding such allegations about Lufthansa but instead by generalizing the allegations related to **all** the airlines. This is especially appropriate in a putative class action, such as this one, where reciting a litany of party-specific allegations that will be inapplicable to the putative class members would be a useless exercise. Rather, the plaintiffs have stated their allegations against **all** the airlines in the same general manner. Individual information and evidence about specific transactions more properly belongs in the discovery stage, not the notice pleading stage of an Amended Complaint. *See* Fed. R. Civ. P. 8(a).

In "short and plain" language (Fed. R. Civ. P. 8(a)(2)), the Amended Complaint alleges that "[e]ach defendant airline sold one or more tickets for air travel to one or more of the individual plaintiffs." Am. Compl. ¶ 58. Lufthansa argues that because ¶ 58 omits the word 'nonrefundable,' "it follows that they [the plaintiffs] have also failed to alleged that such a ticket went unused or that they requested and did not receive a refund of taxes, fees, or charges." (Mem. in Support of Lufthansa's Mot. to Dismiss at 9.) However, this is simply wrong.

First, the plaintiffs do make precisely those allegations. (*See* Am. Compl. ¶¶ 61–62.) Second, the fact that the plaintiffs allege that they purchased "nonrefundable airfare" (Am. Compl. ¶ 59) and that the airlines sold them "tickets for airfare" does not mean that the tickets

sold by the airlines somehow did not include those (nonrefundable tickets) that were purchased by the plaintiffs. Rather, the different terminology reflects the fact that the plaintiffs claim that only the airfare itself (*i.e.*, that portion of the total consumer cost of the ticket that represents the 'base price' set by the airline for the transportation itself, exclusive of any taxes, charges, or fees added to that base price) is "nonrefundable." Lufthansa urges a strained and overly technical reading of the Amended Complaint that simply is not warranted.

## V.    CONCLUSION

The plaintiffs respectfully request that the Court deny the defendants' various Motions to Dismiss. Alternatively, the plaintiffs request that the Court—

(1) treat the Motions to Dismiss under Rule 12(b)(6) for failure to state a claim as motions for summary judgment under Rule 56, and

(2) deny those motions until the plaintiffs have had reasonable opportunity to "present … facts essential to justify the [plaintiff]'s opposition," Fed. R. Civ. P. 56(f), based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits," Fed. R. Civ. P. 56(c), and "order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had." Fed. R. Civ. P. 56(f).

Finally, if after appropriate jurisdictional discovery, personal jurisdiction with respect to a particular plaintiff or a particular defendant is improper in Massachusetts, the Court should transfer the case with respect to that plaintiff or that defendant to another district court in which the claims could have been brought, in accordance with 28 U.S.C. § 1404(a) or § 1406(a).

Respectfully submitted,
*Counsel for the Plaintiffs:*


/s/ Evans J. Carter

Evans J. Carter, Esq.
   (Bd. of Bar Overseers No. 076560)
860 Worcester Road (Rte. 9), 2nd Floor
P.O. Box 812
Framingham, MA 01701–0812
(508) 875–1669 phone
(508) 875–1449 facsimile

Dated: October 15, 2005