UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT HARRINGTON, et al.,<br><br>   Plaintiffs<br>v.<br><br>DELTA AIR LINES, INC., et al.,<br><br>   Defendants. | Civil Action No.<br>04-12558-NMG |

### DOMESTIC DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants American Airlines, Inc., Alaska Airlines, Inc., Continental Airlines, Inc., Southwest Airlines Co., Airlines Reporting Corp. ("ARC"), and Air Transport Association of America, Inc. ("ATA") (collectively the "Domestic Defendants") respectfully submit this reply memorandum in further support of their Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). As set forth in the Domestic Defendants' initial moving papers, Plaintiffs' claims in this case must be dismissed because (1) they are expressly preempted by the Airline Deregulation Act ("ADA") and its progeny in similar cases and/or (2) as a matter of substantive state law, they fail to state a claim under each of the counts in the Amended Complaint.

### Summary of Arguments Raised by Plaintiffs

In their opposition, Plaintiffs defend only their contract claims against the Domestic Defendants' preemption argument, and therefore Plaintiffs' non-contract claims (Counts II, IV, VI, and VII) must be dismissed. As to their contract claims, in an effort to avoid a preemption bar, Plaintiffs focus almost exclusively on allegations in the Amended Complaint that the

defendant airlines violated certain "federal" regulations and therefore breached their contracts with their passengers. Plaintiffs argue that state contract claims based on violations of such regulations, or alternatively claims brought directly to enforce the regulations through an implied right of action, are not preempted by the ADA because they are premised on federally-mandated, not state-imposed, contract requirements and thereby fall within the scope of the exception to preemption provided in *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995).

Plaintiffs' reliance on *Wolens* is entirely misplaced. By its express terms, *Wolens* applies to "self-imposed" contractual obligations by the airlines themselves, *id.* at 228, where in this case, Plaintiffs have not alleged that the Domestic Defendants violated any federal regulations that serve as contract terms between the parties. Thus, Plaintiffs cannot reasonably assert breach of contract claims based on alleged violations of the regulations, which are not by their very nature "self-imposed" since they undeniably are imposed by federal law. Moreover, to the extent Plaintiffs look to assert direct claims based on alleged violations of federal regulations, such claims are barred because neither the Federal Aviation Act ("FAA") nor the ADA provides a private right of action to enforce the regulations. Finally, Plaintiffs' requests for merits discovery to attempt to cure their inadequately-pled claims should be denied. Plaintiffs have failed to satisfy even the minimal notice-pleading standards set forth by Fed. R. Civ. P. 8(a), and they should not be permitted to take discovery to fish for a factual basis for their purely speculative claims. Accordingly, the Amended Complaint must be dismissed in its entirety with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## I.   PLAINTIFFS HAVE ABANDONED THEIR NON-CONTRACT CLAIMS.

In their opposition, Plaintiffs defend only their contract-based claims against the Domestic Defendants' preemption argument. Plaintiffs' primary argument is that their "claims

for breach of contract (and good faith and fair dealing) are specifically permitted" under the exception created in *Wolens*. *See* Plaintiffs' Opposition, at 10. Plaintiffs, however, do not address preemption with regard to any of their non-contract claims except to state that the claims "seek only remedies" that do not burden the airline industry and thus are not preempted. *See id.* at 27. Indeed, Plaintiffs discuss their non-contract claims only in arguing in general terms that their allegations are sufficient to survive notice-pleading standards and to warrant discovery. However, that argument--even if it had merit, which it does not (*see infra* section IV)--would not save Plaintiffs' non-contract claims because the preemption issue standing alone is fully dispositive. Thus, by failing to respond to the Domestic Defendants' preemption arguments as to their non-contract claims, Plaintiffs effectively concede that those claims are preempted by the ADA. Accordingly, for all the reasons stated in the Domestic Defendants' Motion to Dismiss and Memorandum of Law in support, Plaintiffs' non-contract claims in Counts II, IV, VI, and VII of the Amended Complaint must be dismissed.

