UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CRAIG BUCK, KENNETH MICCICHE, VALERIE L. PAWSON, CAROLINE MARSHALL-SMITH, WANDA MILLS; JEFF GOLUMBUK, ANESIA KALAITZIDIS, ATHANASE KARAGIORGOS; AND JENNIFER TSOUVRAKAS, on behalf of themselves and others, | : 04 12558 NMG : : **REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| *Plaintiffs,* | : |
| *v.* | : |
| ALASKA AIRLINES, AMERICAN AIRLINES, CONTINENTAL AIRLINES, DELTA AIR LINES, INC., NORTHWEST AIRLINES, SOUTHWEST AIRLINES CO., d/b/a SOUTHWEST AIRLINES, CHINA EASTERN AIRLINES CORP. LTD, CHINA SOUTHERN AIRLINES CO. LTD., AER LINGUS LIMITED, ALITALIA-LINEE AEREE ITALINE S.p.A., D/B/A ALITALIA AIRLINES, BRITISH AIRWAYS, PLC, D/B/A BRITISH AIRWAYS, DEUTSCHE LUFTHANSA, A.G., D/B/A LUFTHANSA AIRLINES, OLYMPIC AIRWAYS-SERVICES, SA, D/B/A OLYMPIC AIRWAYS, AIR TRANSPORT ASSOCIATION OF AMERICA, INC., AIRLINES REPORTING CORP., AND THE FEDERAL AVIATION ADMINISTRATION | : : : : : : : : : : |
| *Defendants.* | : |

--------------------------------------------------------------------x

## PRELIMINARY STATEMENT

Defendants China Southern Airlines Company Limited (hereinafter "CHINA

SOUTHERN") and China Eastern Airlines Company Limited (hereinafter "CHINA

EASTERN"), by and through their attorneys Campbell, Campbell & Edwards and Condon &

Forsyth LLP, respectfully submit this Reply in support of their respective motions to dismiss the for lack of personal jurisdiction pursuant to Fed. R. Civ. Proc. 12(b)(2).

## ADDITIONAL FACTS RELEVANT TO JURISDICTION

Defendants filed and served their motions to dismiss on September 21, 2005 (CHINA EASTERN) and September 30, 2005 (CHINA SOUTHERN). Plaintiffs did not file their Opposition until January 9, 2006. Plaintiffs did not move for an extension of time to respond. Plaintiffs did not request additional time to respond from Defendants and Defendants did not consent to additional time to respond.[1]

CHINA SOUTHERN is majority owned by China Southern Air Holding Company ("CSAHC"). *See* Exh. 1, Amended Corporate Disclosure Statement; Exh. 2, China Southern 2004 Annual Report, and Exh; 3, Second Decl. of Aizhen Ye, ¶ 4. CHINA SOUTHERN is not directly owned by the People's Republic of China ("China").

CHINA EASTERN is majority owned by China Eastern Air Holding Company (CEAHC). *See* Exh. 4, Supplemental Corporate Disclosure Statement; Exh. 5, Second Decl. of Qian Qiao Yi, ¶ 4; and Exh. 6, SEC Filings. CHINA EASTERN is not directly owned by China.

## ARGUMENT

**Personal Jurisdiction Cannot be Established under the Foreign Sovereign Immunities Act Because China Southern is not a Foreign Sovereign**

Two requirements must be met before a federal court can exercise personal jurisdiction over a defendant. First, a statute must potentially confer a basis for jurisdiction over the

---

[1] The Court may refuse to consider an opposition which is not timely filed. *See Resolution Trust Co. v. Harold Gold and Graphics Leasing Corp.*, 30 F.3d 251, 254 (1ˢᵗ Cir. 1994); *Cook v. McLaughlin*, 917 F. Supp. 79, 81 (D. Mass. 1996) (striking Opposition because it was not timely filed and plaintiff neither requested permission from the Court for an extension nor proffered an explanation for his tardiness).

defendant, and second, the exercise of jurisdiction must comport with due process. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). Federal Rule of Civil Procedure 4(k)(1) establishes a federal court's territorial limits of effective service. It provides:

> Service of a summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant: (A) who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located…(D) when authorized by a statute of the United States.

Fed. R. Civ. Proc. 4(k)(1)(A) and (D).[2]

In regard to rule 4(k)(1)(A), Federal courts look to the long-arm statute of the state in which they sit to provide authority for service of process on and jurisdiction over the defendant, which in this case is the Massachusetts Long Arm Statute. *See United States v. Swiss Amer. Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir. 1999). Plaintiffs do not contest Defendants' argument that the Massachusetts Long-Arm Statute, Mass. Gen. Laws ch. 223A, § 3, does not provide a basis for jurisdiction over Defendants.

Plaintiffs instead rely on 4(k)(1)(D) and 28 U.S.C. § 1608(b) which allows for service of foreign sovereigns on the theory that Defendants are "foreign states." However, because Defendants are majority-owned by holding companies, CEAHC and CSAHC, they are not foreign states. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (holding only direct ownership of a majority of shares by the foreign state satisfies the statutory requirement).

28 U.S.C. § 1603(a) defines a foreign state as including "an agency or instrumentality of a foreign state." Under § 1603(b)(2), an "agency or instrumentality of a foreign state" must be an entity which is "an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision

---

[2] Only 4(k)(1)(A) and (D) are relevant to this case.

3

thereof." Defendants are not organs or political subdivisions of China. To be a "foreign state," a majority of their shares must be owned by China or a political subdivision thereof. Because a majority of Defendants' shares are owned by CEAHC and CSAHC respectively, and not by China or a political subdivision thereof, Defendants are not foreign states.

In *Dole Food*, the Supreme Court found that several companies who were related to the State of Israel, but whose ownership was "separated by one or more intermediate corporate tiers," were not "foreign states." The Court stated:

> The Dead Sea Companies, as indirect subsidiaries of the State of Israel, were not instrumentalities of Israel under the FSIA at any time. Those companies cannot come within the statutory language which grants status as an instrumentality of a foreign state to an entity a "majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof." We hold that only direct ownership of a majority of shares by the foreign state satisfies the statutory requirement.

