**United States District Court**
**District of Massachusetts**

```
                                  )
ROBERT J. HARRINGTON et al.       )
                                  )
         Plaintiffs,              )
                                  )    Civil Action No.
         v.                       )    04-12558-NMG
                                  )
DELTA AIR LINES, INC. et al.,     )
                                  )
         Defendants.              )
                                  )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Currently pending before the Court are numerous motions by defendants to dismiss claims against them. All of the defendants are organizations associated in one way or another with the airline industry.

## I. **Background**

Plaintiffs, who seek class certification (hereinafter, "Class Plaintiffs"), filed an amended complaint on May 13, 2005 against 14 defendants associated with the airline industry: four domestic airlines and two organizations associated with them (hereinafter, "the Domestic Defendants"), seven international airlines (hereinafter, "the International Defendants") and the

-1-

Federal Aviation Administration ("FAA").[1]

Class Plaintiffs contend that the airline industry has acted unlawfully in its handling of various taxes, fees and charges (hereinafter, collectively referred to as "government fees") included in the cost of non-refundable airline tickets. Upon purchasing non-refundable airline tickets, passengers pay a variety of government fees. When those tickets are changed, cancelled or otherwise not used as originally purchased, the airlines allegedly retain (along with the ticket price) some or all of the government fees prepaid by passengers. Class Plaintiffs maintain that such retention of fees (and lack of disclosure thereof) is unlawful and against public policy.

Class Plaintiffs further allege, inter alia, that two of the Domestic Defendants, the Air Transport Association of America ("ATAA") and the Airlines Reporting Corporation ("ARC"), knowingly aided and abetted unlawful trade practices by the airlines, and that the FAA exceeded its scope of authority when it changed the "collection compensation" rule which allows airlines to retain a portion of passenger facility charges

---

[1] Robert J. Harrington ("Harrington") and Delta Air Lines, Inc. ("Delta"), whose names constitute part of the caption for this case, are no longer parties to it. Harrington was one of 15 named plaintiffs in the initial complaint but when the amended complaint was filed only nine named plaintiffs, not including Harrington, remained. Delta (and Northwest Airlines) were dismissed from the case without prejudice because they are presently in bankruptcy.

("PFCs") that are imposed by public agencies and collected by the
airlines for the purpose of funding airport improvements.

The complaint states seven claims: declaratory judgment,
rescission of contract, breach of contract, unjust enrichment,
breach of the covenant of good faith and fair dealing, breach of
fiduciary duty and civil conspiracy. Class Plaintiffs seek
relief, including class certification, declaratory judgment, a
trebled restitutionary award of amounts paid and wrongfully
retained by the airline industry, permanent injunctive relief,
the appointment of an independent authority to assess
restitutionary claims and legal costs and expenses. They have
demanded a jury trial.

Most of the defendants have filed motions to dismiss the
complaint, either on substantive or jurisdictional grounds. The
Domestic Defendants filed a joint motion to dismiss the complaint
on the grounds that the claims of Class Plaintiffs are expressly
preempted and barred by federal law and that Class Plaintiffs
have failed to state claims as a matter of state law. Three of
the International Defendants, Alitalia-Linee Aeree Italiane
S.P.A., d/b/a Alitalia Airlines ("Alitalia"), British Airways,
PLC ("British Airways") and Aer Lingus Ltd. ("Aer Lingus"), filed
motions to dismiss in which they adopt as grounds therefor the
positions set forth by the Domestic Defendants. International
Defendant Deutsche Lufthansa, A.G. ("Lufthansa") has moved for

-3-

dismissal on the same grounds as the Domestic Defendants and on the additional ground that Class Plaintiffs lack standing to raise claims against it.

Domestic Defendant ATAA and two of the International Defendants, China Eastern Airlines Co. Ltd. ("China Eastern") and China Southern Airlines Co. Ltd. ("China Southern"), have each filed motions to dismiss for lack of personal jurisdiction.

Finally, the FAA has moved to dismiss the complaint on the grounds that 1) the Court lacks jurisdiction to hear claims made by Class Plaintiffs against it, 2) Class Plaintiffs are time-barred from pressing those claims and, in any event, 3) the FAA's interpretation of its authorizing statute and the regulations promulgated thereunder was reasonable.