## II.   PLAINTIFFS' CONTRACT CLAIMS ARE PREEMPTED BY THE ADA.

As set forth in the Domestic Defendants' moving brief, Plaintiffs' contract claims are preempted by the ADA because the claims are related to "services" and "rates" of air carriers as those terms are used in the preemption provisions of the ADA and because they do not allege the breach of any self-imposed obligations by the Domestic Defendants that could possibly bring them within the scope of *Wolens*. Plaintiffs' references in their opposition to alleged violations of federal regulations do not alter this conclusion, and thus, Plaintiffs' contract claims must be dismissed because they are preempted by the ADA. Moreover, Plaintiffs fail to address how this case differs from the numerous other similar cases that have been dismissed on preemption grounds and cited in the Domestic Defendants' moving brief. *See* Memorandum of Law in

Support of the Domestic Defendants' Motion to Dismiss ("Defendants' Memo") at 10-12. Plaintiffs cite no federal cases in opposition, other than a misplaced reliance on *Wolens* and *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). *See* Plaintiffs' Opposition, at 11-20.

### A. Plaintiffs' Contract Claims Relate to Airline "Services" and "Rates."

In their opposition, Plaintiffs contend that they do not assert contract claims "relating to" either "rates" or "services" of air carriers, as those terms are used in the preemption provisions of the ADA. First, Plaintiffs contend that the claims do not relate to air carrier "services" because the fees at issue in this case are not for services of the air carriers but rather are "fees related to 'service[s]' of the Government agencies (or airports or quasi-governmental airport authorities, in the case of PFCs) that provide the service." Plaintiffs' Opposition, at 11-12. Second, Plaintiffs contend that their claims are not related to air carrier "rates" because they concern fees which are "completely separate from the 'base' fare of the air carrier" and the fees are set by the federal government, not by air carriers themselves. *Id.* at 12. Plaintiffs' contentions completely misread the preemption provisions in Section 105 of the ADA.[1]

Section 105 does not require that the fees at issue be specifically for air carrier services. Rather, the relevant inquiry is "whether plaintiffs' complaint[] state[s] *claims 'relating to* [air carrier] rates, routes, or services.'" *Wolens*, 513 U.S. at 226 (emphasis added). Here, even accepting Plaintiffs' contention that some of the fees at issue in this case are not in and of themselves for airline services, Plaintiffs' *claims* unquestionably relate to airline services.[2]

---

[1] The preemption provisions are presently codified in 49 U.S.C. § 41713. As in the Domestic Defendants' moving brief, for consistency and ease of discussion, this reply memorandum follows the practice of most of the case law in this area by referring to the original language of Section 105.

[2] As the Domestic Defendants noted in their opening brief, the Supreme Court has interpreted the "relating to" language in Section 105 expansively, stating that the words "express a broad pre-emptive purpose." *Morales*, 504 U.S. at 383.

Plaintiffs' claims here concern notice provisions governing airline tickets and fees concerning, *inter alia*, airport security, use of airport facilities, customs, immigration, and agriculture inspection. Thus, the claims at a minimum relate to ticketing, boarding, deplaning, and the transportation itself and therefore fall squarely within the scope of Section 105. *See Hodges v. Delta Air Lines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc).

Plaintiffs' claims even more clearly relate to airline "rates" as used in the ADA.[3] Indeed, courts have uniformly held that claims concerning fees or taxes in connection with airline travel relate to "rates" under Section 105. *See* Defendants' Memo at 5-6 (listing cases). Plaintiffs offer no basis for their argument that the term "rates" in Section 105 refers to the "base fare" of airline services or, alternatively, to only the portion of the fare that is part of the fees or taxes which must be collected by the air carrier on behalf of the federal government or agency. No such distinction appears in either the statutory language itself or applicable case law. Indeed, as the Domestic Defendants noted in their moving brief, courts have uniformly held that claims similar to Plaintiffs' claims here relate to rates under Section 105. *See Statland v. American Airlines, Inc.*, 998 F.2d 539, 542 (7th Cir. 1993); *Kaucky v. Southwest Airlines Co.*, No. 96-C-750, 1996 WL 267875, at *4 (N.D. Ill. May 17, 1996) (unpublished decision), *aff'd*, 109 F.3d 349 (7th Cir. 1997); *Lehman v. USAIR Group, Inc.*, 930 F. Supp. 912, 915 (1996); *Strategic Risk Management, Inc. v. Federal Express Corp.*, 253 A.D.2d 167, 172-73 (N.Y. App. Div. 1999); *Boon Ins. Agency, Inc. v. American Airlines, Inc.*, 17 S.W.3d 52, 58 (Tex. Ct. App. 2000); *Howell v. Alaska Airlines, Inc.*, 994 P.2d 901, 905 (Wash. App. 2000). Accordingly, Plaintiffs' argument lacks merit and must be rejected.