*Dole Food*, at 474. In this case, China does not directly own Defendants but rather, Defendants are "indirect subsidiaries" of China. Under *Dole Food*, Defendants are not foreign states, and the service provisions of § 1608 do not apply. Because section 1608 was the only federal statute which potentially provided for service in this case, plaintiffs cannot rely on rule 4(k)(1)(D). Under *Omni Capital*, with no rule or statute providing a basis for jurisdiction, personal jurisdiction cannot be established over Defendants in this case. Defendants are no different than any other non-U.S. corporation.

Defendants acknowledge asserting the affirmative defenses of Foreign Sovereign Immunity and that their original Corporate Disclosure Statements were incorrect. Nonetheless upon further investigation of Defendants' ownership and under controlling Supreme Court precedent, it is clear that Defendants are not foreign states.

4

**CONCLUSION**

Plaintiffs cannot establish jurisdiction under either the Massachusetts Long-Arm Statute or a federal statute. As a matter of law, therefore, personal jurisdiction over Defendants is lacking and this lawsuit must be dismissed as to Defendants China Eastern and China Southern.


Dated: February 2, 2006


/s/ Kathleen M. Guilfoyle
Richard P. Campbell (BBO #071600)
Kathleen M. Guilfoyle (BBO #546512)
CAMPBELL CAMPBELL EDWARDS
& CONROY P.C.
One Constitution Plaza
Boston, Massachusetts 02129
(617) 241-3000

-and-

CONDON & FORSYTH LLP
Thomas J. Whalen, Esq.
685 Third Avenue
New York, New York 10017
(212) 490-9100

Attorneys for Defendants
CHINA SOUTHERN AIRLINES COMPANY LTD
CHINA EASTERN AIRLINES COMPANY LTD

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 2, 2006.

By:    <u>/s/ Kathleen M. Guilfoyle</u>

To:    Thomas J. Whalen, Esq.
       Condon & Forsyth LLP
       1016 Sixteenth Street, NW
       Washington, DC 20036

       Eugene Massamillo, Esq.
       Peter W. Beadle, Esq.
       Thomas Carulli, Esq.
       Biedermann, Hoenig, Massamillo & Ruff
       90 Park Avenue
       New York, New York 10000

       Andrew J. Harakas, Esq.
       Condon & Forsyth, LLP
       7 Time Square
       New York, NY 10036

       David Ogden, Esq.
       Ethan G. Shenkman, Esq.
       Wilmer Cutler & Pickering
       2445 M St. NW
       Washington, DC 20037

       Daniel M. Esrick, Esq.
       Wilmer Cutler Pickering
       Hale and Dorr LLP
       60 State Street
       Boston, MA 02109

       Anita Johnson
       United States Attorney's Office
       1 Courthouse Way
       Suite 9200
       Boston, MA 02210

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------x
                                               :

ROBERT J. HARRINGTON, FAYE BYRON,
CRAIG BUCK, VALERIE L. PAWSON,                     04 12558 NMG
RAY DRASNIN, WANDA MILLS, JEFF         :
GOLUMBUK, CAROLINE MARSHALL-
SMITH, ANESIA KALAITZIDIS,            :
KENNETH IVANOVITZ, ATHANASE
KARAGIORGOS, HARRIET ZALWANGO.    :
MICHAEL BLAU, KENNETH MICCICHE
and JENNIEE TSOUVRAKAS, on behalf of  :
themselves and others,

                                               :

                Plaintiffs,

                                             :

      - against -

                                             :

DELTA AIRLINES, INC., AMERICAN
AIRLINES, US AIRWAYS GROUP, INC.,     :
d/b/a US AIRWAYS, NORTHWEST
AIRLINES, UNITED AIRLINES, INC.,      :
ALASKA AIRLINES, CONTINENTAL
AIRLINES, AIR CANADA, OLYMPIC       :
AIRLINES CORPORATION LIMITED,
CHINA SOUTHERN AIRLINES COMPANY  :
LIMITED, DEUTSCHE LUFTHANSA, A.G.,
d/b/a LUFTHANSA AIRLINES, SWISS     :
INTERNATIONAL AIRLINES LTD., d/b/a
SWISSAIR, BRITISH AIRWAYS, PLC, d/b/a :
BRITISH AIRWAYS, MIDWAY AIRLINES
CORP., d/b/a MIDWAY AIRLINES,      :
ALITALIA-LINEE AEREE ITALIANE S.p.A.,
d/b/a ALITALIA AIRLINES, SOUTHWEST  :
AIRLINES, CO., d/b/a SOUTHWEST
AIRLINES, CHINA EASTERN AIRWAYS-  :
SERVICES, SA, d/b/a CHINA EASTERN
AIRWAYS and AIR TRANSPORT      :
ASSOCIATION,

                                             :

                Defendants.
---------------------------------------------------------------x

**LOCAL RULE 7.3(B) SUPPLEMENTAL CORPORATE DISCLOSURE STATEMENT
OF CHINA SOUTHERN AIRLINES**

Pursuant to Rule 7.3(B), Defendant China Southern states the following:  the parent company of China Southern Airlines Company Limited is and has been throughout these proceedings the China Southern Air Holding Company which directly owns a majority of its shares.  China Southern Airlines Company Limited is not directly owned by the People's Republic of China.  There are no other publicly held entities which own more than ten percent (10%) of its stock.

Dated:  February 2, 2006

/s/ Kathleen M. Guilfoyle
Richard P. Campbell (BBO #071600)
Kathleen M. Guilfoyle (BBO #546512)
CAMPBELL CAMPBELL EDWARDS
& CONROY P.C.
One Constitution Plaza
Boston, Massachusetts 02129
(617) 241-3000

-and-

CONDON & FORSYTH LLP
Thomas J. Whalen, Esq.
685 Third Avenue
New York, New York 10017
(212) 490-9100

Attorneys for Defendant
CHINA SOUTHERN AIRLINES COMPANY LTD

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 2, 2006.