Class Plaintiffs oppose the motions to dismiss that are based on preemption, failure to state claims under state law, standing and lack of personal jurisdiction. They do not, however, appear to have submitted any opposition to the motion of the FAA.

## II. **Motion to Dismiss of the Domestic Defendants**

The Domestic Defendants have moved the Court to dismiss Class Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that they are preempted by § 105 of the Airline Deregulation Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705

-4-

("ADA") or, in the alternative, if they are not preempted, that those claims are not viable under state law.

## A. Legal Standard

A court may not dismiss a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears, beyond doubt, that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief". Judge v. City of Lowell, 160 F.3d 67, 72 (1st Cir. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In considering the merits of a motion to dismiss, a court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000) aff'd, 248 F.3d 1127 (1st Cir. 2000). Although a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000), it need not credit bald assertions or unsupportable conclusions, Banco Santander de Puerto Rico v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.), 324 F.3d 12, 15 (1st Cir. 2003).

## B. Analysis

### 1. Preemption Under the ADA

Congress enacted the ADA with the belief that promoting

-5-

competition among airlines would foster "efficiency, innovation, and low prices" among other benefits.  See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992) (citation omitted).  To prevent states from "undo[ing] federal regulation with regulation of their own", id., a preemption provision in the ADA provides, in pertinent part, that

> a State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713.  When Congress enacted the ADA and its preemption provision, it retained a saving clause from the Federal Aviation Act of 1958 which, in its current version, states that "[a] remedy under this part is in addition to any other remedies provided by law".  49 U.S.C. § 40120(c).

In Morales, the United States Supreme Court rendered a broad interpretation of the "relating to" language of the ADA's preemption clause, holding that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under [the ADA]".[2]  504 U.S. at 384. The Morales Court indicated, moreover, that preemption should apply where the challenged law or action has a "forbidden

_____

[2] The Morales Court considered a slightly different version of the preemption clause than the one currently before this Court, but there is no reason to believe that the interpretation of the Supreme Court in Morales does not apply to the current version.  See United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 334 n.17 (1st Cir. 2003).

-6-

significant effect upon" fares, routes or services. Id. at 388. The Supreme Court carved out from the ambit of federal preemption, however, those state actions whose effect upon airline fares, routes or services was "too tenuous, remote, or peripheral". Id. at 390 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21 (1983)).

The United States Supreme Court again addressed the ADA's preemption provision in American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995), in which it considered the language "enact or enforce any law". In ruling that the plaintiffs' claims brought under a state consumer fraud statute were preempted but that their breach-of-contract claims survived, the Wolens Court held that the preemption provision did not

> shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings.

Id. at 228. Interpreting the ADA's preemption clause in conjunction with the saving clause from the Federal Aviation Act, the Wolens Court concluded that states were forbidden from

> imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction ... confines courts ... to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

Id. at 232-33.

In the instant case, the Domestic Defendants contend that

-7-

all of Class Plaintiffs' claims are preempted because they relate
to the airlines' rates and services and require the enforcement
of state law beyond the scope of a breach-of-contract action.
Class Plaintiffs dispute those contentions, asserting that their
claims do not relate to the price, route or service of any air
carrier and that even if they were related, the claims would not
be preempted because they derive from contractual agreements
between the airline industry and its passengers.

## a.    "Forbidden Significant Effect"

Common law claims are preempted where they either expressly
refer to an air carrier's prices or else have a significant
economic effect upon those prices. See, e.g., United Parcel
Serv. v. Flores-Galarza, 318 F.3d 323, 335-36 (1st Cir. 2003);
All World Prof'l Travel Servs., Inc. v. Am. Airlines, Inc., 282
F. Supp. 2d 1161, 1169 (C.D. Cal. 2003) (citing Travel All Over
the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1432
(7th Cir. 1996)).  Class Plaintiffs make a strong case that their
claims do not expressly "relate[] to a price, route, or service
of an air carrier" (emphasis added).  The Court concludes that
those claims are, nevertheless, preempted because their
enforcement under state law would significantly affect airline
services, fares and competition in general.