---

[3] As noted previously, the current statutory language refers to "price" instead of "rates" as used in the original text of the preemption provision, but the two terms are meant to be interchangeable. *See* Defendants' Memo at 4 n.3.

B.   **Plaintiffs' Contract Claims Do Not Fall Within the *Wolens* Exception.**

In their opposition, Plaintiffs suggest that certain federal regulations and requirements are incorporated by reference into the defendant airlines' contracts of carriage. For instance, Plaintiffs state: "The contract itself is based on Federal legal requirements, which are, as a matter of law, a part of any minimum contractual requirements between air carriers and passengers." Plaintiffs' Opposition, at 11. They further state: "What plaintiffs are requesting is simply that their contracts with the defendants be enforced. The terms of those contracts are set, in part, by Federal regulation." *Id.* at 13-14. Indeed, Plaintiffs' opposition is littered with suggestions that the defendant airlines' contracts of carriage include terms "imposed," "mandated," and "dictated" by federal law. Plaintiffs thus contend that *Wolens*, which created an exception for contract claims seeking to enforce "self-imposed undertakings," 513 U.S. at 228, applies to their claims to enforce the alleged *federally*-imposed contractual obligations in their contracts with the defendant airlines.

As an initial matter, Plaintiffs cite no case law to support their tenuous argument that *Wolens* applies to federally-imposed terms in addition to "self-imposed" obligations. *Wolens* expressly held that the ADA's preemption provisions do not preclude the "enforcement of contract terms *set by the parties themselves*," 513 U.S. at 222 (emphasis added), or claims based on allegations that "an airline dishonored a term *the airline itself stipulated*." *Id.* at 232-33 (emphasis added). Indeed, the *Wolens* Court stated that the "distinction between what the State dictates and what the airline itself undertakes *confines courts, in breach-of-contract actions, to the parties' bargain*, with no enlargement or enhancement based on state laws *or policies external to the agreement.*" *Id.* at 233 (emphasis added). Moreover, the *Wolens* opinion is replete with language referring to contract terms specifically entered into by the parties: for

instance, in addition to "self-imposed undertakings," the Court refers to "privately ordered obligations," "private contract," and "private agreement." *Id.* at 228-229.

More fundamentally, Plaintiffs have completely failed to allege that any of the Domestic Defendants violated federal regulations that in fact are terms of any contracts between the parties. To be sure, Plaintiffs suggest, in pages and pages of unsupported argument that largely regurgitates the Amended Complaint, that unspecified federal regulations are somehow incorporated into the defendant airlines' contracts of carriage, but they offer absolutely no factual predicate to ground this suggestion. *See* Plaintiffs' Opposition, at 15-20.

The only federal regulations that Plaintiffs affirmatively allege the Domestic Defendants violated are the notice provisions set forth in 14 C.F.R. part 253. *See, e.g.*, Plaintiffs' Opposition, at 16. This regulation, entitled "Notice of Terms of Contract of Carriage" allows air carriers to incorporate by reference certain terms of their contracts of carriage into their tickets (or other written instruments that embody the contract of carriage) without stating the full text of the terms. *See* 14 C.F.R. § 253.4(a). For example, air carriers may provide notice in their ticket jackets that there are certain limitations of liability contained in their contracts of carriage.

Under the regulations carriers must make the full text of each term that it incorporates by reference in a contract of carriage available for public inspection at any locations they sell tickets. *See id.* §253.4 (b) and § 253.5 (a).[4] However, despite Plaintiffs' crafty argument, there is no requirement that the air carriers provide notice of any specific fees, taxes, or alleged "penalties." Plaintiffs' Opposition at 17. Indeed, the regulation states that

> [t]he incorporated terms *may* include and passengers *may* obtain from any
> location where the carrier's tickets are sold within the United States further
> information concerning:

---

[4] Most carriers also comply with this requirement by making the full text of their contracts of carriage available on their websites so when a passenger buys his ticket, he can also review any terms that may have been incorporated by reference on his ticket, receipt or ticket jacket.