By:    <u>/s/ Kathleen M. Guilfoyle</u>

To:    Thomas J. Whalen, Esq.
Condon & Forsyth LLP
1016 Sixteenth Street, NW
Washington, DC  20036

Eugene Massamillo, Esq.
Peter W. Beadle, Esq.
Thomas Carulli, Esq.
Biedermann, Hoenig, Massamillo & Ruff
90 Park Avenue
New York, New York 10000

Andrew J. Harakas, Esq.
Condon & Forsyth, LLP
7 Time Square
New York, NY  10036

David Ogden, Esq.
Ethan G. Shenkman, Esq.
Wilmer Cutler & Pickering
2445 M St. NW
Washington, DC  20037

Daniel M. Esrick, Esq.
Wilmer Cutler Pickering
Hale and Dorr LLP
60 State Street
Boston, MA  02109

Anita Johnson
United States Attorney's Office
1 Courthouse Way
Suite 9200
Boston, MA  02210

中国南方航空
CHINA SOUTHERN

**119**

## Notes to the Financial Statements
(Prepared under PRC Accounting Rules and Regulations)

## 1    BACKGROUND OF THE COMPANY

China Southern Airlines Company Limited (the "Company") and its subsidiary companies (collectively the "Group") are principally engaged in the provision of domestic, Hong Kong regional and international passenger, cargo and mail airline services, with flights operating primarily from the new Guangzhou Baiyun International Airport, which is both the main hub of the Group's route network and the location of its corporate headquarters.

The Company is a joint stock limited company established by China Southern Air Holding Company ("CSAHC") pursuant to an approval document Ti Gai Sheng 【1994】 No. 139 from the State Commission for Economic Restructuring of the Peoples' Republic of China ("PRC"). CSAHC injected airline-related assets and liabilities as at 1 January, 1994 into the Company in exchange for 2,200,000,000 domestic shares with a par value of RMB1.00 each. The Company was established on 25 March, 1995, and took over the control of the airline business from CSAHC since that date.

Pursuant to an approval document Zheng Wei Fa 【1997】 No. 33 from the China Securities Regulatory Commission, the Company listed its 1,174,178,000 H Shares on both the Stock Exchange of Hong Kong Limited and the New York Stock Exchange in July 1997.

Pursuant to an extraordinary general meeting of shareholders held on 21 May, 2002, a resolution was passed authorising the Company to issue not more than 1,000,000,000 A shares of par value of RMB1.00 each. Pursuant to an approval document (2003) No. 70 from the China Securities Regulatory Commission, the Company issued and listed its 1,000,000,000 A shares with a par value of RMB1.00 each on the Shanghai Stock Exchange in July 2003.

On 13 March, 2003, the Company obtained an approval certificate Wai Jing Mao Zi Yi 【2003】 No. 273 from the Ministry of Foreign Trade & Economic Cooperation to change to a permanent joint stock limited company with foreign investments and obtained the business licence dated 17 October, 2003 (Qi Gu Guo Fu Zi No. 000995) issued by the State Administration of Industry and Commerce of the PRC.

Pursuant to a sale and purchase agreement dated 12 November, 2004 between the Company, CSAHC, China Northern Airlines Company ("CNA") and Xinjiang Airlines Company ("XJA") which was approved by the Company's shareholders in an extraordinary general meeting held on 31 December, 2004, the Company acquired the airline operations and certain related assets of CNA and XJA with effect from 31 December, 2004 (the "CNA/XJA Acquisitions"). The consideration payable for the CNA/XJA Acquisitions amounting to RMB15,398 million was determined based on the fair value of the acquired assets. Such consideration was partly satisfied by assumption of debts and liabilities of CNA and XJA totalling RMB13,439 million outstanding as at 31 December, 2004 and the remaining balance of RMB1,959 million will be satisfied in cash.

# Notes to the Financial Statements (Cont'd)
(Prepared under PRC Accounting Rules and Regulations)

## 46    RELATED PARTIES AND RELATED PARTY TRANSACTIONS

**(a)    Related party with controlling relationship**

| | |
|---|---|
| Name of company: | China Southern Air Holding Company |
| Registered address: | No. 278, Ji Chang Road, Guangzhou, Guangdong Province. |
| Major business: | Management of the companies' operations within the Group and the sale of products |
| Relation with the Company: | The ultimate holding company |
| Nature of ownership: | State-owned |
| Legal representative: | Liu Shao Yong |
| Registered capital: | RMB 2,198,980,000 |

At 31 December, 2004 and 2003, CSAHC held 2,200,000,000 Legal Person Shares of the Company totalling RMB 2,200,000,000.

**(b)    Relationship between the Company and related parties without controlling relationships**

**(i)    Companies that are under the control of CSAHC, i.e. subsidiaries of CSAHC:**

Southern Airlines (Group) Import and Export Trading Company
Zhongyuan Airlines Company
Southern Airlines (Group) Economic Development Company
Nanlung Travel & Express (H.K.) Ltd.
Shenzhen Baiyun Air Service Co. Ltd.
Southern Airlines Group Finance Company Limited
Xinjiang Airlines Company
China Northern Airlines Company

**(ii)    Company that is under the significant influence of CSAHC:**

Shenzhen Air Catering Company Limited

**(iii)    Jointly controlled entities of the Group:**

Guangzhou Aircraft Maintenance Engineering Company Limited
MTU Maintenance Zhuhai Co. Ltd.
China Postal Airlines Limited

**(iv)    Associated companies of the Group:**

Hong Kong Business Aviation Centre Company Limited
Sichuan Airlines Corporation Limited

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------------x
:

ROBERT J. HARRINGTON, FAYE BYRON,
CRAIG BUCK, VALERIE L. PAWSON,
RAY DRASNIN, WANDA MILLS, JEFF
GOLUMBUK, CAROLINE MARSHALL-
SMITH, ANESIA KALAITZIDIS,
KENNETH IVANOVITZ, ATHANASE
KARAGIORGOS, HARRIET ZALWANGO.
MICHAEL BLAU, KENNETH MICCICHE
and JENNIEE TSOUVRAKAS, on behalf of
themselves and others,