Neither the First Circuit Court of Appeals nor any district
court within this circuit has considered whether the ADA preempts

-8-

claims relating to government fees associated with airfares.
Those few courts that have addressed the issue have generally
concluded that such claims are preempted, albeit with minimal
analysis. See Statland v. Am. Airlines, Inc., 998 F.2d 539, 542
(7th Cir. 1993) ("We think it obvious that canceled ticket
refunds relate to rates"); Lehman v. USAIR Group, Inc., 930 F.
Supp. 912, 915 (S.D.N.Y. 1996) (citing Statland); Kaucky v.
Southwest Airlines Co., No. 96 C 750, 1996 WL 267875, at *4 (N.D.
Ill. May 17, 1996) (same). But see In re Air Transp. Excise Tax
Litig., 37 F. Supp. 2d 1133 (D. Minn. 1999) (finding no
preemption of claims alleging breach of contract, unjust
enrichment, money had and received and conversion arising from
alleged improper withholding of excise taxes).

In this case, it is undeniable that, should Class Plaintiffs
succeed in enforcing their claims under Massachusetts law,
airline prices and services will be more than marginally affected
and the ADA's deregulatory purpose frustrated. Particularly in
light of similar claims being dismissed under the laws of other
states, an award of permanent injunctive relief under
Massachusetts law in this case would either compel airlines to
change their practices nationally or impose different treatment
upon Massachusetts passengers. Either result offends the purpose
of the ADA. Cf. Ill. Corporate Travel, Inc. v. Am. Airlines,
Inc., 682 F. Supp. 378, 379 (N.D. Ill. 1988) ("[A]ny state law

-9-

rule of decision which could cause rates for airlines in one
state to differ from those in other states is preempted").

In certain respects, the government fees which are the
subject matter of Class Plaintiffs' claims are analogous to state
sales taxes. In both cases, a governmental body imposes a fee
upon consumers that is passed through a middleman, airlines in
the former case and retailers in the latter. It is instructive,
therefore, that Congress has expressly forbidden states from
imposing state taxes on airfares. See 49 U.S.C. § 40116. The
prohibition on "head taxes" was enacted in 1973 in order to
remove "inhibit[ion of] the flow of interstate commerce and the
growth and development of air transportation". S. Rep. No. 93-12
(1973), reprinted in 1973 U.S.C.C.A.N. 1434, 1435.

### b. **Wolens Exception**

Moreover, the claims of Class Plaintiffs are not preserved
by the breach-of-contract exception articulated in Wolens because
no viable contract claims have been stated. The contracts
allegedly breached in this case are embodied in the airline
tickets which incorporate applicable "contracts of carriage".
Class Plaintiffs concede that the tickets they purchased were
"non-refundable" but contend, nevertheless, that the airlines
violated a contractual obligation to provide notice of additional
monetary penalties which were allegedly imposed by virtue of the
airlines' failure to refund government fees. Furthermore, Class

-10-

Plaintiffs assert that their claims should not be dismissed before they have been able to review the pertinent contractual documents pursuant to discovery.

The propositions of Class Plaintiffs simply are not viable for three reasons. First, a motion to dismiss contract-based claims will not be denied solely on the grounds that all of the relevant contracts have not been discovered. Airline tickets and contracts of carriage are not difficult to come by and the Court will not countenance breach-of-contract claims on the basis of speculation that some contract ultimately discovered may support the claims in this case.

Second, the federal notice requirement that the airlines are alleged to have violated, 14 C.F.R. § 253.7, does not constitute a "self-imposed undertaking" which may be enforced under <u>Wolens</u>, but is, rather, an imposition of federal law. Moreover, the fact that the airlines identify tickets as "non-refundable" squarely addresses the requirement of § 253.7 that conspicuous written notice be given of "terms restricting refunds ... imposing monetary penalties ... or permitting the carrier to raise the price". The argument that withholding government fees constitutes a monetary penalty that is unexpressed by the word "non-refundable" fails under the most minimal scrutiny.