 (1) Limits on the air carrier's liability for personal injury or death of passengers, and for loss, damage or delay of goods and baggage, including fragile or perishable goods;

 (2) Claim restrictions, including time periods within which passengers must file a claim or bring an action against the carrier for its acts or omissions or those of its agents;

 (3) Rights of the carrier to change terms of the contract.(Rights to change the price, however are governed by §253.7);

 (4) Rules about reconfirmation of reservations, check-in times, and refusal to carry;

 (5) Rights of the carrier and limitations concerning delay or failure to perform service, including schedule changes, substitution of alternate air carrier or aircraft, and rerouting.

49 C.F.R. § 253.5 (b) (emphasis added).

Notwithstanding that the foregoing regulations do not mandate the incorporation by reference of any particular rules, Plaintiffs allege that the defendant airlines improperly failed to incorporate by reference into Plaintiffs' airline tickets certain alleged rules concerning refunds and penalties associated with the nonuse of the tickets. Amended Complaint, at 17, 21-22. Even taking these allegations as true for purposes of the present motion, however, they misuse the regulation in that it only requires an air carrier to notify a passenger if it *has* incorporated a rule in the contract of carriage by reference.

Plaintiffs' partial reliance on section 253.7 is also misplaced. That section provides that "a passenger shall not be bound by any terms restricting refunds of the ticket price, imposing monetary penalties on passengers, or permitting the carrier to raise the price, unless the passenger receives conspicuous written notice of the salient features of those terms on or with the ticket." But Plaintiffs do not, and cannot, claim that the defendant airlines breached any terms required of section 253.7 because they have in fact alleged they knowingly purchased non-refundable tickets and no monetary "penalties" are alleged, other than unsupported argument in

the Plaintiffs' opposition. Their complaint is rather that the air carriers *enforced* their non-refundability rules and they now do not like the result. But because Plaintiffs' allegations concerning violations of the notice regulations are simply wrong and do not implicate any terms of the defendant airlines' contracts of carriage, they do not provide a basis for breach of contract claims.

In their opposition, Plaintiffs mention a host of other federal statutes and regulations relating to the federally imposed fees and taxes at issue in the case. *See* Plaintiffs' Opposition, at 16-20. However, Plaintiffs stop well short of alleging actual violations of any such provisions, prefacing the list by stating that it merely includes "[s]ome of the federal requirements *relevant to* the plaintiffs' claims." *Id.* Moreover, just as with the notice regulations, even if Plaintiffs had alleged specific violations of any of these federal requirements, such allegations would not support claims for breach of contract because Plaintiffs have not provided any factual basis to support the suggestion that the requirements themselves are part of the defendant airlines' contracts of carriage.

In sum, Plaintiffs cannot simply bootstrap claims based on alleged violations of federal regulations to their otherwise vacant contract claims in an effort to bring the contract claims within the scope of *Wolens*.[5] The notice regulations do not serve as terms of Plaintiffs' contracts with the defendant airlines, and thus, alleged violations of the regulations cannot, as a matter of

---

[5] Moreover, as discussed below, the statutes underlying the regulations do not provide a private right of action (*see infra* section III). Thus, allowing Plaintiffs to bring a state common law contract action to enforce the regulations would effectively craft a private right of action that Congress did not intend to create. Plaintiffs should not be allowed to circumvent congressional intent in this manner. *See Casas v. American Airlines, Inc.*, 304 F.3d 517, 525 (5th Cir. 2002); *see also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198 (2d Cir. 2005) ("[A] federal court should not strain to find in a contract a state-law right of action for violation of a federal law under which no private right of action exists.").

law, state a claim for breach of contract. Accordingly, Plaintiffs' contract claims are preempted by the ADA and/or fail to state a cause of action and must be dismissed.[6]

### III. THERE IS NO IMPLIED PRIVATE RIGHT OF ACTION TO ENFORCE FAA OR ADA REGULATIONS.

In their opposition, Plaintiffs suggest that as an alternative to their contract claims, they can assert claims based on alleged violations of the notice regulations directly under an implied right of action theory. In assessing whether the notice regulations provide an implied private right of action, however, Plaintiffs conduct a superficial and incomplete analysis of the relevant factors. More importantly, Plaintiffs incorrectly look to the regulations themselves and ask the Court to impose regulatory changes from an outcome determinative perspective, which the Court cannot do. *See* Plaintiffs' Opposition, at 24-25.