              Plaintiffs,

    - against -

DELTA AIRLINES, INC., AMERICAN
AIRLINES, US AIRWAYS GROUP, INC.,
d/b/a US AIRWAYS, NORTHWEST
AIRLINES, UNITED AIRLINES, INC.,
ALASKA AIRLINES, CONTINENTAL
AIRLINES, AIR CANADA, OLYMPIC
AIRLINES CORPORATION LIMITED,
CHINA SOUTHERN AIRLINES COMPANY
LIMITED, DEUTSCHE LUFTHANSA, A.G.,
d/b/a LUFTHANSA AIRLINES, SWISS
INTERNATIONAL AIRLINES LTD., d/b/a
SWISSAIR, BRITISH AIRWAYS, PLC, d/b/a
BRITISH AIRWAYS, MIDWAY AIRLINES
CORP., d/b/a MIDWAY AIRLINES,
ALITALIA-LINEE AEREE ITALIANE S.p.A.,
d/b/a ALITALIA AIRLINES, SOUTHWEST
AIRLINES, CO., d/b/a SOUTHWEST
AIRLINES, CHINA SOUTHERN AIRWAYS-
SERVICES, SA, d/b/a CHINA SOUTHERN
AIRWAYS and AIR TRANSPORT
ASSOCIATION,

              Defendants.

04 12558 NMG


**SECOND DECLARATION OF
AIZHEN YE IN SUPPORT OF
CHINA SOUTHERN'S
MOTION TO DISMISS FOR
LACK OF PERSONAL
JURISDICTION**

---------------------------------------------------------------------x

Aizhen Ye declares and states:

1. My name is Aizhen Ye. I am over the age of 21. I have never been convicted of a felony or a crime of moral turpitude. I am of sound mind and am mentally competent in all respects to make this affidavit and take this oath. The facts contained within this affidavit are based upon my personal knowledge and the files maintained in the offices of China Southern Airlines Company Limited (hereinafter "China Southern").

2. I am the manager of the Los Angeles office of China Southern.

3. I am submitting this declaration in support of the motion by China Southern to dismiss the complaint filed by plaintiffs in the above captioned case for lack of personal jurisdiction over China Southern.

4. China Southern is a joint stock company which is majority owned by China Southern Air Holding Company (CSAHC). CSAHC is owned by the Government of China. China Southern is not directly owned by the Government of China.



_____

Aizhen Ye

Personally appeared before me, Aizhen Ye, who being duly sworn, stated that the

foregoing affidavit is true and correct to the best of his knowledge, information, and

belief.

Sworn to this _26_ day of January, 2006.



Notary Public

My Commission Expires:

_11 - 20_ , 20_08_

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

----------------------------------------------------------------x
                                              :

ROBERT J. HARRINGTON, FAYE BYRON,
CRAIG BUCK, VALERIE L. PAWSON,                      04 12558 NMG
RAY DRASNIN, WANDA MILLS, JEFF               :
GOLUMBUK, CAROLINE MARSHALL-
SMITH, ANESIA KALAITZIDIS,                   :
KENNETH IVANOVITZ, ATHANASE
KARAGIORGOS, HARRIET ZALWANGO.       :
MICHAEL BLAU, KENNETH MICCICHE
and JENNIEE TSOUVRAKAS, on behalf of    :
themselves and others,
                                              :

            Plaintiffs,

                                              :
    - against -
                                            :

DELTA AIRLINES, INC., AMERICAN
AIRLINES, US AIRWAYS GROUP, INC.,        :
d/b/a US AIRWAYS, NORTHWEST
AIRLINES, UNITED AIRLINES, INC.,          :
ALASKA AIRLINES, CONTINENTAL
AIRLINES, AIR CANADA, OLYMPIC           :
AIRLINES CORPORATION LIMITED,
CHINA SOUTHERN AIRLINES COMPANY   :
LIMITED, DEUTSCHE LUFTHANSA, A.G.,
d/b/a LUFTHANSA AIRLINES, SWISS       :
INTERNATIONAL AIRLINES LTD., d/b/a
SWISSAIR, BRITISH AIRWAYS, PLC, d/b/a  :
BRITISH AIRWAYS, MIDWAY AIRLINES
CORP., d/b/a MIDWAY AIRLINES,         :
ALITALIA-LINEE AEREE ITALIANE S.p.A.,
d/b/a ALITALIA AIRLINES, SOUTHWEST  :
AIRLINES, CO., d/b/a SOUTHWEST
AIRLINES, CHINA EASTERN AIRWAYS-   :
SERVICES, SA, d/b/a CHINA EASTERN
AIRWAYS and AIR TRANSPORT         :
ASSOCIATION,
                                            :

           Defendants.
----------------------------------------------------------------x

## LOCAL RULE 7.3(B) SUPPLEMENTAL CORPORATE DISCLOSURE STATEMENT OF CHINA EASTERN AIRLINES

Pursuant to Rule 7.3(B), Defendant China Eastern states the following:   the parent company of China Eastern Airlines Company Limited is and has been throughout these proceedings the China Eastern Air Holding Company which directly owns a majority of its shares.  China Eastern Airlines Company Limited is not directly owned by the People's Republic of China.  There are no other publicly held entities which own more than ten percent (10%) of its stock.


Dated:  February 2, 2006


/s/ Kathleen M. Guilfoyle
Richard P. Campbell (BBO #071600)
Kathleen M. Guilfoyle (BBO #546512)
CAMPBELL CAMPBELL EDWARDS
& CONROY P.C.
One Constitution Plaza
Boston, Massachusetts 02129
(617) 241-3000

-and-

CONDON & FORSYTH LLP
Thomas J. Whalen, Esq.
685 Third Avenue
New York, New York 10017
(212) 490-9100

Attorneys for Defendant
CHINA EASTERN AIRLINES COMPANY LTD

CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 2, 2006.