Third, even if the facts demonstrate that defendants violated federal notice regulations, Class Plaintiffs are

-11-

nonetheless barred from privately enforcing those violations through the mechanism of state law by virtue of the very terms of those regulations the express purpose of which "is to set uniform disclosure requirements, which preempt any State requirements on the same subject". 14 C.F.R. § 253.1. If Class Plaintiffs were to succeed in enforcing their claims under state law, the result would likely contravene the stated purpose of uniformity.

The contentions of Class Plaintiffs with respect to other federal regulations are similarly deficient. Although the Court shares concern about a situation wherein alleged violations of federal law cannot be privately enforced on account of preemption, such concern does not promote a viable cause of action in this case.

## 2. Viability of Claims Under State Law

Apart from its consideration of the purported contract-based claims, discussed above, the Court need not further address defendants' argument that Class Plaintiffs have failed to state claims upon which relief can be granted under state law.

## III. Motions to Dismiss of Other Airlines and the ATAA

Because the Court will allow the Domestic Defendants' motion to dismiss on the grounds of preemption, it will likewise allow the motions to dismiss of Aer Lingus, Alitalia, British Airways and Lufthansa, each of which moves for dismissal on grounds,

-12-

inter alia, of preemption.[3]

The Court will also allow the motion to dismiss of defendant ATAA. Although that motion is based primarily on the contention that the Court lacks personal jurisdiction over it, ATAA has also adopted the grounds for dismissal raised by the Domestic Defendants. Because the Court deems the claims against the airlines preempted, it similarly concludes that a claim for aiding and abetting those airlines in their handling of government fees is also preempted.

Two of the International Defendants, China Eastern and China Southern, have filed motions to dismiss for lack of personal jurisdiction. Although neither airline moved to dismiss the complaint on preemption grounds, this Court's decision undeniably affects the viability of the claims against them. Consequently, the Court will dismiss the claims against China Eastern and China Southern sua sponte.

Sua sponte dismissals, though generally disfavored, may be appropriately entered where "it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile". Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37

---

[3] Aer Lingus, Alitalia and British Airways adopted the grounds stated in the Domestic Defendants' motion to dismiss in wholesale fashion. In addition to adopting the preemption argument, Lufthansa contends that Class Plaintiffs lack standing to maintain claims against it which contention, under the circumstances, need not be addressed.

(1st Cir. 2001) (citing cases).  Where a particular claim would

be barred pursuant to the principles of res judicata or

collateral estoppel, for example, sua sponte dismissal may be

warranted.  See Arizona v. California, 530 U.S. 392, 412 (2000)

(quoting United States v. Sioux Nation of Indians, 448 U.S. 371,

432 (1980)); Banco Santander, 324 F.3d at 16 (citations omitted).

In this case, the Court's decision that claims against the

Domestic Defendants, Aer Lingus, Alitalia, British Airways and

Lufthansa are preempted by federal law collaterally estops Class

Plaintiffs from maintaining those same claims against China

Eastern and China Southern.  Class Plaintiffs have had sufficient

opportunity to dispute defendants' preemption argument.  See

Wyatt v. City of Boston, 35 F.3d 13, 14-15 (1st Cir. 1994)

(asserting that courts should not sua sponte dismiss cases under

Rule 12(b)(6) motions before the plaintiff is afforded notice and

an opportunity to respond) (citations omitted).


## IV. **Motion to Dismiss of the FAA**

The amended complaint alleges that changes made by the FAA

to the "collection compensation" rule, 14 C.F.R. § 158.53,

exceeded its congressional grant of authority and was part of an

unlawful conspiracy between the FAA and the air industry that has

caused harm to air passengers.  Class Plaintiffs request that the

change to the rule be declared unlawful and its operation

-14-

enjoined.