Under the Supreme Court's decision in *Sandoval v. Alexander*, 532 U.S. 275 (2001), the proper inquiry in determining whether an implied right of action exists turns on an analysis of the underlying statute, not the regulations. *See Bonano v. East Caribbean Airline Corp.*, 365 F.3d 81, 84 (1st Cir. 2004) ("[A] regulation, on its own, cannot create a private right of action. . . . The source of any such right must be found in the text of the statute."). Here, neither the FAA as originally enacted, nor the statutory amendments incorporated into the FAA via the ADA, provide a private cause of action. *Id.* at 86 (FAA); *Casas v. American Airlines, Inc.*, 304 F.3d 517 (5th Cir. 2002) (ADA); *see generally* Defendants' Memo at 17-18. Thus, Plaintiffs cannot maintain a cause of action to enforce directly the notice regulations.[7]

---

[6] An equally valid alternative basis for dismissal is that because Plaintiffs have failed to adequately allege any breach of a specific contractual term--whether a federal regulation or otherwise--Plaintiffs fail to state a claim as a matter of substantive state law. *See* Defendants' Memo at 18.

[7] Plaintiffs address the implied right of action issue only with regard to the notice regulations in their opposition, but the same conclusion applies to any of the federal regulations Plaintiffs identify in their Amended Complaint and opposition.

Plaintiffs contend that Congress could not have meant to "deny[] State courts the ability to hear claims based on violations of terms considered by the Congress to be sufficiently important to be specified or limited by Federal law." Plaintiffs' Opposition, at 23. Thus, Plaintiffs argue that refusing to allow enforcement of the notice regulations through a private right of action would render the regulations "pointless." *Id.* Plaintiffs, however, base this contention on the incorrect premise that the Secretary of Transportation is not authorized to enforce the notice regulations. To the contrary, the FAA sets forth a comprehensive public enforcement scheme that leaves no room for an implied private right of action. As the First Circuit stated in *Bonano*:

> To cinch matters, the scheme of enforcement actually spelled out in the Act counsels persuasively against implying a private right of action. For one thing, under 49 U.S.C. § 40331, the Secretary of Transportation has the power to conduct investigations, prescribe regulations, and issue orders. Other provisions of the Act share this emphasis on official involvement. *See, e.g., id.* § 46101 (noting that a "person may file a complaint in writing with the Secretary of Transportation . . . about a person violating this part or a requirement prescribed under this part" and providing further that the Secretary "shall investigate the complaint if a reasonable ground appears . . . for the investigation); *id.* § 46106 (giving the Secretary of Transportation the power to "bring a civil action against a person in a district court of the United States to enforce this part or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part"); . . . . This plainly exhibits Congress's preference for *public* enforcement.

365 F.3d at 85. Thus, to the extent Plaintiffs assert claims directly to enforce the notice regulations, or any other implementing regulations of the FAA or ADA, such claims must be dismissed.

### IV.   PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY.

In a desperate effort to salvage their contract claims from preemption, Plaintiffs ask the Court to permit discovery to allow them to search for a factual basis for the claims. Plaintiffs state that "since the plaintiffs and the Court lack essential information and discovery to aid in

determining the extent of the plaintiffs' claims . . . material questions of fact exist--not just questions of law." *Id.* at 26-27.

Plaintiffs' clearly misunderstand the present posture of the case and nature of the Domestic Defendants' preemption arguments.[8] The Domestic Defendants contend that Plaintiffs' contract claims are preempted by the ADA as a matter of law because Plaintiffs have not stated and cannot adequately plead any cause of action for breach of contract that falls within the Supreme Court's exception under *Wolens*. Plaintiffs' contention that they do not have access to other facts concerning, for example, the Domestic Defendants' collection procedures thus has no bearing on the present motions to dismiss. Plaintiffs have falsely and blatantly accused the defendant airlines of failing to remit the taxes and fees they collect on behalf of the government entities in their Amended Complaint, and they must now stand on their pleadings rather than skirt behind a premature request to proceed with discovery in order to prove the allegations they made without any factual or legal basis.