By:    /s/ Kathleen M. Guilfoyle

To:    Thomas J. Whalen, Esq.
       Condon & Forsyth LLP
       1016 Sixteenth Street, NW
       Washington, DC  20036

       Eugene Massamillo, Esq.
       Peter W. Beadle, Esq.
       Thomas Carulli, Esq.
       Biedermann, Hoenig, Massamillo & Ruff
       90 Park Avenue
       New York, New York 10000

       Andrew J. Harakas, Esq.
       Condon & Forsyth, LLP
       7 Time Square
       New York, NY  10036

       David Ogden, Esq.
       Ethan G. Shenkman, Esq.
       Wilmer Cutler & Pickering
       2445 M St. NW
       Washington, DC  20037

       Daniel M. Esrick, Esq.
       Wilmer Cutler Pickering
       Hale and Dorr LLP
       60 State Street
       Boston, MA  02109

       Anita Johnson
       United States Attorney's Office
       1 Courthouse Way
       Suite 9200
       Boston, MA  02210

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------------------x
                                 :

ROBERT J. HARRINGTON, FAYE BYRON,
CRAIG BUCK, VALERIE L. PAWSON,           04 12558 NMG
RAY DRASNIN, WANDA MILLS, JEFF          :
GOLUMBUK, CAROLINE MARSHALL-
SMITH, ANESIA KALAITZIDIS,           :  **SECOND DECLARATION OF**
KENNETH IVANOVITZ, ATHANASE         **MR. QIAN QIAO YI IN**
KARAGIORGOS, HARRIET ZALWANGO.    :  **SUPPORT OF CHINA**
MICHAEL BLAU, KENNETH MICCICHE     **EASTERN'S MOTION TO**
and JENNIEE TSOUVRAKAS, on behalf of   :  **DISMISS FOR LACK OF**
themselves and others,                  **PERSONAL JURISDICTION**
                                 :

          Plaintiffs,
                                 :

    - against -
                                 :

DELTA AIRLINES, INC., AMERICAN
AIRLINES, US AIRWAYS GROUP, INC.,    :
d/b/a US AIRWAYS, NORTHWEST
AIRLINES, UNITED AIRLINES, INC.,     :
ALASKA AIRLINES, CONTINENTAL
AIRLINES, AIR CANADA, OLYMPIC      :
AIRLINES CORPORATION LIMITED,
CHINA SOUTHERN AIRLINES COMPANY  :
LIMITED, DEUTSCHE LUFTHANSA, A.G.,
d/b/a LUFTHANSA AIRLINES, SWISS    :
INTERNATIONAL AIRLINES LTD., d/b/a
SWISSAIR, BRITISH AIRWAYS, PLC, d/b/a  :
BRITISH AIRWAYS, MIDWAY AIRLINES
CORP., d/b/a MIDWAY AIRLINES,     :
ALITALIA-LINEE AEREE ITALIANE S.p.A.,
d/b/a ALITALIA AIRLINES, SOUTHWEST  :
AIRLINES, CO., d/b/a SOUTHWEST
AIRLINES, CHINA EASTERN AIRWAYS-   :
SERVICES, SA, d/b/a CHINA EASTERN
AIRWAYS and AIR TRANSPORT     :
ASSOCIATION,
                                 :

         Defendants.
-------------------------------------------------------------------x

Mr. Qian Qiao Yi declares and states:

1. My name is Qian Qiao Yi. I am over the age of 21. I have never been convicted of a felony or a crime of moral turpitude. I am of sound mind and am mentally competent in all respects to make this affidavit and take this oath. The facts contained within this affidavit are based upon my personal knowledge and the files maintained in the offices of China Eastern Airlines Company Limited (hereinafter "China Eastern").

2. I am the United States general manager of China Eastern located in California.

3. I am submitting this declaration in support of the motion by China Eastern to dismiss the complaint filed by plaintiffs in the above captioned case for lack of personal jurisdiction over China Eastern.

4. China Eastern is a corporation which is majority owned by China Eastern Air Holding Company (CEAHC). CEAHC is owned by the Government of China. China Eastern is not directly owned by the Government of China.

Mr. Qian Qiao Yi

Personally appeared before me, Qian Qiao Yi, who being duly sworn, stated that the

foregoing affidavit is true and correct to the best of his knowledge, information, and

belief.

Sworn to this _24_ day of January, 2006.



_____
Notary Public

My Commission Expires:

_OCT  28_ , 20_06_

Copyright 2000 Disclosure Incorporated
EDGARPlus(R)

COMPANY: CHINA EASTERN AIRLINES CORP LTD
TICKER: CEA
EXCHANGE: NYS

FORM-TYPE: 20-F

DOCUMENT-DATE: December 31, 2000
FILING-DATE: December 31, 2000

Full text  Company info  Contents  Other  Return

* * * * * * * * * * * * * * * TEXT OF FILING * * * * * * * * * * * * * * * *

SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549

FORM 20-F

REGISTRATION STATEMENT PURSUANT TO SECTION (12(b) OR 12(g) OF THE
SECURITIES EXCHANGE ACT OF 1934

X ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2000

TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934

For the transition period from ___ to ___

Commission file number 1-13230

(FOREIGN LANGUAGE OMITTED)
(Exact Name of Registrant as Specified in Its Charter)

EDGARPins(...) FORM-TYPE: 20-F FILING-DATE: Decemb... 31, 2000

Through arrangements with EA Group and others, we provide certain benefits to our employees, including housing, retirement benefits and hospital, maternity, disability and dependent medical care benefits. See Notes 3(c), 5, 28 and 29 of the notes to our audited consolidated financial statements. Our employees are members of a labor association which represents employees with respect to labor disputes and certain other employee matters. We believe that we maintain good relations with our employees and with their labor association. The table below sets forth the number of our employees as of December 31, 1998, 1999 and 2000, respectively:

As of December 31,

| | 1998 | 1999 | 2000 |
|---|---|---|---|
| Pilots | 1,200 | 930 | 1,280 |
| Flight attendants | 1,600 | 1,390 | 1,550 |
| Maintenance personal | 3,800 | 2,200 | 2,440 |
| Sales and marketing | 5,000 | 1,650 | 1,830 |
| Other | 1,400 | 2,780 | 4,100 |
| Total | 13,000 | 8,950 | 11,200 |

-49-

Item 7. Major Shareholders and Related Party Transactions.