The Aviation Safety and Capacity Expansion Act of 1990,
codified under 49 U.S.C. § 40117, established the system of
passenger facility charges ("PFCs") pursuant to which public
agencies may finance certain airport-related projects. That
statute authorizes the promulgation of a regulation allowing
airlines to retain "the average necessary and reasonable expenses
... incurred in collecting and handling the [PFC] fee". 49
U.S.C. § 40117(i)(2)(C). The current "collection compensation"
rule provides, inter alia, that airlines may retain 11 cents
($0.11) of each PFC "collected". 14 C.F.R. § 158.53. Revisions
to the rule went into effect on May 1, 2004. See PFC Rule for
Compensation to Air Carriers, 69 Fed. Reg. 12,940 (March 18,
2004). Prior to the 2004 changes, airlines were authorized to
retain eight cents ($0.08) of each PFC "remitted".

Class Plaintiffs aver that allowing airlines to retain a
portion of PFCs "collected" rather than "remitted" was an
unlawful act by the FAA. In a motion to dismiss, to which Class
Plaintiffs have submitted no response, the FAA asserts that 1)
this Court lacks jurisdiction to hear claims regarding the
"collection compensation" rule, 2) Class Plaintiffs' claims are
time-barred and 3) the rule is a reasonable implementation of the
authorizing statute. Although the Court finds the arguments of
the FAA on jurisdiction and timeliness unpersuasive, it

-15-

concludes, nonetheless, that the "collection compensation" rule was within the scope of the FAA's statutory authority.[4]

Congress has required the Secretary of Transportation to promulgate regulations that, inter alia,

> ensure that [PFCs], less a uniform amount the Secretary determines reflects the average necessary and reasonable expenses ... incurred in collecting and handling the fee, [are] paid promptly to the eligible agency for which they are collected.

49 U.S.C. § 40117(i). Where the statutory direction to an agency is clear, courts (and that agency) "must give effect to the unambiguously expressed intent of Congress". United States v. Haggar Apparel Co., 526 U.S. 380, 392 (1999) (quoting Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984)). If the authorizing statute contains a gap or ambiguity, however, courts are to accord "controlling weight" to reasonable agency interpretations of that gap or ambiguity. Id. (citations omitted).

In this case, the statute does not specify whether retention of collection and handling costs is limited to PFCs that are actually remitted to public agencies. The Court concludes that

---

[4] The FAA bases its arguments with respect to jurisdiction and timeliness on 49 U.S.C. § 46110, which sets forth procedures for judicial review of "orders" issued by the Secretary of Transportation. Because Class Plaintiffs challenge a rule, not an order, the cited statute appears to be inapplicable. See 5 U.S.C. § 551 (defining "order" under the Administrative Procedure Act as a final agency disposition "in a matter other than rulemaking").

the current rule reasonably implements the authorizing statute.
Before issuing the revised rule, the FAA researched expenses
related to PFC collection by airlines and found that the cost
differential between PFCs remitted and PFCs collected but not
remitted was minimal. See 69 Fed. Reg. at 12941 (March 18,
2004); 67 Fed. Reg. 70878 (proposed Nov. 27, 2002).  With that
consideration in mind, the FAA decided that allowing retention of
costs based on PFCs "collected" would "account for widely varying
refund rates between air carriers, while preserving PFC revenue
for airports".  69 Fed. Reg. at 12941.  The Court finds the
ensuing rule change reasonable.

## ORDER

In accordance with the foregoing memorandum,

1) the Motion to Dismiss of the Domestic Defendants
   (Docket No. 59) is **ALLOWED;**

2) the Motion to Dismiss of Air Transport Association of
   America (Docket No. 62) is **ALLOWED;**

3) the Motion to Dismiss of Aer Lingus (Docket No. 66) is
   **ALLOWED;**

4) the Motion to Dismiss of Alitalia (Docket No. 67) is
   **ALLOWED;**

5) the Motion to Dismiss of British Airways (Docket No.
   68) is **ALLOWED;**

6) the Motion to Dismiss of Lufthansa (Docket No. 69) is
   **ALLOWED;**

7) the Motion to Dismiss of China Eastern (Docket No. 80)

-17-

is **ALLOWED**;

8)    the Motion to Dismiss of China Southern (Docket No. 82)
      is **ALLOWED**; and

9)    the Motion to Dismiss of the Federal Aviation
      Administration (Docket No. 84) is **ALLOWED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated: February 21, 2006