Plaintiffs misconstrue the pleading requirements of Fed. R. Civ. R. 8(a). Although notice-pleading standards under the rule do not require highly detailed allegations, Plaintiffs must provide more than unsupported assertions, conclusory statements, and mere speculation as to the factual basis for their claims. As the First Circuit has stated, "minimal requirements are not tantamount to nonexistent requirements. The threshold [for stating a claim] may be low, but it is real . . . ." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Thus, "while a complaint 'need not include evidentiary detail,' it must nonetheless 'allege a factual predicate concrete enough to warrant further proceedings.'" *United States ex rel. Karvelas v. Melrose-*

---

[8] Plaintiffs' contention that the Court should allow discovery pursuant to Fed. R. Civ. R. 56(f) is similarly misplaced, as Rule 56(f) concerns the allowance of discovery in connection with a motion for summary judgment. The Domestic Defendants have moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) and in doing so, have not referred to, proffered, or relied on any evidence extrinsic to the Amended Complaint.

*Wakefield Hospital*, 360 F.3d 220, 240 (1st Cir. 2004) (quoting *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).

Here, Plaintiffs have altogether failed to identify *any* contractual terms breached by the defendant airlines. Thus, while Plaintiffs may be correct that they are not required to know every detail of every term of their contracts with the defendant airlines, they must at a minimum be able to identify *some* breach to proceed with their claims. *See Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) ; *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29, 37 (D. Mass. 1999). Plaintiffs should not be permitted to assert breach of contract claims based on misrepresentations of federal regulatory requirements in order to survive a motion to dismiss. Nor should they be allowed to hide behind the mere speculation that discovery will reveal hidden contractual terms that provide a factual predicate for their claims. *See Kadar Corp. v. Milbury*, 549 F.2d 230, 233 n.2 ("Plaintiff is not entitled to a trial, or even to discovery, merely to find out whether or not there may be a factual basis for a claim which she has not made." (quoting *Cohen v. Illinois Inst. of Tech.*, 524 F.2d 818, 827 (7th Cir. 1975))).

Similarly, Plaintiffs should not be allowed to avoid the multitude of pleading deficiencies identified by the Domestic Defendants as to each of their non-contract claims through a generalized, baseless request for discovery to cure the claims.[9] Plaintiffs have insufficiently alleged crucial elements required, as a matter of substantive state law, as to each of their non-contract claims, *see* Defendants' Memo at 16-23, and thus, Plaintiffs have not satisfied the notice-pleading requirements as those claims as well. *See Gooley*, 851 F.2d at 514 ("[plaintiff must] set forth factual allegations, either direct or inferential, respecting each material element

---

[9] In their opposition, Plaintiffs state that they "have met their initial pleading burden by setting out their claims, and the supporting facts, to the best of their knowledge, information, and belief. Before the plaintiffs must respond to the more searching inquiry the defendants seek, they are entitled to the opportunity to uncover additional facts to support their claims through the discovery process." Plaintiffs' Opposition, at 33.

necessary to sustain recovery under some actionable legal theory."). Plaintiffs should not be permitted to engage in a fishing-expedition style discovery to search for a factual basis for their claims. *See DM Research*, 170 F.3d at 55 ("Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition."). Accordingly, Plaintiffs are not entitled to merits discovery, and each of the claims in the Amended Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the reasons stated above and in the Domestic Defendants' Motion to Dismiss and Memorandum of Law in Support of the Motion, the Domestic Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice and award the Domestic Defendants such further and other relief as the Court deems appropriate, including attorneys' fees and costs as incurred herein.

December 13, 2005

**DECHERT LLP**

By: /s/ Matthew Porter
    Matthew A. Porter, BBO #630625
    Michael S. Shin, BBO # 658134
200 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 728-7100

*Attorneys for American Airlines, Inc., Alaska Airlines, Inc., Continental Airlines, Inc., Southwest Airlines Co., Airlines Reporting Corp., and Air Transport Association of America, Inc.*