Major Shareholders

The following table sets forth certain information regarding ownership of our capital stock as of May 31, 2001 by (1) all persons who are known to us to be the beneficial owners of 5% or more of our capital stock and (2) the total amount of capital stock owned by our officers and directors as a group.

| Amount Owned | Title of Class | Identity of Person or Group |
|---|---|---|
| 3,000,000,000 | Domestic Shares | EA Group |
| 1,437,495,499 | H Shares | HKSCC Nominees Limited (1) |
| 28,000 | Domestic Shares | Officers and Directors |

(TABLE CONTINUED)

| Title of Class | Percent of Class | Percent of Ordinary Shares |
|---|---|---|

EDGARPlu... ) FORM-TYPE: 20-F FILING-DATE: Decem... 31, 2000

|  | (%) | (%) |
|---|---|---|
| Domestic Shares | 90.91 | 61.64 |
| H Shares | 91.74 | 29.54 |
| Domestic Shares | 0.0008 | 0.0006 |

(1) As custodian of Depositary for American Depositary Shares representing H Shares.

EA Group has been holding 61.64% of our issued and outstanding capital stock since October 1997 and does not have any voting rights different from those of other shareholders. We are not aware of any arrangement which may at a subsequent date result in a change of control of our company.

Related Party Transactions

Relationship with the CAAC and its Affiliates

Our company is currently a majority owned subsidiary of EA Group. EA Group itself is a wholly state-owned enterprise under the administrative control of the CAAC. The CAAC has no direct shareholding or equity interest in our company or EA Group. EA Group's shareholding in our company is in the form of ordinary domestic shares, through which it enjoys the rights and benefits on behalf of the Chinese government (under the supervision of the CAAC).

We have from time to time conducted transactions, as described below, with the CAAC and its affiliates and may continue to do so.

(i) We pay take-off and landing fees to airports in China. For the years ended December 31, 1998, 1999 and 2000, we paid take-off and landing fees in China of approximately RMB 379 million, RMB 571 million and RMB 513 million, respectively.

(ii) We purchase aircraft fuel from CAOSC. For the years ended December 31, 1998, 1999 and 2000, we paid CAOSC approximately RMB 1,063 million, RMB 1,063 million and RMB 1,458 million, respectively, in connection with purchases of aircraft fuel.

(iii) We pay commissions to the CAAC and other Chinese airlines with respect to air tickets sold by the CAAC's sales offices and such airlines. For the years ended December 31, 1998, 1999 and 2000, we paid commissions of approximately RMB 71 million, RMB 73 million and RMB 105

EDGARPl...c) FORM-TYPE: 20-F FILING-DATE: Decem... 31, 2000

-50-

million, respectively.

(iv) We receive commission income from other Chinese airlines in connection with air tickets sold by us for which the carriage has been provided by such other airlines. For the years ended December 31, 1998, 1999 and 2000, we received commission income of approximately RMB 10 million, RMB 23 million and RMB 17 million, respectively.

(v) We pay ticket reservation service charges to the CAAC in connection with its use of the CAAC's computer reservation system. For the years ended December 31, 1998, 1999 and 2000, we paid ticket reservation service charges to the CAAC of approximately RMB 93 million, RMB 52 million and RMB 56 million, respectively.

(vi) We incur interest expenses on loans and advances payable to the CAAC. For the years ended December 31, 1998, we paid to the CAAC interest on loans and advances of approximately RMB 12 million, respectively. For the year ended December 31, 1999 and 2000, there were no loans or advances payable by us to the CAAC.

(vii) We purchase aircraft, flight equipment and flight equipment spare parts through CASC. The total amounts of these payments were approximately RMB 722 million, RMB 115 million and RMB 2 million in 1998, 1999 and 2000, respectively, inclusive of handling charges of 0.1% to 2%.

(viii) We pay domestic aviation infrastructure levies collected on behalf of the CAAC, which are calculated based on our annual gross traffic revenue. The total amounts of these levies were approximately RMB 373 million, RMB 334 million and RMB 374 million in 1998, 1999 and 2000, respectively.

We have certain balances with the CAAC and CASC, which represent amounts due to and/or from these entities. These amounts are unsecured, interest-free and have no fixed terms of repayment. See Note 31(c) of the notes to our audited consolidated financial statements.

Relationship With EA Group and Associated Companies

We enter into transactions from time to time with EA Group and other related parties.

*EDGARPlus(R) FORM-TYPE: 20-F FILING-DATE: June 28, 2002*

Copyright 2002 Disclosure Incorporated
EDGARPlus(R)

COMPANY: CHINA EASTERN AIRLINES CORP LTD
TICKER: CEA
EXCHANGE: NYS

FORM-TYPE: **20-F**

DOCUMENT-DATE: December 31, 2001
FILING-DATE: June 28, 2002

◆ Full text  Company info  Contents  Other  Return

* * * * * * * * * * * * * * **TEXT OF FILING** * * * * * * * * * * * * * * * *


SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549


FORM **20-F**


REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR 12(g) OF THE
SECURITIES EXCHANGE ACT OF 1934


OR


X ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934


For the fiscal year ended December 31, 2001


OR


TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES
EXCHANGE ACT OF 1934


For the transition period from ___ to ___

A. Major Shareholders

The following table sets forth certain information regarding ownership of our capital stock as of May 31, 2002 by (1) all persons who are known to us to be the beneficial owners of 5% or more of our capital stock and (2) the total amount of capital stock owned by our officers and directors as a group.

| Amount Title of Class Owned | Identity of Person or Group |
|---|---|
| Domestic Shares      EA Group | |
| 3,000,000,000 H Shares | HKSCC Nominees Limited (1) |
| 1,456,575,999 Domestic Shares | Officers and Directors |
| 30,800 | |

(TABLE CONTINUED)

| Title of Class | Percent of Class | Percent of Ordinary Shares |
|---|---|---|
| | (%) | (%) |
| Domestic Shares | 90.91 | 61.64 |
| H Shares | 91.74 | 29.93 |
| Domestic Shares | 0.0009 | 0.0006 |

(1) As custodian of Depositary for American Depositary Shares representing H Shares.

-56-

EA Group has held 61.64% of our issued and outstanding capital stock since October 1997 and neither it nor HKSCC Nominees Limited has any voting rights different from those of other shareholders. We are not aware of any arrangement which may at a subsequent date result in a change of control of our company.

As of May 31, 2002, a total of 1,566,950,000 H shares were outstanding, none of which were held by U.S. holders of record, and a total of 1,391,030 ADSs, representing the equivalent of 139,103,000 H shares, were outstanding, of which 742,400 ADSs were held by approximately 46 U.S. holders of record.

Our company is currently a majority owned subsidiary of EA Group. EA Group itself is a wholly state-owned enterprise under the administrative control of the CAAC. The CAAC has no direct shareholding or equity interest in our company or EA Group. EA Group's

shareholding in our company is in the form of ordinary domestic shares, through which it enjoys the rights and benefits on behalf of the Chinese government (under the supervision of the CAAC).

B. Related Party Transactions

Relationship with the CAAC and its Affiliates

We have from time to time conducted transactions, as described below, with the CAAC and its affiliates and may continue to do so.

(i) We pay take-off and landing fees to airports in China. For the years ended December 31, 1999, 2000 and 2001, we paid take-off and landing fees in China of approximately RMB 571 million, RMB 791 million and RMB 937 million, respectively.

(ii) We purchase aircraft fuel from CAOSC. For the years ended December 31, 1999, 2000 and 2001, we paid CAOSC approximately RMB 1,063 million, RMB 1,458 million and RMB 1,739 million, respectively, in connection with purchases of the aviation fuel.

(iii) We pay commissions to the CAAC and other Chinese airlines with respect to our air tickets sold by the CAAC's sales offices and such airlines. For the years ended December 31, 1999, 2000 and 2001, we paid commissions of approximately RMB 73 million, RMB 105 million and RMB 52 million, respectively.

(iv) We receive commission income from other Chinese airlines in connection with their air tickets sold by us. For the years ended December 31, 1999, 2000 and 2001, we received commission income of approximately RMB 23 million, RMB 17 million and RMB 10 million, respectively.

(v) We pay ticket reservation service charges to the CAAC in connection with our use of the CAAC's computer reservation system. For the years ended December 31, 1999, 2000 and 2001, we paid ticket reservation service charges to the CAAC of approximately RMB 52 million, RMB 56 million and RMB 56 million, respectively.

-57-

(vi) We incur interest expenses on loans and advances payable to the CAAC. For the years ended December 31, 1999, 2000 and 2001, there were no loans or advances payable by us to the CAAC.

Table of Contents

# SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549

# FORM 20-F

☐   **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR 12(g) OF THE SECURITIES EXCHANGE ACT OF 1934**

OR

☒   **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2002

OR

☐   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from          to

Commission file number 1-13230

中国东方航空股份有限公司
(Exact Name of Registrant as Specified in Its Charter)

China Eastern Airlines Corporation Limited          The People's Republic of China
(Translation of Registrant's Name Into English)       (Jurisdiction of Incorporation or Organization)

2550 Hong Qiao Road
Hong Qiao International Airport
Shanghai 200335
The People's Republic of China
(8621) 6268-6268
(Address and Telephone Number of Principal Executive Offices)

Securities registered or to be registered pursuant to Section 12(b) of the Act:

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| American Depositary Shares Ordinary H Shares, par value RMB1.00 per share | The New York Stock Exchange The New York Stock |

Table of Contents

Item 7. Major Shareholders and Related Party Transactions.

### A. Major Shareholders

The following table sets forth certain information regarding ownership of our capital stock as of May 31, 2003 by (1) all persons who are known to us to be the beneficial owners of 5% or more of our capital stock and (2) the total amount of capital stock owned by our officers and directors as a group.

| Title of Class | Identity of Person or Group | Amount Owned | Percent of Ordinary Shares |
|---|---|---|---|
| | | | (%) |
| Domestic Shares | CEA Holding | 3,000,000,000 | 61.64 |
| H Shares | HKSCC Nominees Limited[1] | 1,457,657,999 | 29.95 |
| Domestic Shares | Officers and Directors | 19,600 | 0.0004 |

(1)    As custodian of Depositary for American Depositary Shares representing H Shares.

CEA Holding has held 61.64% of our issued and outstanding capital stock since it establishment in October 2002, and neither it nor HKSCC Nominees Limited has any voting rights different from those of other shareholders. We are not aware of any arrangement which may at a subsequent date result in a change of control of our company.

As of May 31, 2003, a total of 1,566,950,000 H shares were outstanding, none of which were held by U.S. holders of record, and a total of 741,880 ADSs, representing the equivalent of 74,188,000 H shares, were outstanding, of which 730,930 ADSs were held by approximately 75 U.S. holders of record.

Our company is currently a majority owned subsidiary of CEA Holding. CEA Holding itself is a wholly state-owned enterprise under the administrative control of the CAAC. The CAAC has no direct shareholding or equity interest in our company or CEA Holding. CEA Holding's shareholding in our company is in the form of ordinary domestic shares, through which it, under the supervision of the CAAC, enjoys the rights and benefits on behalf of the Chinese government.

### B. Related Party Transactions

#### Relationship with the CAAC and its Affiliates

We have from time to time conducted transactions, as described below, with the CAAC and its affiliates and may continue to do so.

(i) We pay take-off and landing fees to airports in China. For the years ended December 31, 2000, 2001 and 2002, we paid take-off and landing fees in China of approximately RMB791 million, RMB937 million and RMB982 million, respectively.

(ii) We purchase aircraft fuel from CAOSC. For the years ended December 31, 2000, 2001 and 2002, we paid CAOSC approximately RMB1,458 million, RMB1,739 million and RMB1,616 million, respectively, in connection with purchases of the aviation fuel.

(iii) We pay commissions to the CAAC and other Chinese airlines with respect to our air tickets sold by the CAAC's sales offices and such airlines. For the years ended December 31, 2000, 2001 and 2002, we paid commissions of approximately RMB105 million, RMB52 million and RMB48 million, respectively.

- 50 -

Table of Contents

# SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549

# FORM 20-F

☐   **REGISTRATION STATEMENT PURSUANT TO SECTION 12(b) OR 12(g) OF THE SECURITIES EXCHANGE ACT OF 1934**

OR

☒   **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2003

OR

☐   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from              to

Commission file number 1-14550

## 中国东方航空股份有限公司

(Exact Name of Registrant as Specified in Its Charter)

| China Eastern Airlines Corporation Limited | The People's Republic of China |
| (Translation of Registrant's Name Into English) | (Jurisdiction of Incorporation or Organization) |

2550 Hong Qiao Road
Hong Qiao International Airport
**Shanghai 200335**
The People's Republic of China
(8621) 6268-6268
(Address and Telephone Number of Principal Executive Offices)

Securities registered or to be registered pursuant to Section 12(b) of the Act:

| Title of Each Class | Name of Each Exchange on Which Registered |
| --- | --- |
| American Depositary Shares | The New York Stock Exchange |
| Ordinary H Shares, par value RMB1.00 | The New York Stock Exchange |

Table of Contents

Our investment committee, established by our board of directors in August 1999, consists of Mr. Wu Baiwang, Mr. Zhong Xiong and Mr. Cao Jianxiong. The investment committee is authorized to review our annual and long-term investment plans and individual investments and report to our board of directors. It is also responsible for the review and supervision of the implementation of our investment plans.

### D. Employees

Through arrangements with CEA Holding and others, we provide certain benefits to our employees, including housing, retirement benefits and hospital, maternity, disability and dependent medical care benefits. Our company does not have any bonus or profit sharing plan or any stock option plan. See Notes 30 and 31 to our audited consolidated financial statements. Our employees are members of a labor association which represents employees with respect to labor disputes and certain other employee matters. We believe that we maintain good relations with our employees and with their labor association. The table below sets forth the number of our employees as of December 31, 2001, 2002 and 2003, respectively:

|                      | As of December 31, | | |
|----------------------|------|------|------|
|                      | 2001 | 2002 | 2003 |
| Pilots               | 1,345 | 1,423 | 1,516 |
| Flight attendants    | 1,596 | 1,531 | 1,817 |
| Maintenance personal | 2,696 | 2,826 | 2,696 |
| Sales and marketing  | 1,945 | 1,799 | 2,172 |
| Other                | 7,371 | 8,140 | 8,234 |
| Total                | 14,953 | 15,719 | 16,435 |

### E. Share Ownership

See Item 6.A and Item 6.B above.

### Item 7. Major Shareholders and Related Party Transactions

### A. Major Shareholders

The following table sets forth certain information regarding ownership of our capital stock as of December 31, 2003 by all persons who were known to us to be the beneficial owners of 5% or more of our capital stock:

| Title of Class | Identity of Person or Group | Amount Owned | Percent of Class | Percent of Total Shares |
|----------------|------------------------------|--------------|------------------|--------------------------|
| Domestic Shares | CEA Holding | 3,000,000,000 | 90.91% | 61.64% |
| H Shares | HKSCC Nominees Limited[1] | 1,468,833,363 | 93.74% | 30.18% |

(1)  As custodian of the Depositary for American Depositary Shares representing H Shares.

CEA Holding has held 61.64% of our issued and outstanding capital stock since its establishment in October 2002, and neither it nor HKSCC Nominees Limited has any voting rights different from those of other shareholders. We are not aware of any arrangement which may at a subsequent date result in a change of control of our company.

-52-

Table of Contents

As of December 31, 2003 and June 22, 2004, there were 1,566,950,000 H shares issued and outstanding. As of December 31, 2003 and June 22, 2004, there were, respectively, 77 and 74 registered holders of American depositary receipts evidencing 1,097,660 and 1,200,040 ADSs. Since certain of the ADSs are held by nominees, the above number may not be representative of actual number of U.S. beneficial holders of ADSs or the number of ADSs beneficially held by U.S. persons.

Our company is currently a majority-owned subsidiary of CEA Holding. CEA Holding itself is a wholly state-owned enterprise under the administrative control of the CAAC. The CAAC has no direct shareholding or equity interest in our company or CEA Holding. CEA Holding's shareholding in our company is in the form of ordinary domestic shares, through which it, under the supervision of the CAAC, enjoys the shareholders' rights and benefits on behalf of the Chinese government.

### B. Related Party Transactions

**Relationship with the CAAC and its Affiliates**

We have from time to time conducted transactions, as described below, with the CAAC and its affiliates and may continue to do so.

(i) We pay take-off and landing fees to airports in China. For the years ended December 31, 2001, 2002 and 2003, we paid take-off and landing fees in China of approximately RMB937 million, RMB982 million and RMB1,373 million, respectively.

(ii) We purchase domestic aviation fuel from CAOSC at prices determined by the CAAC. For the years ended December 31, 2001, 2002 and 2003, we paid CAOSC approximately RMB1,739 million, RMB1,616 million and RMB2,129 million, respectively, in connection with purchases of the domestic aviation fuel.

(iii) We pay commissions to the CAAC and other Chinese airlines with respect to our air tickets sold by the CAAC's sales offices and such airlines at a rate of 3% for domestic tickets and 9% for international tickets of the price of the tickets sold. For the years ended December 31, 2001, 2002 and 2003, we paid commissions of approximately RMB52 million, RMB48 million and RMB41 million, respectively.

(iv) We receive commission income from other Chinese airlines in connection with their air tickets sold by us at a rate of 3% for domestic tickets and 9% for international tickets of the price of tickets sold. For the years ended December 31, 2001, 2002 and 2003, we received commission income of approximately RMB9.9 million, RMB6.5 million and RMB4.1 million, respectively.

(v) We pay domestic aviation infrastructure levies collected on behalf of the CAAC, which are calculated based on our annual gross traffic revenue. The total amounts of these levies collected by us on behalf of the CAAC were approximately RMB370 million, RMB431 million and RMB130 million as of December 31, 2001, 2002 and 2003, respectively. Certain of these levies remain payable to the CAAC. Those payables are unsecured, interest-free and have no fixed terms of repayment. See Note 35 to our consolidated financial statements for more details.

(vi) We pay insurance premium through the CAAC who entered into the insurance policy on behalf of our company. For the years ended December 31, 2001, 2002 and 2003, the total amounts of these payments were approximately RMB83 million, RMB179 million and RMB157 million, respectively.

-53-